# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JOHN V. FERRIS, *et al.*,      )
                     )
           Plaintiffs, )      Case No.: 2:18-cv-00479-GMN-DJA
     vs.                    )
                     )      **ORDER**
WYNN RESORTS LIMITED, *et al.*, )
                     )
           Defendants. )
_____ )

Pending before the Court is the Motion to Dismiss the Amended Class Action Complaint, (ECF No. 67), filed by Defendant Kimmarie Sinatra.[1] Plaintiffs John V. Ferris, JoAnn M. Ferris, and Jeffrey Larsen (collectively, "Plaintiffs") filed a Response, (ECF No. 96),[2] and Sinatra filed a Reply, (ECF No. 98).

Also pending before the Court is the Motion to Dismiss, (ECF No. 71), filed by Defendants Wynn Resorts Limited ("Wynn Resorts" or the "Company"); John J. Hagenbuch, Robert J. Miller, Patricia Mulroy, Clark T. Randt Jr., Alvin Shoemaker, Daniel B. Wayson, Jay L. Johnson, Ray R. Irani, and J. Edward Virtue, Matthew O. Maddox, and Craig Scott Billings (collectively, "Wynn Resorts Defendants").[3] Defendants Stephen Cootey and Stephen A. Wynn filed Joinders, (ECF Nos. 73, 75).[4] Plaintiffs filed a Response, (ECF No. 96), to the

---

[1] Sinatra additionally filed a Request for Judicial Notice, (ECF No. 68), and the Declaration of Christine E. Hanley, (ECF No. 69), in support of Sinatra's Motion to Dismiss, (ECF No. 67).

[2] Plaintiffs also filed a Request for Judicial Notice, (ECF No. 68).

[3] Additionally, Wynn Resorts Defendants filed the Declaration of V.R. Bohman, (ECF No. 72), a Request for Judicial Notice, (ECF No. 86), and several volumes of exhibits, (ECF Nos. 76–85), in support of their Motion to Dismiss, (ECF No. 71).

[4] Wynn Resorts Defendants' Motion to Dismiss, (ECF No. 71), is also joined by Defendant Sinatra. (Sinatra Mot. Dismiss at 1, ECF No. 67) ("In moving to dismiss the Amended Complaint, Ms. Sinatra joins the Motion to Dismiss filed by [Wynn Resorts Defendants].").

Motion to Dismiss.  Wynn Resorts Defendants filed a Reply, (ECF No. 99).[5]  Defendants Cootey and Wynn filed individual Replies, (ECF Nos. 102, 103).

Also pending before the Court is Wynn Resorts Defendants' Motion for Leave to Submit Supplemental Authority, (ECF No. 105), in Support of the Motion to Dismiss, (ECF No. 71). Sinatra filed a Joinder, (ECF No. 106).

Also pending before the Court is Wynn Resorts Defendants' Motion for Leave to Submit Supplemental Authority, (ECF No. 107), in Support of the Motion to Dismiss, (ECF No. 71). Plaintiffs filed a Response, (ECF No. 108).

Also pending before the Court is Wynn Resorts Defendants' Motion for Leave to Submit Supplemental Authority, (ECF No. 111), in Support of the Motion to Dismiss, (ECF No. 71). Plaintiffs filed a Response, (ECF No. 112), and Wynn Resorts Defendants filed a Reply, (ECF No. 113).

Also pending before the Court is Wynn Resorts Defendants' Motion for Leave to Submit Supplemental Authority, (ECF No. 116), in Support of the Motion to Dismiss, (ECF No. 71). Defendant Wynn filed a Joinder, (ECF No. 117).  Plaintiffs filed a Response, (ECF No. 118).[6]

I.    **BACKGROUND**

Plaintiffs bring this putative securities class action against Wynn Resorts and certain of its directors and executive officers, on behalf of all persons who purchased or otherwise acquired Wynn Resorts' securities between February 28, 2014, and February 12, 2018 (the "Class Period").[7]  (First Am. Compl. ("FAC") ¶ 1, ECF No. 52).  Plaintiffs claim that during the

---

[5] Additionally, Wynn Resorts Defendants' filed the Declaration of Michael Shipley, (ECF No. 100), and a Request for Judicial Notice, (ECF No. 101), in support of their Reply, (ECF No. 99).

[6] Good cause appearing, the Motions for Leave to Submit Supplemental Authority, (ECF Nos. 105, 107, 111, 116), are granted.

[7] The Court accepts Plaintiffs' factual allegations as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[F]aced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true."); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1136 (9th Cir. 2017) ("We take as true the complaint's plausible and properly pleaded allegations[.]").

Class Period, Defendants made several misleading statements and omissions, thereby concealing the alleged sexual misconduct of then Chief Executive Officer, Defendant Stephen Wynn. (*See id*. ¶¶ 1, 3).  As a result, Wynn Resorts' securities traded at an inflated price during the Class Period. (*See, e.g.*, *id.* ¶¶ 238, 249, 253).  Plaintiffs allege that news of Defendant Wynn's alleged sexual misconduct caused Wynn Resorts' share prices to decline, resulting in a financial loss to class members. (*Id.* ¶¶ 10, 239).

### A.   The Parties

Plaintiffs are persons who purchased the Company's securities at allegedly inflated prices during the Class Period. (*Id.* ¶¶ 15, 16).

Wynn Resorts is a developer, owner, and operator of casino resorts that integrate hotel accommodations and a wide range of amenities. (*Id.* ¶ 2).  It owns and operates Wynn Las Vegas and Encore in Las Vegas, Nevada, and Wynn Macau and Wynn Palace in Macau, China. (*Id.*).  Wynn Resorts is currently constructing a new $2.4 billion property in Massachusetts. (*Id.*).  Its securities trade on NASDAQ under the ticker symbol "WYNN." (*Id.* ¶ 17).

Defendant Stephen Wynn is the founder of Wynn Resorts and served as its CEO and Chairman from 2002 to 2018. (*Id.* ¶ 18).  Defendant Matthew Maddox joined Wynn Resorts in 2002, served as its President since November 2013, and served as its CEO since February 2018. (*Id.* ¶ 19).  Defendant Kimmarie Sinatra served as Executive Vice President, General Counsel, and Secretary of Wynn Resorts from February 2006 until her resignation in July 2018. (*Id.* ¶ 22).  Defendant Stephen Cootey served as the Company's CFO and Senior Vice President from 2014 to 2017. (*Id.* ¶ 18).  Defendant Craig Billings has served as Wynn Resorts' CFO since March 2017. (*Id.* ¶ 25).

Defendants John Hagenbuch, Dr. Ray Irani, Jay Johnson, Robert Miller, Patricia Mulroy, Clark Randt, Alvin Shoemaker, Edward Virtue, and Boone Wayson are former and current directors of Wynn Resorts. (*Id.* ¶¶ 29–41).

1

2

### B.    The *Okada* Litigation

Beginning in 2012 and throughout the Class Period, Wynn Resorts was party to a major

3    lawsuit in Nevada state court. (*Id.* ¶ 96).  The lawsuit, styled as *Wynn Resorts, Limited v. Kazuo*

4    *Okada, et al.*, No. A-12-656710-B (the "*Okada* Litigation"), involved the Company and some

5    of its largest shareholders, including Elaine Wynn,[8] ex-wife of Defendant Stephen Wynn. (*Id.*

6    ¶¶ 96, 156); (Elaine Wynn Counterclaim, Ex. 11 to Bohman Decl., ECF No. 77-1).

7    On March 28, 2016, Elaine Wynn filed the *First Amended Answer of Elaine P. Wynn to*

8    *Aruze and Universal's Fourth Amended Counterclaim; Fifth Amended Counterclaim and*

9    *Crossclaim of Elaine P. Wynn* (the "Elaine Wynn Counterclaim") in the *Okada* Litigation.

10    (FAC ¶ 156); (Elaine Wynn Counterclaim, Ex. 11 to Bohman Decl.).  The Elaine Wynn

11    Counterclaim contained various allegations and described a "multi-million-dollar payment" by

12    Defendant Stephen Wynn following allegations that he engaged in "serious misconduct" "on

13    company property against an employee." (FAC ¶ 157).  It also detailed a "pattern of reckless

14    risk-taking" behavior by Defendant Wynn that "left the directors and the Company vulnerable

15    to potential liability and regulatory exposure." (*Id.*).  As discussed further below, Wynn Resorts

16    subsequently issued press releases denying Elaine Wynn's allegations.

17    ### C.    Wall Street Journal Article and Regulatory Investigations

18    On January 26, 2018, the Wall Street Journal ("WSJ") published an article titled

19    "Dozens of People Recount Pattern of Sexual Misconduct by Las Vegas Mogul Steve Wynn,"

20    alleging that in 2005, Defendant Wynn paid a Wynn Resorts employee $7.5 million after the

21    employee accused Defendant Wynn of forcing her to have sex with him. (*Id.* ¶¶ 4, 196).  The

22    WSJ article detailed additional sexual misconduct allegations by Wynn Resorts employees.

23    (*Id.*).

24

25

---

[8] Elaine Wynn is not a party to the instant action.

The day the article was published, Wynn Resorts' share price fell $20.31, or 10.12 percent, to close at $180.29 on January 26, 2018. (*Id.* ¶ 197).  The stock's high trading volume and price decline continued for several days, and the stock closed at $163.48 on January 29, 2018. (*Id.*).

Defendant Wynn denied the WSJ article's allegations stating that the "idea that I ever assaulted any woman is preposterous.  The instigation of these accusations is the continued work of my ex-wife, Elaine Wynn, with whom I am involved in a terrible and nasty lawsuit in which she is seeking a revised divorce settlement." (*Id.* ¶ 198).  On February 6, 2018, the Company announced that Defendant Wynn had resigned as CEO and Chairman of the Board, effective immediately. (*Id.* ¶¶ 8, 208).

Moreover, shortly after the WSJ article's publication, both the Nevada Gaming Control Board and the Massachusetts Gaming Commission commenced investigations into the article's sexual misconduct allegations. (*Id.* ¶ 6).

Then, on February 12, 2018, the Las Vegas Metropolitan Police Department (LVMPD) revealed that two women had recently filed reports against Defendant Wynn alleging that he had sexually assaulted them in the 1970s. (*Id.* ¶¶ 63, 215).  On this news, Wynn Resorts' share price closed at $162.92 on February 12, 2018. (*Id.* ¶ 216).  Compared to the February 9, 2018 closing price ($166.22), this was a drop of $3.30, or 2 percent. (*Id.*).  Compared to its January 25, 2018 closing price ($200.60), this was a drop of $37.68, or 18.8 percent. (*Id.*).

### D.    Nevada Gaming Control Board Complaint and Settlement

On January 25, 2019, the Nevada Gaming Control Board (the "NGCB") filed a disciplinary complaint (the "NGCB Complaint") and accompanying settlement against the Company and Wynn Las Vegas, LLC, relating to the NGCB's investigation of the response of certain Wynn Resorts employees to sexual misconduct allegations against Defendant Stephen Wynn. (*Id.* ¶ 222).

The NGCB Complaint alleged that, "[i]n 2005, Employee 1, employed in the WYNN Salon, alleged to various individuals at the WYNN that she had been raped by Mr. Wynn and that she became pregnant as a result." (*Id.* ¶ 224).  Subsequently, "Mr. Wynn reached a private, confidential settlement with Employee 1 in which she and her husband were paid $7.5 million through a separate legal entity funded personally by Mr. Wynn." (*Id.*).

The NGCB Complaint alleged eight instances of sexual harassment claims by employees against Defendant Wynn that were not investigated by the Company, and further stated that certain former executives knew of sexual harassment allegations made by female employees and did not investigate. (*Id.* ¶ 223).  Moreover, pursuant to the accompanying settlement, the NGCB Complaint's respondents[9] admitted nearly all of the allegations set forth in the NGCB Complaint. (*Id.*).  In February 2019, the Company was fined $20 million by Nevada gaming regulators for failing to investigate claims of sexual misconduct against Defendant Wynn. (*Id.* ¶ 234).

### E.    Alleged False and Misleading Statements

Plaintiffs allege that during the Class Period, Defendants made several materially misleading statements and omissions in SEC filings, earnings calls, and press releases.  These statements fall into the following categories:

#### 1.    *Code of Conduct statements*

Up to and throughout the Class Period, Wynn Resorts made available to investors its Code of Business Conduct and Ethics ("Code of Conduct" or "Code"). (*Id.* ¶ 88).  The Code's stated purposes were "to comply with federal securities laws" and "to reinforce and enhance the Company's commitment to an ethical way of doing business." (*Id.* ¶ 89).  The Code stated, in relevant part, that "[a]ll reported violations . . . will be taken very seriously and promptly investigated," and that "[h]arassment or discrimination of any sort will not be tolerated." (*Id.*

---

[9] Plaintiffs' Amended Complaint does not name or otherwise identify the NGCB Complaint's respondents.

¶¶ 92, 93).  Additionally, the Code of Conduct purported to apply to "all employees, officers, directors, agents, and representatives of the Company and its affiliates." (*Id.* ¶ 91).  The Company's annual reports on Form 10-K from 2013 to 2016 each contained a similar assertion: "As part of the Company's commitment to integrity, the Board of Directors has adopted a Code of Business Conduct and Ethics applicable to all directors, officers and employees of the Company and its subsidiaries." (*Id.* ¶¶ 107, 124, 146, 173).

Plaintiffs allege the Code of Conduct and references thereto were materially false and misleading, because the Code was not applied to "all employees, officers, directors and officers . . . ." (*See, e.g.*, *id.* ¶¶ 95, 108, 125, 147).  Instead, Defendants "turned a blind eye" to Defendant Stephen Wynn's alleged sexual misconduct. (*Id.*).  Plaintiffs claim that Defendants did not take seriously or promptly investigate the alleged sexual misconduct. (*Id.* ¶ 95).  Additionally, Defendants "failed to report these incidents to the applicable gaming regulators, as required by law, thus jeopardizing the Company's critically needed gaming licenses." (*Id.*).  Lastly, Plaintiffs allege that "contrary to the Code's statement that '[h]arassment' and 'discrimination of any sort will not be tolerated' and its requirement that violators will be disciplined, in fact such conduct by Defendant Wynn was tolerated and condoned at the highest levels of management, and he was never disciplined" until the WSJ article "revealed the extent of his egregious conduct and forced his ouster from the Company." (*Id.*).

### 2. *statements regarding compliance with applicable laws*

Several of Wynn Resorts' SEC filings made during the Class Period provided the following statements regarding compliance:

> On February 18, 2012, the Board of Directors of Wynn Resorts received a report from Freeh, Sporkin & Sullivan, LLP detailing numerous instances of conduct constituting prima facie violations of the Foreign Corrupt Practices Act (the "FCPA") by Kazuo Okada (formerly the largest beneficial owner of our shares) and certain of his affiliates . . . . The Company has provided the Freeh Report to applicable regulators and has been cooperating with related investigations of such regulators.  The conduct of Mr. Okada and his affiliates and the outcome of any

> resulting regulatory findings could have adverse consequences to the Company. A finding by regulatory authorities that Mr. Okada violated the FCPA on Company property and/or otherwise involved the Company in criminal or civil violations could result in actions by regulatory authorities against the Company. Relatedly, regulators have and may pursue separate investigations into the Company's compliance with applicable laws in connection with the Okada matter . . . . While the Company believes that it is in full compliance with all applicable laws, any such investigations could result in actions by regulators against the Company, which could negatively affect the Company's financial condition or results of operations.
>
> . . . .

(*Id.* ¶¶ 122, 148, 175); (quoting 2014 10-K); (2015 10-K); (2016 10-K).

> Other regulators may pursue separate investigations into the Company's compliance with applicable laws arising from the allegations in the matters described above and in response to the Counterclaim and other litigation filed by Mr. Okada suggesting improprieties in connection with the Company's donation to the University of Macau.  While the Company believes that it is in full compliance with all applicable laws, any such investigations could result in actions by regulators against the Company.

(*Id.* ¶¶ 101, 113, 115, 117, 122); (*see also id.* ¶ 111) (alleging similar statement).

Plaintiffs maintain these statements were "false and/or misleading" because Defendants knew that the Company was not "in full compliance with all applicable laws" because Defendant Wynn was "in violation of gaming regulations due to his 'unsuitability,' and in turn, the Company had violated Nevada gaming regulations by failing to report the incidents involving Defendant Wynn to regulators, as required," and "covering up" the alleged misconduct. (*Id.* ¶¶ 102, 118, 123, 136, 139, 144).

### 3.    *statements disclosing regulatory risks*

During the Class Period, several of the Company's SEC filings explained the consequences of violating gaming laws in Nevada and Massachusetts.  For example, if the Nevada Gaming Commission or the Massachusetts Gaming Commission determined that Wynn

Resorts violated the particular state's gaming regulations, the Company's registrations and gaming licenses could be limited, suspended, or revoked. (*See, e.g.*, *id.* ¶¶ 105, 128).  Further,

> Any person who fails or refuses to apply for a finding of suitability . . . after being ordered to do so by the Nevada Gaming Commission . . . or who refuses or fails to pay the investigative costs incurred by the Nevada Gaming Authorities in connection with the investigation of its application, may be found unsuitable. . . . Any person found unsuitable and who holds, directly or indirectly, any beneficial ownership of any voting security or debt security of a registered company beyond the period of time as may be prescribed by the Nevada Gaming Commission may be guilty of a criminal offense.

(*Id.*).  Additionally, the SEC filings provided the following regarding Massachusetts company registration requirements and "qualifiers":

> the following entities and person are deemed to be "qualifiers" subject to investigation: all members, transferees of a member's interest, directors and managers of the licensee . . . . As a result, Wynn Resorts, its key employees and its directors were therefore subject to a suitability investigation.  Wynn Resorts and all individual qualifiers were found suitable by the MGC.

(*See, e.g.*, *id.* ¶¶ 128, 152, 179).  Moreover, during an earnings call on July 25, 2017, Defendant Wynn said the following regarding the licensing process in Massachusetts:

> I remember when we were being licensed to Massachusetts, the question was, well, Macau has a reputation that may be questionable in some quarters, especially in Massachusetts. . . . we said, wait a minute, let's put this matter to rest.  We told each of our operators that, in addition to being licensed in Macau, they had to go to the organized crime criminal division of the Hong Kong Police Department and get certificates of clean bill of health certificates.
>
> They actually would investigate someone and then come to a conclusion and make a statement in writing that that person was free of any criminal association.  And every one of our operators went instantly and did it without hesitation.  And that impressed the folks in Boston.  We were happy to do it because we wouldn't want to do business with anybody that couldn't pass such an examination.  So, the regulatory issue is the one that I think is at stake here.

(*Id.* ¶ 188).

Plaintiffs allege these statements were "false and/or misleading" because, while informing investors that Defendant Wynn and all "individual qualifiers" were found "suitable"; "warning investors generally of the consequences of violating gaming laws"; and implying that the Company would not do business with unsuitable individuals, the statements "failed to disclose that Defendant Wynn had engaged in a pattern of sexual misconduct (rendering him 'unsuitable' under applicable gaming regulations and jeopardizing the Company's critical gaming licenses), and that senior Wynn Resorts management was aware of this conduct" yet failed to investigate or report this alleged misconduct to gaming regulators although required to do so under gaming regulations. (*See, e.g.*, *id.* ¶¶ 106, 129, 153, 189).

### 4. *statements regarding Defendant Wynn's skills and possible departure from the Company*

Wynn Resorts' annual reports on Form 10-K contained statements emphasizing Defendant Wynn's skills and the consequences of his possible departure from the Company:

> We believe that Steve Wynn is the preeminent designer, developer and operator of destination casino resorts and has developed brand name status.  Mr. Wynn's involvement with our casino resorts provides a distinct advantage over other gaming enterprises.
> . . . .
>
> **The loss of Stephen A. Wynn could significantly harm our business.**
>
> Our ability to maintain our competitive position is dependent to a large degree on the efforts, skills and reputation of Stephen A. Wynn, the Chairman of the Board, Chief Executive Officer and one of the principal stockholders of Wynn Resorts.  Mr. Wynn's employment agreement expires in October 2020.  However, we cannot assure you that Mr. Wynn will remain with Wynn Resorts, Limited.  If we lose the services of Mr. Wynn, or if he is unable to devote sufficient attention to our operations for any other reason, our business may be significantly impaired.

(*See, e.g.*, *id.* ¶¶ 103, 126); (*see also id.* ¶ 177) (alleging the Company's 2016 10-K contained similar statements).

In 2014, the Company's Proxy Statement described Defendant Wynn as the "founder and creative and organizational force of Wynn Resorts" and "the preeminent designer, developer and operator of destination casino resorts." (*Id.* ¶ 109).  Further, the 2014 Proxy Statement indicated, *inter alia*: "Mr. Wynn's involvement with our casino resorts provides a distinct advantage over other gaming enterprises.  As founder, Chairman and Chief Executive Officer, he has a unique perspective into the operations and vision for the Company." (*Id.*). The Company's 2015, 2016, and 2017 Proxy Statements contained identical or nearly identical statements. (*Id.* ¶¶ 130, 154, 181).

Plaintiffs characterize these statements as "false and/or misleading" because, while touting the "distinct advantage" Defendant Wynn provided and warning investors generally of the risks of the possible loss of Defendant Wynn, Defendants failed to disclose that "Defendant Wynn had engaged in a pattern of sexual misconduct (rendering him 'unsuitable' under applicable gaming regulations and jeopardizing the Company's critical gaming licenses)," and that "senior Wynn management was aware of this conduct" yet failed to investigate or report this alleged misconduct to regulators although required to do so under gaming regulations. (*See, e.g.*, *id.* ¶¶ 104, 110, 131, 182).

### 5.    *statements about corporate culture*

On March 24, 2015, the Company filed a Schedule 14A attaching a presentation from the Board to the Company's shareholders. (*Id.* ¶ 132).  The presentation included the following statements regarding the Company's commitment to diversity:

**WYNN RESORTS HAS A TRACK RECORD OF PROMOTING DIVERSITY**

Wynn Resorts' commitment to diversity is reflected by the number of women in senior leadership roles throughout the Company.  In fact, 34% of employees at the Vice President and above level and 38% of employees at the Executive Director or Assistant Vice President level are women.

(*Id.*).

Plaintiffs contend this statement was false and misleading because "while boasting about the Company's 'track record' and 'commitment' to diversity, Defendants failed to disclose that Defendant Wynn had created a hostile work environment for Wynn's female employees, which was known to, but condoned by, senior management." (*Id.*). Plaintiffs further allege the statement was misleading "because Defendant Wynn had placed his own interests ahead of his duty to the Board by repeatedly violating company policy and Nevada law." (*Id.* ¶ 133).

On October 15, 2015, the Company held an earnings call, during which Defendant Wynn stated:

> In 45 years, I've never had a layoff. I think we once dropped 100 people in this company. 45 years. We don't do layoffs. People come to work for us. They get job security. And I've never broken a promise about job security to my employees in my entire career, and I don't like facing that possibility one bit.

(*Id.* ¶ 140).

Plaintiffs claim this statement was "false and/or misleading because it failed to disclose that Defendant Wynn had engaged in a pattern of sexual misconduct towards female Wynn employees which created a hostile work environment and undermined their job security." (*Id.*).

### 6.   *press release statements concerning allegations by Elaine Wynn*

On March 28, 2016, following the filing of the Elaine Wynn Counterclaim in the *Okada* Litigation, Wynn Resorts issued a press release titled "Statement from Wynn Resorts in Response to Elaine Wynn's Recent Filing" stating, in relevant part:

> Ms. Wynn's latest allegations regarding our Board, its composition and its independence are simply not true and are rehashed from her previous, unfounded statements made during her proxy campaign. Our company has nine distinguished directors, seven of whom are independent under NASDAQ standards.
>
> Throughout her campaign, in which she directly communicated with shareholders via numerous personal letters, she never once raised the new allegations set forth in her recent complaint. Her allegations regarding the use of company assets are without merit. The use of company assets is governed by many internal policies and is closely supervised both by the Audit Committee, which is comprised solely

of independent directors, and our external auditors.  As outlined in recent proxy statements, Mr. Wynn reimburses the Company for his accommodations at the hotel, his personal use of corporate aircraft and all other company assets subject to company policy.  These policies and any perquisites he receives have always been set forth in our proxy statements.

As a leader in a highly regulated industry, Wynn Resorts prides itself on its transparency and full disclosure to regulators and shareholders.  Allegations made by Ms. Wynn that the company would hide any relevant activities from our regulators are patently false.

By any measure, Wynn Resorts has ascended to a position of unrivaled stature and it is a symbol of unquestioned excellence and quality the world over.  None of what Wynn Resorts has accomplished would be possible without its extraordinary employees and the sense of family and community that Mr. Wynn has created.  Ms. Wynn's actions today run counter to the culture of everything Mr. Wynn has worked so hard to create.

(*Id.* ¶ 158).  Plaintiffs contend that this statement was false and misleading because the Company was not transparent with regulators, and Defendant Wynn had not created a "sense of family and community" at Wynn Resorts. (*Id.* ¶ 159).  Instead, Plaintiffs allege he created a coercive and hostile work environment for Wynn's female employees. (*Id.*).

On April 4, 2016, Elaine Wynn issued a press release reiterating accusations that Defendant Wynn "engaged in reckless, risk-taking behavior, leaving himself vulnerable to allegations of serious wrongdoing—that he made a multi-million-dollar payment and used Company resources to silence," "that he did not properly disclose to the Board of Directors," and that Defendant Sinatra acted as his co-conspirator. (*Id.* ¶ 160).

The following day, Wynn Resorts issued a press release titled "Statement from Wynn Resorts in response to Elaine Wynn's news release of April 4, 2016" once again denying Elaine Wynn's allegations:

Elaine Wynn continues to rehash the same accusations she has made, accusations which will be fully adjudicated when heard by the court early next year.  Neither her nor the company's recent filings contain any new facts or revelations, as she so passionately claims.  Ms. Wynn's comments regarding our Board of Directors,

their independence and their actions in this matter are false.  Our company has nine distinguished directors, seven of whom are independent under NASDAQ standards, each deeply committed to the best interests of our shareholders.

Ms. Wynn's allegations about Mr. Schorr's departure from the company are not true.  Her previous allegations that Mr. Wynn applied company resources for personal use are false; Mr. Wynn's use of company assets is fully audited by both the Board and our external auditors, as well as completely outlined in our proxy statements.

(*Id.* ¶ 161).  Plaintiffs allege this press release was false and misleading because it implied that Elaine Wynn's allegations regarding Defendant Stephen Wynn were "not credible" and "motivated by improper reasons." (*Id.* ¶ 162).

### 7.   *other statements*

During an earnings call on February 3, 2015, Defendant Stephen Wynn made statements indicating that the Company "worked very hard to compete for the right to operate in Massachusetts, . . . it was expensive to do that process, and time-consuming." (*Id.* ¶ 119).  Defendant Wynn stated, *inter alia*:

Our promises for that, that are separate and apart from the construction and that project budget.  We are going to be the one of the top five private employers in the history of the State of Massachusetts.  We're going to be responsible for $50 million a month in revenue for the state, probably another $50 million in related revenues to all the surrounding communities.  We're going to employ thousands and thousands of people.

(*Id.*).  Further, on April 25, 2017, the Company held an earnings call. (*Id.* ¶ 183).  During that call, Defendant Stephen Wynn stated:

[T]hen we're going to open this place in Boston in two dozen months, and we're going to have a case study of how a grand hotel, built in a major metropolitan city, can change the neighborhood for the better.  And be the largest private investment in the Commonwealth of Massachusetts and the second largest employer in the Commonwealth of Massachusetts, behind Mass General Hospital.

So I'd like the direction we're in and I'm feeling comfortable about the pace of our growth.  And, you know, I don't feel like anybody's after us.  I think we're

moving along exactly the way we should be.  And my colleagues join me in that confidence.

(*Id.*).

Plaintiffs allege that these statements were "false and/or misleading" because Defendants failed to disclose that at the time the statements were made, Defendant Wynn "had engaged in a pattern of sexual misconduct," and that senior Wynn management was aware of this conduct but did not investigate or report this misconduct to regulators although required to do so under gaming regulations." (*Id.* ¶¶ 120, 184).

###    F.    Procedural History

On February 20, 2018, Plaintiffs John V. Ferris and JoAnn M. Ferris brought this securities class action against Defendants in the U.S. District Court for the Southern District of New York. (Compl., ECF No. 1).  On March 13, 2018, this case was transferred to the District of Nevada. (Transfer Order, ECF No. 14).  On December 4, 2018, John V. Ferris and Joann M. Ferris were named lead plaintiffs. (Order on Mot. Lead Pls., ECF No. 45).  Plaintiffs subsequently filed an Amended Complaint, (ECF No. 52), which alleges two causes of action: (1) Violation of Section 10(b) of the Exchange Act and Rule 10b-5 against all Defendants; and (2) Violation of Section 20(a) of the Exchange Act against Defendants Wynn, Maddox, Sinatra, Cootey, and Billings.  Defendants now move to dismiss the Amended Complaint.

## II.    <u>JUDICIAL NOTICE</u>

Before reaching the merits, the Court first addresses the parties' respective requests for judicial notice.  Defendant Sinatra requests the Court take judicial notice of ten Statements of Changes in Beneficial Ownership on Form 4 filed with the SEC. (Def. Sinatra Req. Judicial Notice ("RJN"), ECF No. 68).

Wynn Resorts Defendants request that the Court judicially notice 45 exhibits in support of their Motion to Dismiss. (Wynn Resorts Defs. RJN, ECF No. 86).  These exhibits include several news articles; Forms 8-K filed with the SEC; a Complaint filed in *Arrowsmith, et al. v.*

*Mirage Hotel Casino*, No. 2:97-cv-00638-RLH-LRL; a May 24, 2018 pleading filed in *In re Wynn Resorts Deriv. Litig.*, No. A-18-769630-B (Dist. Ct. Nev.); press releases; Form 10-K annual reports filed with the SEC; the Elaine Wynn Counterclaim filed in *Wynn Resorts, Ltd. v. Kazuo Okada*, Case No. A-12-656710-B (Dist. Ct. Nev.); Statements of Changes in Beneficial Ownership on Form 4 filed with the SEC; Schedule 14As filed with the SEC; Wynn Resorts' Code of Conduct; Wynn Resorts' Share Pricing from January 2, 2018, to May 30, 2018; Form 10-Q quarterly reports filed with the SEC; and several exhibits attached to SEC 8-K filings. (*Id.*); (*see also* ECF Nos. 76–85) (containing numerous volumes of exhibits).

Further, Wynn Resorts Defendants request that the Court take judicial notice of six exhibits used to support their Reply. (Wynn Resorts Defs. Reply RJN, ECF No. 101); (Shipley Decl., ECF No. 100).  These exhibits include a February 26, 2019 settlement between the Nevada Gaming Control Board and Wynn Resorts; Wynn Resorts' Code of Ethics, adopted November 2003 and filed publicly with the SEC; Hewlett Packard's Code of Ethics, pulled from the docket in *Retail Wholesale & Department Store Union Local 338 Retirement Fund v. Hewlett-Packard Co.*, 845 F.3d 1268 (9th Cir. 2017); a January 25, 2019 Complaint filed by the Nevada Gaming Control Board; and a May 2019 Wynn Resorts press release. (*Id.*).  Plaintiffs do not object to Defendants' requests for judicial notice.

Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  When matters outside the pleadings are considered, the 12(b)(6) motion converts into a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  This rule does not apply to the incorporation by reference doctrine and judicial notice under Federal Rule of Evidence 201. *Khoja*, 899 F.3d at 998.

Rule 201 permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute," that is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Specifically, a court may take judicial notice: (1) of matters of public record, *Khoja*, 899 F.3d at 999; (2) that the market was aware of information contained in news articles, *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999); and (3) publicly accessible websites whose accuracy and authenticity is not subject to dispute, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

Incorporation by reference treats certain documents as though they are part of the complaint itself. *Daniels-Hall*, 629 F.3d at 998. These are situations where the complaint "necessarily relies" upon a document or where the complaint alleges the contents of the document and the documents authenticity and relevance is not disputed. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A defendant may seek to incorporate a document into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002.

Upon review and consideration, the Court grants Defendants' Requests for Judicial Notice, (ECF Nos. 68, 86, 101). Defendants' exhibits consist of SEC filings, matters of public record, and news articles, each of which the Court may properly judicially notice. *See Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006); *Heliotrope Gen., Inc.*, 189 F.3d at 981 n.18. Moreover, several of the exhibits are excerpted or referenced in Plaintiffs' Amended Complaint. As such, these documents are incorporated by reference. *Khoja*, 899 F.3d at 1002.

The Court now turns to Plaintiffs' Request for Judicial Notice, (ECF No. 97). In support of their Response, Plaintiffs request that the Court judicially notice four Wynn Resorts Proxy Statements filed with the SEC and two exhibits attached to SEC 10-K annual reports. (Exs. 1–6 to Pls.' RJN, ECF No. 97). Defendants do not oppose Plaintiffs' request as to these six

exhibits.  "SEC filings are judicially noticeable documents which may be considered on a motion to dismiss." *Richardson v. Oppenheimer & Co. Inc.*, No. 2:11-cv-02078-GMN, 2014 WL 1304343, at *3 (D. Nev. Mar. 31, 2014) (citing *Dreiling*, 458 F.3d at 946 n.2).  Therefore, Plaintiffs' request for judicial notice is granted as to these documents.

Plaintiffs also request judicial notice of an April 30, 2019 Order issued by the Massachusetts Gaming Commission's Investigations and Enforcement Bureau (the "MGC Order").  (Ex. 7 to Pls.' RJN, ECF No. 97).  Plaintiffs submit that "it is a matter of public record whose accuracy is not in dispute." (Pls.' Resp. to Mots. Dismiss ("Resp.") at 17 n.2, ECF No. 96) (citing *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)).  Plaintiffs further request that "[t]o the extent that the MGC Order may be noticeable only for the fact of its publication and not for its contents, Plaintiffs respectfully request leave to amend the complaint to address this newly issued decision." (*Id.*).

Wynn Resorts Defendants do not dispute the authenticity of the MGC Order.  Thus, the Court will take judicial notice of its existence and publication.  Indeed, judicial notice is limited to the existence and terms of the record; it does not extend to the truth of statements quoted in the record or to factual findings. *Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).  "[T]aking judicial notice of findings of fact from another case exceeds the limits of Rule 201." *Id.* at 1114.  As such, the Court's judicial notice does not extend to the MGC Order's findings of fact for their truth.  Nevertheless, as stated in Part IV.C *infra*, Plaintiffs will have leave to amend their complaint.  Thus, Plaintiffs' request for "leave to amend the complaint to address this newly issued decision" is granted.  Further, Plaintiffs' Request for Judicial Notice, (ECF No. 97), is granted consistent with the foregoing.

///

### III.   LEGAL STANDARD

#### A.   Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

///

**B.      Rule 9(b) and the PSLRA Pleading Standard**

Beyond meeting the demands of Rule 12(b)(6), a plaintiff asserting securities fraud claims must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), in order to survive a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321–24 (2007).

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).  To comply with the rule, the complaint must state with particularity the circumstances constituting the fraud, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). "[A]llegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal punctuation omitted).  Where several defendants are alleged to be part of the fraud, "Rule 9(b) 'does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'" *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

The PSLRA requires that a complaint must "specify each statement alleged to have been false or misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(2).  Further, where recovery is dependent on a showing that defendant acted with a particular state of mind, "the complaint shall, with respect to each act or omission alleged . . . state with particularity

facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.*

## IV.   <u>DISCUSSION</u>

Defendants argue that Plaintiffs' Section 10(b) and Rule 10b-5 claim should be dismissed because Plaintiffs fail to adequately plead actionable false statements, scienter, and loss causation. (*See* Def. Sinatra's Mot. Dismiss ("Sinatra MTD") at 11–16, ECF No. 67); (Wynn Resorts Defs.' Mot. Dismiss ("Wynn Resorts MTD") at 2, ECF No. 71).  Defendants further argue that because Plaintiffs fail to state a claim for a predicate primary violation of Section 10(b) against any Defendant, the Section 20(a) claim necessarily fails. (Sinatra MTD at 17–19); (Wynn Resorts MTD at 24).  The Court addresses each of Plaintiffs' claims in turn.

### A.   **Claim 1 - Section 10(b) and Rule 10b-5**

Section 10(b) makes it unlawful "for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j.  Rule 10b–5 promulgated by the Securities and Exchange Commission (SEC) under the authority of Section 10(b), in turn makes it unlawful for any person,

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.  To avoid dismissal of a claim for relief under § 10(b), a plaintiff must allege: (1) defendant made a material misrepresentation or omission, (2) with scienter or intent to defraud, (3) in connection with the purchase or sale of a security, (4) plaintiff relied on that

misrepresentation, (5) plaintiff suffered economic loss, and (6) that loss was caused by the misrepresentation or omission. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).

### 1.  *false statements and omissions*

To adequately plead a material misrepresentation or omission under § 10(b), the PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B); *see In re Tesla Motors, Inc. Sec. Litig.*, 75 F. Supp. 3d 1034, 1041–42 (N.D. Cal. 2014).  "[A] statement is misleading if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)). To be misleading, a statement must be "capable of objective verification." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014).

A material misrepresentation differs from corporate puffery.  Puffery is an expression of opinion, while a misrepresentation is a knowingly false statement of fact. *Id.*; *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997) (finding that puffery includes statements "not capable of objective verification").  "[V]ague, generalized, and unspecific assertions" of corporate optimism or statements of "mere puffing" cannot state actionable material misstatements of fact under federal securities laws. *See Glen Holly Entertainment, Inc. v. Tektronix. Inc.*, 352 F.3d 367, 379 (9th Cir. 2003).  Moreover, the Ninth Circuit has noted that investors do not rely on puffery when making investment decisions. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010).  Finally, "mildly optimistic, subjective assessment[s] . . . [do not] amount[ ] to a securities violation." *Id.*

///

1

**(a)    statements regarding corporate culture and other statements**

2

Here, Defendants argue that many of the allegedly false statements are inactionable

3

puffery. (Wynn Resorts MTD at 14 n.10).  The Court agrees with Defendants that the

4

statements Defendant Wynn made during earnings calls expressing that he "like[d] the

5

direction we're in," was "feeling comfortable about the pace of our growth," and touting the

6

Company's newly earned right to operate in Massachusetts are examples of puffery and

7

corporate optimism. (FAC ¶¶ 119, 183).  These statements are not definitive positive

8

projections.  Indeed, courts have previously rejected similar statements projecting "excellent

9

results," a "blowout winner" product, "significant sales gains," and "10% to 30% growth rate

10

over the next several years." *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069,

11

1087 (N.D. Cal. 2005) (citing *Grossman*, 120 F.3d at 1119).

12

Defendants further argue that culture statements regarding the Company's commitment

13

to diversity, (FAC ¶ 132), and employee job security, (*id.* ¶ 140), are similarly inactionable as

14

they constitute puffery. (Wynn Resorts MTD at 15).  Defendants rely on *Footbridge Ltd. v.*

15

*Countrywide Home Loans, Inc.*, No. 09-CIV-4050 (PKC), 2010 WL 3790810, at *24 (S.D.N.Y.

16

Sept. 28, 2010), for the proposition that "[s]tatements about corporate culture and integrity are

17

typically considered to be inactionable puffery." (*Id.*).  Plaintiffs did not respond to this

18

argument and thus have consented to granting that portion of the Motion. *See* D. Nev. Local

19

Rule 7-2(d); *Gayle v. Bank of Am., N.A.*, No. 2:18-cv-913-APG-NJK, 2019 WL 1410889, at *2

20

(D. Nev. Mar. 27, 2019).

21

**(b)    Code of Conduct statements**

22

Here, Defendants maintain that the Code of Conduct and references to the Code of

23

Conduct contained in the Company's annual reports are "inherently aspirational," and

24

therefore, cannot support a claim for securities fraud. (Wynn Resorts MTD at 9–10).  In making

25

this argument, Defendants primarily rely on *Retail Wholesale & Department Store Union Local*

1  *338 Retirement Fund v. Hewlett-Packard Co.*, 845 F.3d 1268 (9th Cir. 2017).  There, the

2  defendant-organization's code of conduct contained statements regarding honesty, using good

3  judgment, reporting misconduct, treating others with respect, avoiding unlawful discrimination,

4  and refusing to tolerate harassment. *Id.* at 1273.  The Ninth Circuit found that the code of

5  conduct statements were not objectively verifiable and were inherently inspirational. *Id.* at

6  1276.  "Such a code expresses opinions as to what actions are preferable, as opposed to

7  implying that all staff, directors, and officers always adhere to its aspirations." *Id.* (citing

8  *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 685–86 (D. Colo. 2007)).

9  　　　In response to Defendants' argument, Plaintiffs contend that statements that the Code of

10  Conduct applied to "all" employees; that "[a]ll reported violations of the Code will be taken

11  seriously and promptly investigated"; and that "[h]arassment . . . of any sort will not be

12  tolerated" are nevertheless actionable under *Hewlett-Packard Co.* because they are specific

13  factual assertions which could be established or disproved through discovery and capable of

14  objective verification. (Resp. at 31) (citing *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304

15  (E.D. Cal. 2014)).  However, as noted above, these are precisely the type of statements which

16  the *Hewlett-Packard* court deemed aspirational.

17  　　　Moreover, as Defendants point out, "[l]ike every publicly traded company, Wynn

18  Resorts is required to '[d]isclose whether [it] has adopted a code of ethics' and, if so, publish

19  it." (Wynn Resorts MTD at 10) (citing 17 C.F.R. § 229.406(a), (c)); (*see* Wynn Resorts Reply

20  at 7, ECF No. 99).  And pursuant to NASDAQ Rule 5610, "[e]ach Company shall adopt a code

21  of conduct *applicable to all directors, officers and employees*, which shall be publicly

22  available." (*Id.* at 7 n.16) (emphasis added).  Thus, "it simply cannot be that every time a

23  violation of that code [of conduct] occurs, a company is liable under federal law for having

24  chosen to adopt the code at all, particularly when the adoption of such a code is effectively

25

mandatory." *Andropolis*, 505 F. Supp. 2d at 686.  Plaintiffs' arguments are unavailing.

Accordingly, the Code of Conduct statements are inactionable.

**(c)     statements regarding compliance with all applicable laws**

Defendants argue that statements indicating "the Company believes that it is in full

compliance with all applicable laws," when read in context, are not false or misleading as

Plaintiffs claim. (Wynn Resorts MTD at 10–11).  Relying on the Company's 2013 10-K annual

report, Defendants explain as follows:

> Plaintiffs excerpt the italicized language in the Amended Complaint, but omit the
> language directly above, stripping the statement of crucial context:

> In the U.S. Department of Justice's Motion to Intervene and for
> Temporary and Partial Stay of Discovery in the Redemption Action, the
> Department of Justice states in a footnote that the government also has
> been conducting a criminal investigation into the Company's donation
> to the University of Macau discussed above.  The Company has not received
> any target letter or subpoena in connection with such an investigation.  The
> Company intends to cooperate fully with the government in response to
> any inquiry related to the donation to the University of Macau.

> *Other regulators may pursue separate investigations into the Company's
> compliance with applicable laws arising from the allegations in the
> matters described above and in response to the Counterclaim and other
> litigation filed by Mr. Okada suggesting improprieties in connection with
> the Company's donation to the University of Macau.  While the Company
> believes that it is in full compliance with all applicable laws, any such
> investigations could result in actions by regulators against the Company.*

(*Id.* at 11) (citing 2013 10-K, Ex. 10 to Bohman Decl., ECF No. 76-10); (FAC ¶ 101).  Thus,

Defendants submit that the reference to "all applicable laws" refers to laws implicated in the

*Okada* Litigation; more specifically, "Mr. Okada's alleged violations of the Foreign Corrupt

Practices Act and the Department of Justice's investigation into the Macau donation." (*Id.*).

Defendants also point to similar language preceding compliance statements in the Company's

10-K annual reports for 2014, 2015, and 2016. (*Id.*); (*see also* FAC ¶¶ 122, 148, 175).

Plaintiffs counter that "nothing in the wording [of the compliance statements] suggests such a limitation." (Resp. at 34).  But Plaintiffs offer no facts or analysis to back their contention.  While Plaintiffs argue that the MGC Order rejected Defendants' exact argument by dismissing it is as an "overly narrow interpretation," said order reveals no such thing. (*Id.* at 34) (citing "*supra* at 15" without any additional information); (s*ee generally* MGC Order, Ex. 7 to Pls.' RJN, ECF No. 97-7).[10]

The Court agrees with Defendants that the compliance statements, when viewed in context, are not misleading.  A court evaluates alleged false statements in the context in which they were made, especially with respect to contemporaneous qualifying or clarifying language. *Xu v. Chinacache Int'l Holdings Ltd.*, No. 2:15-CV-7952-CAS-RAOX, 2016 WL 4370030, at *5 (C.D. Cal. Aug. 15, 2016) (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929 (9th Cir. 1996) (finding statements non-actionable where the "statement in full and in context at the time" acknowledged uncertainty)).  Here, the statements contained in numerous SEC filings which provide that "the Company believes that it is in full compliance with all applicable laws," immediately follow language discussing the *Okada* Litigation.  Noticeably absent is any reference to Defendant Wynn or his alleged sexual misconduct.  Indeed, "a statement is misleading if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from one that actually exists.'" *Hewlett-Packard*, 845 F.3d at 1275.  When read in context, no reasonable investor would infer from the challenged compliance statements that Defendant Wynn had not engaged in sexual misconduct.  Nor can the statement be reasonably construed as an assurance regarding Defendant Wynn's suitability under gaming regulations.

---

[10] To be sure, page 19 of the Massachusetts Gaming Commission's order states that Defendant Sinatra's interpretation of a document request from the Massachusetts Gaming Commission's counsel was "an overly narrow interpretation." (MGC Order at 19).  However, the Court cannot discern how this would be related to the compliance statements at issue and Plaintiffs make no attempt to establish such a connection. (*See also* Part II *supra*) (addressing judicial notice of MGC Order).

Defendants and Plaintiffs also disagree as to which pleading standard should be applied when addressing falsity and the compliance statement allegations. In *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015), the U.S. Supreme Court established three standards for pleading falsity of opinion statements:

> First, when a plaintiff relies on a theory of material misrepresentation, the plaintiff must allege both that "the speaker did not hold the belief she professed" and that the belief is objectively untrue. Second, when a plaintiff relies on a theory that a statement of fact contained within an opinion statement is materially misleading, the plaintiff must allege that "the supporting fact [the speaker] supplied [is] untrue." Third, when a plaintiff relies on a theory of omission, the plaintiff must allege "facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017) (citing *Omnicare*, 575 U.S. at 1327, 1332).[11] Defendants argue that the first standard applies, while Plaintiffs contend the third applies. Looking at the Amended Complaint, Plaintiffs maintain these statements were "false and/or misleading" because Defendants knew that the Company was not "in full compliance with all applicable laws[.]" (*See* FAC ¶¶ 118, 123). Thus, Plaintiffs' allegations fall under a theory of material misrepresentation, and the applicable standard is the first standard—Plaintiffs must allege both that the speaker did not hold the belief the speaker professed, and that the belief is objectively untrue. However, Plaintiffs only offer conclusory allegations and fail to provide any particular facts showing that Defendants did not hold the belief that the Company was in compliance with all applicable laws or facts showing that said belief was objectively untrue (*i.e.*, that the Company was in fact *not* in compliance with all applicable laws). As such, the Court grants the Motions to Dismiss as to the compliance statements.

---

[11] In *City of Dearborn Heights*, the Ninth Circuit explained that even though "*Omnicare* concerned Section 11 claims, . . . the Supreme Court's reasoning is equally applicable to Section 10(b) and Rule 10b-5 claims." 856 F.3d at 616.

### (d)   statements disclosing regulatory risks

Plaintiffs' Amended Complaint alleges that Defendants' statements regarding gaming regulations, the consequences of violating gaming regulations, suitability requirements, qualifiers, and other regulatory risk statements were "false and/or misleading" because while informing and warning investors, Defendants "failed to disclose" Defendant Wynn's alleged sexual misconduct, which rendered him unsuitable under gaming regulations. (*See, e.g.*, *id.* ¶¶ 106, 129, 153, 189).  Plaintiffs also allege that Defendants failed to disclose that senior Wynn Resorts management was aware of this conduct yet failed to report it to regulators. (*Id.*).

Defendants, however, argue that these statements do not give rise to a securities fraud claim because Defendants had no duty to disclose Defendant Wynn's alleged conduct. (Wynn Resorts MTD at 7).  It is well-settled that Section 10(b) and Rule 10b–5 "do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).  Disclosure is required only when "necessary . . . to make statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b).  "In other words, a duty to provide information exists only where statements were made which were misleading in light of the context surrounding the statements." *Hewlett-Packard Co.*, 845 F.3d at 1278.

On this basis, Defendants argue that "[e]ven assuming the Directors and Officers were aware of these [sexual misconduct] accusations before the market," Defendants did not have a duty to disclose them because none of the challenged statements suggested there would be no misconduct by Defendant Wynn or anyone else. (Wynn Resorts MTD at 7–8).  Indeed, none of the statements addressed Defendant Wynn's behavior, and instead provided a general discussion of applicable gaming regulations, suitability, etc. *Azar v. Yelp, Inc.*, No. 18-CV-00400-EMC, 2018 WL 6182756, at *10 (N.D. Cal. Nov. 27, 2018) ("Where a defendant 'said nothing about' the subject of the alleged omission, 'there is no duty to disclose, as [§ 10(b)]

does not contain a freestanding completeness requirement.'") (quoting *In re Yahoo! Inc. Sec. Litig.*, No. C 11-02732 CRB, 2012 WL 3282819, at *9 (N.D. Cal. Aug. 10, 2012), aff'd, 611 F. App'x 387 (9th Cir. 2015)); *see also Matrixx*, 563 U.S. at 45 (noting that information that a reasonable investor might consider material need not always be disclosed; companies can control "what they have to disclose under [§ 10(b)] by controlling what they say to the market.").

Defendants further contend that they did not have a duty to disclose the alleged misconduct because the allegations were "uncharged, unadjudicated wrongdoing." (Wynn Resorts MTD at 9) (citing *In re Paypal Holdings, Inc. S'holder Derivative Litig.*, No. 17-CV-00162-RS, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018)); *see also Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 806 (N.D. Cal. 2019) ("Defendants were not required to 'confess' to the uncharged allegation."); *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) ("[C]ompanies are not required to engage in 'self-flagellation' by disclosing unproven allegations.").  Plaintiffs disagree and provide caselaw supporting the proposition that a company "may be compelled to disclose uncharged wrongdoing if its statements are or become materially misleading in the absence of disclosure." (Resp. at 9–10) (citing *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 581 (S.D.N.Y. 2016)); (*Singer v. Reali*, 883 F.3d 425, 441 (4th Cir. 2018)).  Plaintiffs nevertheless fail to allege sufficient facts showing that the regulatory risk disclosure statements became materially misleading due to the non-disclosure of the alleged sexual misconduct.

To be actionable, "an omission must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (citing *McCormick v. The Fund American Cos.*, 26 F.3d 869, 880 (9th Cir. 1994)).  If an omission does not make the statement misleading, "a company need not supplement the statement 'even if

investors would consider the omitted information significant.'" *In re Facebook*, 405 F. Supp. 3d at 833 (quoting *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012)). Thus, for example, the statement indicating "[a]ny person found unsuitable and who holds, directly or indirectly, any beneficial ownership of any voting security or debt security of a registered company beyond the period of time as may be prescribed by the Nevada Gaming Commission may be guilty of a criminal offense," (FAC ¶ 128), is not misleading because it does not affirmatively intimate that Defendant Wynn had never been accused of sexual misconduct by a Wynn Resorts employee. *See Brody*, 280 F.3d at 1006 ("Often a statement will not mislead even if it is incomplete or does not include all relevant facts."). For these reasons, the statements regarding regulatory risk did not create a duty to disclose Defendant Wynn's alleged misconduct. As such, the statements are inactionable.

> **(e)** **statements regarding Defendant Wynn's skills and his possible departure**

The Amended Complaint alleges that statements emphasizing Defendant Wynn's skills and warning of his possible departure from the Company are "false and/or misleading" because in making these statements, Defendants failed to disclose that "Defendant Wynn had engaged in a pattern of sexual misconduct[.]" (*See, e.g.*, FAC ¶¶ 104, 110, 131). As discussed in Part IV.A.1.d *supra*, Section 10(b) and Rule 10b–5 "do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc.*, 563 U.S. at 44. Disclosure is required only when "necessary . . . to make statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b).

Defendants argue that statements regarding Defendant Wynn's skills and qualifications are not actionable or misleading because nothing about Defendant Wynn's alleged misconduct suggests that he lacked "entrepreneurial and managerial skills" or was not a "unique and integral component[]" of the Company's success. (Wynn Resorts Reply at 1–2); (Wynn Resorts MTD at 7–9, 12–13). To support this argument, Defendants rely on *Fries v. N. Oil & Gas, Inc.*,

285 F. Supp. 3d 706 (S.D.N.Y. 2018).  There, a company's CEO was investigated by the SEC

for securities laws violations and was subsequently ordered to make disgorgement and penalty

payments. *Id.* at 712.  The plaintiff challenged prior statements concerning the CEO's

qualifications and expertise, including a statement that the CEO gave the company

"advantages." *Id.* at 719.  The plaintiff argued that investors had been misled by emphasizing

the CEO's importance to the company while failing to disclose the CEO's misconduct. *Id.* at

718.  However, the court disagreed, explaining that "the omitted facts do not show that [the

company] did not rely on [the CEO's] knowledge and expertise in the industry, that [he] did not

have the pedigree [the company] represented, or that [his] experience and expertise did not give

[the company] certain early advantages." *Id.* at 719.  Moreover, the statements did not suggest

that the CEO was not engaged in the undisclosed improper activities. *Id.* (citing *In re ITT Educ.*

*Servs., Inc. Sec. & S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012)

(finding that defendants' "statements are not misleading because they do not suggest that the

undisclosed improper activity alleged by [p]laintiff was not occurring.")).  Thus, the court

found that the statements were inactionable. *Id.*

    The rationale in *Fries* is instructive regarding the present case.  Like in *Fries*, Plaintiffs

challenge statements concerning the skills and qualifications of the Company's CEO (*i.e.*,

Defendant Wynn), arguing that the statements were misleading because they emphasized

Defendant Wynn's importance to the Company without disclosing his alleged misconduct.

However, the omitted fact of Defendant Wynn's alleged sexual misconduct does not show that

Wynn Resorts did not rely on Defendant Wynn's skills and expertise or that Defendant Wynn

did not provide a "distinct advantage over other gaming enterprises." (FAC ¶ 130).  What is

more, the statements did not suggest that Defendant Wynn had not engaged in the undisclosed

misconduct.  Because the alleged omissions did not make the statements regarding Defendant

Wynn's skills, talent, and experience misleading, the statements are inactionable.

As to the statements contained in the Company's 10-K annual reports, which warned of the consequences of Defendant Wynn's possible departure, Defendants contend that they are "forward-looking" statements protected by the PSLRA's safe harbor provision and are therefore inactionable. (Wynn Resorts MTD at 13 n.8). The Court agrees.

The safe harbor provision exempts, under certain circumstances, a forward-looking statement, which is "any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions underlying or related to any of these issues." *No. 84 Emp'r–Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003) (internal quotation marks omitted). Fraud liability for making a forward-looking statement cannot arise if the statement is (1) "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement"; (2) "immaterial"; or (3) not made "with actual knowledge . . . that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)–(2); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017).

Here, Plaintiffs submit that safe harbor is inapplicable because Defendants "fail to identify any 'meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.'" (Resp. at 24, n.5) (quoting 15 U.S.C. § 78u-5(c)(1)(A)(i)). However, as Defendants explain, the Company's 10-K annual reports listed dozens of risk factors "that could cause actual results to differ materially from those we express in these forward-looking statements . . . ." (Wynn Resorts Reply at 3 n.7). The first of many factors listed is "our dependence on Stephen A. Wynn." (2013 10-K at 16–17, Ex. 10 to Bohman Decl., ECF No. 76-10); (2014 10-K at 16, Ex. 20 to Bohman Decl., ECF No. 78-1); (2015 10-K at 15, Ex. 22 to Bohman Decl., ECF No. 80-1); (2016 10-K at 15, Ex. 23 to Bohman Decl., ECF No. 81-1). "The loss of Stephen A. Wynn

could significantly harm our business," is further identified as a risk factor. (2013 10-K at 18); (2014 10-K at 17); (2015 10-K at 16); (2016 10-K at 16).  And as alleged in the Amended Complaint, the 10-K annual reports went on to warn that: "Our ability to maintain our competitive position is dependent to a large degree on the efforts, skills and reputation of Stephen A. Wynn, the Chairman of the Board, Chief Executive Officer and one of the principal stockholders of Wynn Resorts." (*Id.*); (FAC ¶¶ 103, 126, 150, 177).  Thus, as Defendants correctly point out, the challenged statements regarding the consequences of Defendant Wynn's possible departure are precisely the "meaningful cautionary statements" required under 15 U.S.C. § 78u–5(c)(1).  As such, these statements are protected by the safe harbor provision and are therefore inactionable.[12]

### (f)     press release statements concerning allegations by Elaine Wynn

Defendants argue that some of the challenged statements contained in the Company's press releases are inherently aspirational, and therefore inactionable.  "[V]ague, generalized, and unspecific assertions" of corporate optimism or statements of "mere puffing" cannot state actionable material misstatements of fact under federal securities laws. *See Glen Holly Entertainment, Inc.*, 352 F.3d at 379.  "It is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning that they are 'too general to cause a reasonable investor to rely upon them.'" *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014).  An actionable statement must be capable of objective verification. *In re Facebook, Inc. Sec. Litig.*,

---

[12] Defendants also argue that statements regarding Defendant Wynn's skills and possible departure are risk disclosures, which are not verifiable statements of fact, and are therefore *per se* inactionable. (Wynn Resorts MTD at 12) (citing *In re LeapFrog Enterprises, Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1048 (N.D. Cal. 2007)); (*see also* Wynn Resorts Reply at 2).  Plaintiffs counter that "this is not the law." (Resp. at 24) (citing *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009), aff'd, 563 U.S. 27 (2011)).  This issue need not be resolved in order to determine whether these statements are actionable.  Therefore, the Court will not address this argument.

1   405 F. Supp. 3d at 833 (citing *Hewlett-Packard Co.*, 845 F.3d at 1275 ("To be misleading, a

2   statement must be 'capable of objective verification.'")).

3          That "Wynn Resorts prides itself on its transparency and full disclosure to regulators and

4   shareholders" is not a statement capable of objective verification.  Moreover, the assertion that

5   none of what the Company has accomplished would be possible without "the sense of family

6   and community that Mr. Wynn has created," is a statement too general to cause reliance by a

7   reasonable investor and is also incapable of objective verification.  Thus, the Court agrees with

8   Defendants that these statements are inactionable.

9          Regarding the remainder of the challenged statements denying Elaine Wynn's

10  allegations, the Court finds that Plaintiffs fail to plead falsity with particularity.[13]  To illustrate,

11  Plaintiffs assert that "[a]llegations made by Ms. Wynn that the company would hide any

12  relevant activities from our regulators are patently false" was a misleading and false statement

13  because the Company "had unlawfully withheld from [regulators] material information

14  regarding serious allegations of sexual misconduct by Defendant Wynn."  Plaintiffs, however,

15  fail to identify what each Defendant knew at the time this statement was made.  Plaintiffs are

16  reminded that where several defendants are alleged to be part of the fraud, "Rule 9(b) 'does not

17  allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to

18  differentiate their allegations when suing more than one defendant.'" *Destfino v. Reiswig*, 630

19  F.3d 952, 958 (9th Cir. 2011).  Accepting the allegations as true at the pleading stage, all they

20  tend to establish is that at the time the statement was made, Defendants Sinatra and Wynn were

21  aware of the alleged misconduct and the accompanying settlement.[14]  Furthermore, Plaintiffs

22

23  _____

24  [13] Defendants assert this statement referred to Elaine Wynn's allegations about the circumstances of a former
director's departure from the Company, and had nothing to do with Defendant Wynn.  While it is plausible that
the statement concerned a former director's departure, the statement could also be interpreted as a response to the

25  allegations against Defendant Wynn.  Therefore, this argument fails under Rule 12(b)(6).
[14] In Plaintiffs' Response, Plaintiffs assert that "Defendant Maddox learned about the 2005 Settlement in '2016
after Ms. Wynn filed her amended cross-claim in the *Okada* litigation.'" (Resp. at 26).  However, this is not

fail to plead "specific facts indicating why" the statement at issue was false. *Metzler Inv.*

*GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008); *Ronconi v. Larkin*, 253

F.3d 423, 434 (9th Cir. 2001).  The Amended Complaint only indicates that the statement was

false because the Company had "unlawfully withheld from [regulators] material information

regarding serious allegations of sexual misconduct," but it does not specify what was allegedly

withheld, why it was "unlawful," why it was "material," or who withheld it.  "The PSLRA has

exacting requirements for pleading 'falsity,'" and here, Plaintiffs have failed to meet those

requirements. *Metzler*, 540 F.3d at 1070.  Plaintiffs have not adequately pled any actionable

false or misleading statement and therefore, Plaintiffs' claim for violations of Section 10(b)

Rule 10b-5 is dismissed. [15]

### 2.    scienter and loss causation

Because the Court holds that Plaintiffs have not adequately pled any actionable false or

misleading statement under Section 10(b) or Rule 10b-5, the Court has no occasion to address

Defendants' alternative grounds for dismissal based on alleged deficiencies in Plaintiffs'

pleadings as to scienter and loss causation.

### B.    Claim 2 - Section 20(a) of the Exchange Act

To adequately state a claim under § 20(a) of the Exchange Act, a plaintiff must plead

facts that show (1) a primary violation of the federal securities laws and (2) that the defendant

was a control person. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir.

2009).  A control person is a person or entity that has actual power or influence over the

---

alleged in the Amended Complaint.  As such, the Court does not accept this statement as true. (*See also* Part II *supra*) (addressing judicial notice of MGC Order).

[15] Defendant Sinatra also argues that the Section 10(b) claim against her fails as a matter of law because Plaintiffs fail to allege that Sinatra *made* any alleged misstatement, or that any of the alleged misstatements were otherwise attributed to her. (Sinatra MTD at 7–16); *see Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, (2011) ("Under Rule 10b–5, it is unlawful for any person, directly or indirectly, . . . [t]o make any untrue statement of a material fact' in connection with the purchase or sale of securities." (internal quotations omitted)).  Having found that Plaintiffs fail to allege any actionable false or misleading statements, the Court need not reach this issue.

primary violator. *See id.* "Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of [S]ection 10(b)." *Id.*

Because Plaintiffs have not stated a claim for a primary violation of the Exchange Act by any control person, Plaintiffs' claims against Defendants Wynn, Maddox, Sinatra, Cootey, and Billings based on control person liability under § 20(a) are also incapable of surviving Defendants' Motions to Dismiss.

### C.    Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit "ha[s] held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

The Court finds that Plaintiffs may be able to plead additional facts to support their first and second causes of action. Accordingly, the Court will grant Plaintiff leave to file an amended complaint. The Court, however, cautions that an amended complaint must plead facts, with particularity, as to why statements were false or misleading at the time they were made. Additionally, any allegations of scienter must be specific to a Defendant's state of mind at the time he or she made the statements. Moreover, Plaintiffs must differentiate their allegations as to each Defendant and refrain from lumping multiple Defendants together. *Destfino v. Reiswig*, 630 F.3d at 958.

Plaintiffs shall file their amended complaint within twenty-one (21) days of the date of this Order if they can allege sufficient facts that plausibly establish Plaintiffs' first and second

causes of action.  Failure to file an amended complaint by this date shall result in the Court dismissing these claims with prejudice.

## V.   CONCLUSION

**IT IS HEREBY ORDERED** that Wynn Resorts Defendants' Motions for Leave to Submit Supplemental Authority, (ECF Nos. 105, 107, 111, 116), are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss, (ECF Nos. 67, 71), are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs are **GRANTED** leave to amend consistent with the foregoing.  Plaintiffs shall have twenty-one (21) days from the date of this Order to file an amended complaint.  Failure to file an amended complaint by this date shall result in the Court dismissing Plaintiffs' claims with prejudice.

**DATED** this __27__ day of May, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court