GARMAN TURNER GORDON LLP
ERIKA PIKE TURNER
Nevada Bar No. 6454
Email: eturner@gtg.legal
DYLAN T. CICILIANO
Nevada Bar No. 12348
Email: dciciliano@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone: (725) 777-3000
Facsimile: (725) 777-3112

JAMES N. KRAMER (*Pro Hac Vice Pending*)
Email: jkramer@orrick.com
M. TODD SCOTT (*Pro Hac Vice Pending*)
Email: tscott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

CHRISTINE HANLEY (*Pro Hac Vice Pending*)
Email: chanley@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 5th Ave. #5600
Seattle, WA 98104
Telephone: (206) 839-4300
Facsimile: (206) 839-4301

*Attorneys for Defendant Kimmarie Sinatra*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN V. FERRIS and JOANN M. FERRIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WYNN RESORTS LIMITED, STEPHEN A. WYNN, CRAIG SCOTT BILLINGS, STEPHEN COOTEY, MATTHEW O. MADDOX, JOHN J. HAGENBUCH, ROBERT J. MILLER, PATRICIA MULROY, CLARK T. RANDT JR., ALVIN V. SHOEMAKER, KIMMARIE SINATRA, DANIEL B. WAYSON, JAY L. JOHNSON, RAY R. IRANI, and J. EDWARD VIRTUE,<br><br>Defendants. | CASE NO.: Case 2:18-cv-00479-GMN-CWH<br><br>**DEFENDANT KIMMARIE SINATRA'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT AND JOINDER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**ORAL ARGUMENT REQUESTED** |

Garman Turner Gordon LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

KIMMARIE SINATRA'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     SUMMARY OF ALLEGATIONS RELATING TO MS. SINATRA............................. 2

III.    THE HEIGHTENED PLEADING STANDARDS GOVERNING THIS CASE ............. 4

IV.     ARGUMENT ................................................................................................ 4

        A.    Ms. Sinatra Is Not the Maker of Any Alleged Misstatement .................... 4

        B.    The SAC Fails to Plead A Strong Inference Of Scienter As To Ms.
              Sinatra .............................................................................................. 8

        1.    Plaintiffs Fail to Plead Any Specific Facts That Ms. Sinatra Acted
              with Intent to Mislead Investors ......................................................... 9

        2.    Ms. Sinatra's Stock Sales Add Nothing To The Scienter Analysis .......... 11

        C.    Plaintiffs' Section 20(a) Claim Against Ms. Sinatra Fails....................... 14

V.      CONCLUSION............................................................................................. 17

**Garman Turner Gordon
LLP**
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Cases**                                                                                          **Page(s)**

3

*Abdo v. Fitzsimmons,*

4
   2017 WL 6994539 (N.D. Cal. Nov. 3, 2017) ............................................................8

5

*All. Tech. Grp., LLC v. Achieve 1, LLC,*
   2013 WL 143500 (E.D. Va. Jan. 11, 2013) ............................................................8

6

*Applestein v. Medivation, Inc.,*

7
   2011 WL 3651149 (N.D. Cal. Aug. 18, 2011) .......................................................13

8

*Ashcroft v. Iqbal,*

9
   556 U.S. 662 (2009).....................................................................................4, 6, 15

10

*Azar v. Yelp, Inc.,*
   2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) .....................................................12

11

*Bruce v. Suntech Power Holdings Co. Ltd.,*

12
   2013 WL 6843610 (N.D. Cal. Dec. 26, 2013) .......................................................8

13

*Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.,*

14
   964 F. Supp. 2d 1128 (N.D. Cal. 2013) ...............................................................11

15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
   65 F. Supp. 3d 840 (N.D. Cal. 2014), *aff'd,* 856 F.3d 605 (9th Cir. 2017) ............12

16

*City of Westland Police & Fire Ret. Sys. v. Sonic Sols.,*

17
   2009 WL 942182 (N.D. Cal. Apr. 6, 2009).....................................................15, 16

18

*In re CytRx Corp. Sec. Litig.,*

19
   2015 WL 5031232 (C.D. Cal. July 13, 2015).....................................................5, 7

20

*ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.,*
   553 F.3d 187 (2d Cir. 2009)................................................................................10

21

*In re Energy Recovery Inc. Sec. Litig.,*

22
   2016 WL 324150 (N.D. Cal. Jan. 27, 2016) .......................................................16

23

*Ernst & Ernst v. Hochfelder,*
   425 U.S. 185 (1976).............................................................................................9

24

*In re FVC.com Sec. Litig.,*

25
   136 F. Supp. 2d 1031 (N.D. Cal. 2000), *aff'd,* 32 F. App'x 338 (9th Cir. 2002) ....14

26

*In re Hansen Nat. Corp. Sec. Litig.,*

27
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..........................................................13, 16

28

*Hefter v. Wells Fargo & Co.,*
   2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) ......................................................8

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ..................................................................................15

*In re Immersion Corp. Sec. Litig.*,
  2011 WL 871650 (N.D. Cal. Mar. 11, 2011)..............................................................6

*In re Int'l Rectifier Corp. Sec. Litig.*,
  2008 WL 4555794 (C.D. Cal. May 23, 2008) ...........................................................16

*Janus Capital Grp. v. First Derivative Traders*,
  564 U.S. 135 (2011)........................................................................................... *passim*

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) .............................................................................10, 14

*Markette v. XOMA Corp.*,
  2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ...........................................................8

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) .............................................................................13, 14

*Middlesex Ret. Sys. v. Quest Software Inc.*,
  527 F. Supp. 2d 1164 (C.D. Cal. 2007) ....................................................................16

*Neborsky v. Valley Forge Composite Techs., Inc.*,
  2014 WL 1705522 (S.D. Cal. Apr. 28, 2014) .............................................................8

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
  2016 WL 6782768 (C.D. Cal. Aug. 9, 2016)...............................................................7

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ..................................................................................12

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ......................................................................................8

*Richardson v. Oppenheimer & Co. Inc.*,
  2013 WL 1955406 (D. Nev. May 10, 2013) (Navarro, J.) ..........................................4

*In re Rigel Pharm., Inc. Sec. Litig.*,
  2009 WL 5125344 (N.D. Cal. Dec. 21, 2009) ..........................................................15

*In re Rigel Pharm., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ....................................................................................11

*Rok v. Identiv, Inc.*,
  2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd*, 716 F. App'x 663 (9th Cir.
  2018) ..........................................................................................................................11

*Santa Fe Indus., Inc. v. Green*,
  430 U.S. 462 (1977)...................................................................................................11

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

- iii -

*Schuster v. Symmetricon, Inc.*,
  2000 WL 33115909 (N.D. Cal. Aug. 1, 2000) .........................................................11

*Sgarlata v. PayPal Holdings, Inc.*,
  2018 WL 6592771 (N.D. Cal. Dec. 13, 2018)..................................................15, 16

*In re Silicon Graphics, Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ....................................................................4, 9, 10, 14

*In re SolarCity Corp. Sec. Litig.*,
  274 F. Supp. 3d 972 (N.D. Cal. 2017) ...................................................................5

*Special Situations Fund III QP, L.P. v. Brar*,
  2015 WL 1393539 (N.D. Cal. Mar. 26, 2015)........................................................15

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ..............................................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 3058563 (N.D. Cal. July 19, 2017)........................................................15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 66281 (N.D. Cal. Jan. 4, 2017)..............................................................16

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th
  Cir. 2019) ..................................................................................................................9

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) ..................................................................................14

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ...........................................................................12, 15

**Statutes and Rules**

15 U.S.C. § 78u-4(b)(1)
  (Private Securities Litigation Reform Act of 1995)...............................................4

17 C.F.R. § 240.10b-5
  (Securities and Exchange Commission Rule 10b-5) ...................................... *passim*

Fed. R. Civ. P.
  Rule 8 ........................................................................................................................6
  Rule 9(b) .............................................................................................................4, 8, 9
  Rule 12(b)(6)......................................................................................................4, 12

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

<u>**MOTION TO DISMISS AND JOINDER**</u>

Kimmarie Sinatra hereby moves to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 9(b), and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* (the "PSLRA"), the claims asserted against her in Lead Plaintiffs John V. and JoAnn M. Ferris' ("Plaintiffs") Second Amended Class Action Complaint (the "Second Amended Complaint" or "SAC") [ECF No. 122].   In moving to dismiss the SAC, Ms. Sinatra joins the Motion to Dismiss filed by Defendants Wynn Resorts, Limited ("Wynn Resorts" or the "Company"), Craig Scott Billings, Matthew O. Maddox, J. Edward Virtue, Clark T. Randt, Jr., Robert J. Miller, Ray R. Irani, Daniel B. Wayson, John J. Hagenbuch, Jay L. Johnson, Patricia Mulroy, and Alvin A. Shoemaker (the "Wynn Resorts Defendants' Motion to Dismiss").

This motion is supported by the Memorandum of Points and Authorities below; the accompanying Request for Judicial Notice and exhibits attached to the Declaration of Christine Hanley (the "Hanley Declaration"); the Wynn Resorts Defendants' Motion to Dismiss; the other papers and pleadings on file in the action; and any oral argument this Court may choose to consider.

Dated this 14th day of August 2020.

GARMAN TURNER GORDON LLP

*/s/ Erika Pike Turner*
ERIKA PIKE TURNER

Garman Turner Gordon LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3          Plaintiffs have overreached under the federal securities laws by naming Kimmarie Sinatra

4   as a defendant in this case.  Like its predecessor, the SAC does not allege that Ms. Sinatra, Wynn

5   Resorts' former General Counsel and Secretary, made any of the dozens of alleged

6   misstatements.   Nor are there any factual allegations in the SAC showing that Ms. Sinatra

7   exercised power and control over those who are alleged to have made the alleged misstatements.

8   Notwithstanding these omissions, Plaintiffs assert that Ms. Sinatra is primarily liable under

9   Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission

10  ("SEC") Rule 10b-5 for alleged misstatements made to Wynn Resorts investors between 2014

11  and 2018, and under Section 20(a) of the Exchange Act for purportedly "controlling" those who

12  made the alleged misstatements.  As explained below, Plaintiffs' attempt to plead claims against

13  Ms. Sinatra under those provisions is misguided and fails for a host of reasons.

14          ***First***, for the reasons set forth in the Wynn Resorts Defendants' Motion to Dismiss,

15  Plaintiffs fail to plead a Section 10(b) and Rule 10b-5 claim against any Defendant, much less

16  Ms. Sinatra, because none of the alleged misstatements cited in the SAC is actionably false or

17  misleading and, in any event, because they fail to adequately plead the "loss causation" element

18  of their claim.  And because Plaintiffs fail to plead a primary violation of Section 10(b), their

19  "control person" claim against Ms. Sinatra under Section 20(a) likewise fails.

20          ***Second***, irrespective of whether any of the alleged misstatements is actionably false or

21  misleading, or whether Plaintiffs have adequately pled loss causation, Ms. Sinatra cannot be held

22  liable under Section 10(b) and Rule 10b-5 because ***she did not make any of the alleged***

23  ***misstatements***.  To be liable under Section 10(b) and Rule 10b-5 for an alleged misstatement, a

24  defendant must have "made" the statement.  *Janus Capital Grp. v. First Derivative Traders*, 564

25  U.S. 135, 141 (2011).  The SAC is devoid of any factual allegation that Ms. Sinatra made or had

26  "ultimate authority" over any alleged misstatement, or that any of the alleged misstatements was

27  otherwise attributed to her.  *Id.* at 142.  To the contrary, the SAC makes clear that each of the

28

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

1   alleged misstatements was orally made by, or included in documents signed by, or otherwise

2   explicitly attributed to, individuals *other than* Ms. Sinatra.

3       ***Third***, the SAC alleges no specific facts creating a "strong inference" that Ms. Sinatra

4   acted with an intent to deceive investors in connection with the purchase or sale of a security, as

5   required by the PSLRA.  Because the SAC does not allege that Ms. Sinatra ever made a

6   misstatement, Plaintiffs cannot show—as a matter of both law and logic—that she engaged in

7   intentional or deliberately reckless conduct designed to deceive ***investors***, as required under

8   Section 10(b) and Rule 10b-5.  All of the SAC's allegations against Ms. Sinatra concern only her

9   purported failings as Wynn Resorts' General Counsel and say nothing about an intent to defraud

10  investors.  As a matter of law, alleged conduct that amounts to nothing more than internal

11  corporate mismanagement is not actionable under Section 10(b) and Rule 10b-5.

12      ***Fourth***, and finally, the SAC is devoid of factual allegations showing that Ms. Sinatra

13  "controlled" any purported primary violator of Section 10(b), as required to plead a Section 20(a)

14  claim.  In fact, the SAC makes clear that Ms. Sinatra was a ***subordinate*** of the other individual

15  defendants who are alleged to have made the alleged misstatements and/or signed the documents

16  containing the alleged misstatements.  Plaintiffs do not, and cannot, explain how Ms. Sinatra

17  could have exercised control over the alleged primary violators, her former bosses, who clearly

18  outranked her within Wynn Resorts.

19  **II.      SUMMARY OF ALLEGATIONS RELATING TO MS. SINATRA**

20      In its order granting Defendants' motions to dismiss the Amended Complaint ("FAC"),

21  the Court ordered that any further amendments to the complaint must plead "allegations of

22  scienter . . . specific to a Defendant's state of mind at the time he or she made the statements[,] . .

23  . .  differentiate [Plaintiffs'] allegations as to each Defendant[,] and refrain from lumping

24  multiple Defendants together."  ECF No. 119 at 36.  The SAC fails on both fronts.

25      Despite the Court's clear order, the SAC contains no specific facts showing that ***Ms.***

26  ***Sinatra***—not a group of Defendants—made or had ultimate authority over any allegedly

27  misleading misstatement.  Despite Plaintiffs' conclusory assertion that Ms. Sinatra "signed or

28  certified" various alleged misstatements, *e.g.*, SAC ¶ 155, ***none*** of the statements of which

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT
- 2 -

1   Plaintiffs complain appear in documents bearing Ms. Sinatra's signature, *see infra*, nn.2-3.

2   Plaintiffs attempt to attribute statements in the Company's proxy statements to Ms. Sinatra, but

3   as the SAC concedes, Ms. Sinatra signed only the cover letter distributed with the proxy

4   statements, not the proxy statements themselves, and did so "***by order of the Board of***

5   ***Directors***." SAC ¶¶ 144, 182, 212, 246, 336 (emphasis added). In short, the SAC is devoid of

6   factual allegations that establish that Ms. Sinatra ***made*** any misleading statement.

7       The SAC also fails to plead specific facts establishing a "strong inference" that Ms.

8   Sinatra had the requisite scienter when the allegedly misleading statements were made. The

9   entirety of Plaintiffs' "new" allegations against Ms. Sinatra are sourced from the IEB Report and

10  the MGC Decision and Order. At their core, these allegations show that by "no later than

11  December 2013 . . . Defendant Sinatra was aware of at least the 2005 Settlement and likely

12  aware of others (including the 2008 Settlement)." *E.g.*, SAC ¶¶ 106-07; *see also id.* ¶ 76-77, 83,

13  86, 90, 99, 219, 221, 223, 314, 339. The FAC—relying on the NGCB Complaint and Company

14  Settlement and allegations made by Ms. Wynn—made the same core allegation against Ms.

15  Sinatra that she was "in possession of material-nonpublic information concerning Defendant

16  Wynn's longstanding pattern of sexual abuse and harassment," including an allegation of rape.

17  *See, e.g.*, FAC ¶¶ 23, 157, 224. However, merely asserting that Ms. Sinatra had knowledge of a

18  single incident and "likely others" allegedly occurring many years before the Class Period does

19  not plead a claim for securities fraud. Like the FAC, the SAC is utterly devoid of factual

20  averment showing that Ms. Sinatra did anything ***with an intent to mislead investors***.

21      Finally, the SAC does not allege any facts to show that Ms. Sinatra "controlled" any

22  purported primary violator of Section 10(b). Rather, it lumps Ms. Sinatra in with the other

23  Individual Defendants and alleges in utterly conclusory fashion that they were all "'controlling

24  persons' of the Company within the meaning of Section 20(a)." SAC ¶¶ 446-47. However, the

25  SAC fails to explain how Ms. Sinatra could possibly have "the power to direct the actions of . . .

26  the Company," *id.* ¶ 447, when other Defendants who outranked her at the Company purportedly

27  had the same authority.

28

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT
- 3 -

1

### III.     THE HEIGHTENED PLEADING STANDARDS GOVERNING THIS CASE

2

3          To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft*

4     *v. Iqbal*, 556 U.S. 662, 678 (2009).   "A pleading that offers 'labels and conclusions' or 'a

5     formulaic recitation of the elements of a cause of action will not do." *Id.*

6          Rule 9(b) and the PSLRA impose two additional exacting pleading requirements in

7     securities fraud actions like this one.   Under Rule 9(b), "[i]n alleging fraud or mistake, a party

8     must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.

9     9(b).   "This rule requires that claims of fraud be accompanied by the 'who, what, when, where,

10    and how' of the conduct charged . . . so that the complaint may not simply 'lump multiple

11    defendants together.'"   *Richardson v. Oppenheimer & Co. Inc.*, 2013 WL 1955406, at *5 (D.

12    Nev. May 10, 2013) (Navarro, J.) (citations omitted).   Further, the PSLRA requires the complaint

13    to specify each statement alleged to have been false or misleading and the reasons why, and to

14    plead with particularity all facts on which that belief is formed.   15 U.S.C. § 78u-4(b)(1).   The

15    PSLRA also requires the complaint to plead "with particularity facts giving rise to a strong

16    inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2).

17         The import of these provisions is that a plaintiff "must plead, ***in great detail***, facts"

18    supporting her securities fraud claim, *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974

19    (9th Cir. 1999) (emphasis added), and must do so as to each defendant separately.   "It is not

20    sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified sources will

21    reveal, after appropriate discovery, facts that will validate her claim." *Id.* at 985.

22    ### IV.     ARGUMENT[1]

23         #### A.     Ms. Sinatra Is Not the Maker of Any Alleged Misstatement

24         To be held liable for a violation of Section 10(b) and Rule 10b-5(b), a defendant "must

25    have 'made' the [alleged] misstatement."   *Janus*, 564 U.S. at 141.   "[T]he maker of [the]

26

27    ---
[1] For the reasons set forth in the Wynn Resorts Defendants' Motion to Dismiss, none of the
alleged misstatements is actionably false or misleading, and, in any event, Plaintiffs fail to
28    adequately plead loss causation.   Thus, Plaintiffs' Section 10(b) and Rule 10b-5 claim against
Ms. Sinatra may be dismissed without further analysis.

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

- 4 -

statement is the person or entity with ***ultimate authority*** over the statement, including its content and whether and how to communicate it." *Id.* at 142 (emphasis added). By contrast, "[o]ne who prepares or publishes a statement on behalf of another is not its maker." *Id.* "Courts since *Janus* have applied it to disallow Rule 10b-5(b) claims against defendants who merely requested, influenced, helped create, or supplied information for the relevant false or misleading statements." *In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *6 (C.D. Cal. July 13, 2015); *see also In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1006-07 (N.D. Cal. 2017).

Plaintiffs assert that many of the alleged misstatements "were made by or are attributable to Sinatra." SAC ¶ 21. Despite this assertion, the SAC does not allege any facts to show that Ms. Sinatra had "ultimate authority" over any of the alleged misstatements. To the contrary, the SAC makes clear that each of the alleged misstatements purportedly "attributable to Sinatra" was included in documents signed by or otherwise explicitly attributed to (i) individuals ***other than*** Ms. Sinatra[2] or (ii) the corporate entity of Wynn Resorts.[3]

---

[2] *See* SAC ¶ 105 ("Code of Conduct opened with a letter from Defendant Wynn [that] stat[ed] . . ."), ¶ 128 ("2013 10-K was signed . . . by, Elaine Wynn and Defendants Wynn, Hagenbuch, Irani, Shoemaker, Virtue, Wayson, and Maddox" and also "contained signed [SOX] certifications. . . by Defendants Wynn and Maddox"), ¶ 144 (2014 Definitive Proxy Statement furnished "by order of the Board of Directors . . . in connection with the solicitation by its Board of Directors for proxies for its 2014 Annual Meeting"), ¶ 149 (April 22, 2014, Wynn Resorts Form 8-K "signed by Defendant Maddox"), ¶ 155 ("2014 Q1 10-Q was signed by Defendant Maddox and also contained signed SOX certifications by Defendants Wynn and Maddox"), ¶ 158 (August 8, 2014 Form 10-Q "was signed by Defendant Cootey and also contained signed SOX certifications by Defendants Wynn and Cootey"), ¶ 162 (November 7, 2014 Form 10-Q "was signed by Defendant Cootey and also contained signed SOX certifications by Defendants Wynn and Cootey"), ¶ 172 ("2014 10-K was signed by Elaine Wynn and Defendants Wynn, Hagenbuch, Irani, Miller, Shoemaker, Virtue, Wayson, and Cootey" and "contained signed SOX certifications by Defendants Wynn and Cootey"), ¶ 182 (2015 Definitive Proxy Statement furnished "by order of the Board of Directors . . . in connection with the solicitation by its Board of Directors for proxies for its 2015 Annual Meeting"), ¶ 185 (on "March 24, 2015, the Company filed a Schedule 14A attaching a presentation from the Board" and "a letter from the Board" "signed by Defendant Miller"), ¶ 191 ("2015 Q1 10-Q was signed by Defendant Cootey and also contained signed SOX certifications by Defendants Wynn and Cootey"), ¶ 194 ("2015 Q2 10-Q was signed by Defendant Cootey and also contained signed SOX certifications by Defendants Wynn and Cootey"), ¶ 200 ("2015 Q3 10-Q was signed by Defendant Cootey and also contained signed SOX certifications by Defendants Wynn and Cootey"), ¶ 203 ("2015 10-K was signed by Defendants Wynn, Hagenbuch, Irani, Miller, Mulroy, Randt, Shoemaker, Virtue, Wayson, and Cootey, and also contained signed SOX certifications by Defendants Wynn and Cootey"), ¶ 212 (2016 Definitive Proxy Statement furnished "by order of the Board of Directors . . . in connection with the solicitation by its Board of Directors for proxies for its 2016 Annual Meeting"), ¶ 227 ("2016 Q1 10-Q was signed by Defendant Cootey and also contained signed SOX certifications by Defendants Wynn and Cootey"), ¶ 230 ("2016 Q2 10-Q was signed by Defendant Cootey and also contained signed SOX certifications by Defendants Wynn and

As to the first category, Ms. Sinatra is plainly not the "maker" of the statements signed by or explicitly attributed to other individuals. *See supra*, n.2. *Janus* holds that "in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement ***was made by—and only by—the party to whom it is attributed***." 564 U.S. at 142-43 (emphasis added). The SAC does not allege any facts to show that this is an "extraordinary" case such that *Janus*' holding does not apply. Instead, the SAC asserts, in an entirely conclusory manner, that, despite Wynn Resorts' disclosures being signed by or expressly attributed to other individuals, "[a]s the Company's Executive Vice President and General Counsel directly involved in the Company's day-to-day affairs, Defendant Sinatra had ultimate authority over the statements issued by the Company during the Class Period and that are alleged above and at issue." SAC ¶ 337; *see also id.* ¶¶ 106, 218, 226 (same). Such boilerplate and conclusory position-based allegations are plainly insufficient. *See, e.g.*, *In re Immersion Corp. Sec. Litig.*, 2011 WL 871650, at *3 (N.D. Cal. Mar. 11, 2011) (rejecting conclusory allegations that individuals "controlled and/or possessed the authority to control the contents of [the company's] reports, press releases"). Even under the notice pleading standards of Rule 8, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678.

Plaintiffs argue that Ms. Sinatra had ultimate authority over Defendant Wynn's January 26, 2018 "written denial" to the Wall Street Journal because she allegedly "actively participated in the drafting of the statement." SAC ¶¶ 264, 266. But even if that were true, *Janus* makes

_____ (continued)

Cootey"), ¶ 233 ("2016 Q3 10-Q was signed by Defendant Cootey and also contained signed SOX certifications by Defendants Wynn and Cootey"), ¶ 236 ("2016 10-K was signed by Defendant Wynn, Hagenbuch, Irani, Johnson, Miller, Mulroy, Randt, Shoemaker, Virtue, Wayson and Cootey, and also contained signed SOX certifications by Defendants Wynn and Cootey"), ¶ 246 (2017 Definitive Proxy Statement furnished "by order of the Board of Directors . . . in connection with the solicitation by its Board of Directors for proxies for its 2017 Annual Meeting"), ¶ 251 ("2017 Q1 10-Q was signed by Defendant Billings and also contained signed SOX certifications by Defendants Wynn and Billings"), ¶ 256 ("2017 Q2 10-Q was signed by Defendant Billings and also contained signed SOX certifications by Defendants Wynn and Billings"), ¶ 259 ("2017 Q3 10-Q was signed by Defendant Billings and also contained signed SOX certifications by Defendants Wynn and Billings"), ¶ 265 ("In response to the January 26, 2018 WSJ article . . . Defendant Wynn immediately denied the accusations").

[3] *See* SAC ¶ 217 ("On March 28, 2016, Wynn Resorts issued a press release"), ¶ 225 ("On April 5, 2016, Wynn Resorts issued a press release"), ¶ 267 ("In response to the WSJ article the Company issued an additional written statement").

Garman Turner Gordon LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

- 6 -

clear that "[o]ne who prepares . . . a statement on behalf of another is not its maker," 564 U.S. at 142, and so allegations that a defendant "influenced, helped create, or supplied information for the relevant false or misleading statements" do not establish that a defendant was the "maker" of an alleged misstatement, *In re CytRx*, 2015 WL 5031232 at *6; *see also Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2016 WL 6782768, at *10 (C.D. Cal. Aug. 9, 2016) ("Although the FAC repeatedly states that Warburg controlled, drafted, and participated in the investor calls. . . these generalized, conclusory allegations are insufficient to show that Warburg controlled the statements").   Plaintiffs also allege that because Ms. Sinatra signed the "Notice of Annual Meeting" accompanying Wynn Resorts' proxy statements, she can be deemed the "maker" of any alleged misstatements included in the proxy statements.  *See* SAC ¶¶ 144, 182, 212, 246. But the Notices—which are not alleged to include any false or misleading statement—and the proxy statements are separate documents, and Ms. Sinatra's signature on the former documents (the Notices) does not establish that she had "ultimate authority" over the latter documents (the proxy statements).  Moreover, the SAC admits that Ms. Sinatra signed the Notices "***by Order of the Board of Directors***" in "connection with the solicitation ***by [the] Board of Directors*** for proxies for [each] Annual Meeting," *id.* (emphases added), and thus tacitly concedes that she lacked "ultimately authority" over the allegedly misleading proxy statements, *see Janus*, 564 U.S. at 142 ("One who . . . publishes a statement on behalf of another is not its maker.").

The SAC similarly does not allege any specific facts to show that Ms. Sinatra had "ultimate authority" over the unattributed corporate statements of Wynn Resorts. *See supra*, n.3. It merely identifies Ms. Sinatra's role as General Counsel of Wynn Resorts, and repeats the same conclusory allegation of purported "ultimate authority" that it indiscriminately pleads against *every* Individual Defendant.[4]  As numerous courts have held, such generalized allegations are

---

[4] *Compare* SAC ¶ 337 ("As the Company's Executive Vice President and General Counsel directly involved in the Company's day-to-day affairs, Defendant Sinatra had ultimate authority over the statements [at issue in this case]."), *with id.* ¶ 328 ("As CEO and Chairman of the Board . . . Defendant Wynn had ultimate authority . . ."), ¶ 349 ("As President of the Company . . . Defendant Maddox had ultimate authority . . ."), ¶ 359 ("As the Company's CFO, Senior Vice President, and Treasurer . . . Defendant Cootey had ultimate authority . . ."), ¶ 364 ("As the Company's CFO, Principal Accounting Officer and Treasurer . . . Defendant Billings had ultimate authority . . ."); *see also* ¶¶ 368, 374, 379, 385, 390, 397, 402, 407, 412 (alleging each Director Defendant had "ultimate authority" over statements in SEC filings).

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

1   insufficient.[5]   Indeed, the SAC fails to explain how Ms. Sinatra could possess "***ultimate***

2   authority" over these statements, as required by *Janus*, if every other Individual Defendant also

3   had "ultimate authority" over the same alleged misstatements.  *See, e.g.*, *Abdo v. Fitzsimmons*,

4   2017 WL 6994539, at *9 (N.D. Cal. Nov. 3, 2017) (rejecting "imprecise allegations that all

5   Defendants were somehow involved in creating the documents in an undefined way, or had even

6   more attenuated control over statements of the company").   Simply put, and as the Court

7   recognized in dismissing the FAC, where, as here, "facts are pleaded indiscriminately against a

8   group, rather than against particular defendants, Rule 9(b)'s requirements are not met."   *All.*

9   *Tech. Grp., LLC v. Achieve 1*, LLC, 2013 WL 143500, at *9 (E.D. Va. Jan. 11, 2013).

10        At bottom, *Janus* "sets the pleading bar even higher in private securities fraud actions

11   seeking to hold defendants primarily liable for the misstatements of others."  *Reese v. BP Expl.*

12   *(Alaska) Inc.*, 643 F.3d 681, 693 n.8 (9th Cir. 2011).  In light of *Janus*, and the particularity

13   requirements of Rule 9(b) and the PSLRA, Plaintiffs were required to plead facts ***specific to Ms.***

14   ***Sinatra*** showing that she possessed "ultimate authority" over the alleged misstatements.  Having

15   failed to do so, their Section 10(b) and Rule 10b-5 claim against her must be dismissed.

16        **B.     The SAC Fails to Plead A Strong Inference Of Scienter As To Ms. Sinatra**

17        Plaintiffs' Section 10(b) and Rule 10b-5 claim against Ms. Sinatra must also be dismissed

18   because the SAC lacks specific facts giving rise to a "strong inference" that Ms. Sinatra acted

19

20   _____

   [5] *See, e.g., Hefter v. Wells Fargo & Co.*, 2018 WL 1070116, at *9 (N.D. Cal. Feb. 27, 2018)
   (conclusory allegation that "because of their positions of control and authority as officers and/or
21   directors [Defendants] were able to and did control the content of . . . [the Company's] public
   statements" and "that all the Officer Defendants. . . were provided with the documents alleged to
22   be misleading 'prior to or shortly after their issuance and/or had the ability and/or opportunity to
   prevent their issuance or cause them to be corrected,'" was insufficient under *Janus* to plead that
23   officers were the makers of statements) (alteration in original); *Markette v. XOMA Corp.*, 2017
   WL 4310759, at *13 (N.D. Cal. Sept. 28, 2017) (applying *Janus* to dismiss claims against
24   director because complaint lacked "factual allegations" to support conclusory assertion that "as a
   board member . . . [he] 'had "ultimate authority"' over the false and misleading statements at
25   issue"); *Neborsky v. Valley Forge Composite Techs., Inc.*, 2014 WL 1705522, at *6 (S.D. Cal.
   Apr. 28, 2014) ("Plaintiff relies solely on Wilhide's role within the company to argue that the
26   statements of Valley Forge can be attributed to him. This is insufficient under *Janus*"); *Bruce v.*
   *Suntech Power Holdings Co. Ltd.*, 2013 WL 6843610, at *4 (N.D. Cal. Dec. 26, 2013) ("To the
27   extent plaintiffs seek to hold King liable for [] statements . . . on the basis of his position as CFO,
   the conclusory allegations that he 'had the authority to and did control the making of [those]
28   statements' 'by virtue of [his] responsibilities and activities as [CFO]' lack the requisite
   specificity") (2nd and 3rd alteration in original).

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

- 8 -

with scienter.  To plead scienter in a PSLRA case like this one, a plaintiff "must state specific facts indicating [that the defendant acted with] no less than a degree of recklessness that strongly suggests actual intent" to deceive investors.  *In re Silicon Graphics*, 183 F.3d at 979.  Plaintiffs have not even come close to meeting their burden with respect to Ms. Sinatra.

> **1.    Plaintiffs Fail to Plead Any Specific Facts That Ms. Sinatra Acted with Intent to Mislead Investors**

In its Order dismissing the FAC, the Court made clear that "any allegations of scienter must be specific to a Defendant's ***state of mind at the time he or she made the statements***." ECF No. 119 at 36 (emphasis added).  As discussed above, the SAC fails to even allege that Ms. Sinatra "made" any alleged misstatement.  Accordingly, Plaintiffs do not—and cannot—plead specific facts creating a "strong inference" that Ms. Sinatra engaged in intentional or deliberately reckless conduct ***designed to deceive investors***.  *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976) (Section 10(b) scienter requires "intentional or willful conduct designed to deceive or defraud investors"); *In re Silicon Graphic*, 183 F.3d at 976 (for conduct to constitute scienter under Section 10(b), it must "present[] a danger of misleading buyers or sellers" of securities); *see also Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *22 (N.D. Cal. Dec. 18, 2017) (dismissing complaint that lacked "allegations regarding Defendants' state of mind with respect to the [challenged] representation"), *aff'd*, 765 F. App'x 239 (9th Cir. 2019).

Indeed, the SAC does not allege anything that would suggest that Ms. Sinatra ever sought to deceive investors "by controlling or artificially affecting the price of [Wynn Resorts] securities." *Ernst & Ernst*, 425 U.S. at 199.  The SAC's new allegations against Ms. Sinatra[6] are sourced from the IEB Report and the MGC Decision and Order.[7]  These allegations are largely cumulative to the allegations in the FAC regarding Ms. Sinatra's purported knowledge of Mr.

---

[6] The SAC's scienter allegations in paragraphs 420-423 are the same kind of conclusory and group-pled statements that the Court found impermissible under the PLSRA and Rule 9(b).  *See* ECF No. 119 at 36.  As instructed by this Court, scienter must be specifically pled as to each Defendant separately, and Plaintiffs must "refrain from lumping multiple Defendants together." *Id.*  As such, the allegations in these paragraphs should be disregarded.

[7] As the judicially noticeable MGC Order shows, Ms. Sinatra was not a "qualifier" subject to the MGC's jurisdiction, and the MGC made no findings as to her.  *See* MGC Order, a true and correct copy of which is attached as Ex. 1 to the Hanley Declaration.

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

- 9 -

Wynn's alleged misconduct years earlier.  *See* FAC ¶¶ 224, 228.  But the SAC utterly fails to state a factual basis creating a "strong inference" that Ms. Sinatra intended to ***mislead investors***. The assertions that Elaine Wynn reported the 2005 settlement and its underlying allegations to Ms. Sinatra in 2009, SAC ¶ 76; that Ms. Sinatra was present at two meetings regarding a 2008 settlement between Mr. Wynn and a terminated Wynn Las Vegas employee, *id.* ¶ 83; and that she was forwarded a memo in 2014 drafted by outside counsel summarizing a 2005 rape allegation, *id.* ¶ 86, say nothing about whether Ms. Sinatra intended to mislead investors.

The SAC's other allegations are likewise wholly unrelated to establishing deceptive intent toward investors.  The claim that Ms. Sinatra sought to revise the Company sexual harassment policy is irrelevant, as Plaintiffs concede that she ultimately advocated ***against*** Mr. Wynn to leave the policy as it was.  *Id.* ¶ 111.  The assertion that Ms. Sinatra approved a request to investigate a named source of the *WSJ* article, *id.* ¶ 99, and failed to disclose information to the MGC during the licensing process and testify before the MGC after she had left the Company, *id.* ¶¶ 69, 343-44, likewise fail to establish any factual basis that she intentionally or willfully sought to deceive investors.  *See ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) ("[T]he facts alleged must support an inference of an intent to defraud the plaintiffs rather than some other group").

Plaintiffs also attempt to plead Ms. Sinatra's scienter by conclusorily alleging that she had "motive and opportunity to engage in fraud."  SAC ¶ 346.  But in the Ninth Circuit, "plaintiffs who plead the required state of mind in general terms of mere 'motive and opportunity' or 'recklessness' fail to meet the PSLRA's heightened pleading requirements." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir. 2002); *In re Silicon Graphics*, 183 F.3d at 979 ("plaintiffs proceeding under the PSLRA can no longer aver intent in general terms of mere 'motive and opportunity' or 'recklessness,' but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent").  Moreover, generalized motives like those alleged here[8] that can be imputed to any corporate executive

---

[8] The SAC claims that Ms. Sinatra was "motivated to engage in fraud for a variety of reasons, including: (i) to conceal allegations that Defendant Wynn engaged in deliberately unlawful behavior . . . that, if discovered, could lead to criminal investigations, civil suits and claims

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

1    cannot substitute for the particularized allegations required by the PSLRA showing that Ms.

2    Sinatra had a specific motive to defraud investors.  *See In re Rigel Pharm., Inc. Sec. Litig.*, 697

3    F.3d 869, 884 (9th Cir. 2012) (motives that can generally be ascribed to all executives are legally

4    insufficient to plead fraud under PSLRA); *Schuster v. Symmetricon, Inc.*, 2000 WL 33115909, at

5    *8 (N.D. Cal. Aug. 1, 2000) (rejecting assertion that defendants were motived to commit fraud

6    because they supposedly "'dreaded' the effect of disclosing the company's problems").

7         At bottom, all that the SAC alleges is that Ms. Sinatra knew of Mr. Wynn's alleged past

8    misconduct and did not take appropriate corrective action or disclose it to the appropriate

9    authorities (*e.g.*, the Board of Directors, regulators).  But engaging in corporate mismanagement

10   or "[w]anting to keep something secret, in and of itself, is insufficient to implicate the PSLRA"

11   and Section 10(b).  *Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard*

12   *Co.*, 964 F. Supp. 2d 1128, 1143 (N.D. Cal. 2013).   While Plaintiffs question Ms. Sinatra's

13   business judgment, *see, e.g.*, SAC ¶¶ 76-77, 83, 111, 219, 221-22, 223, 314, 338-44, "[t]he

14   scienter that the SAC is required to allege is an intent to defraud investors—***not*** an intent" to

15   engage in conduct that amounts to internal corporate mismanagement.  *Rok v. Identiv, Inc.*, 2017

16   WL 35496, at *11 (N.D. Cal. Jan. 4, 2017), *aff'd*, 716 F. App'x 663 (9th Cir. 2018); *see also*

17   *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977) ("Congress by [Section] 10(b) did not

18   seek to regulate transactions which constitute no more than internal corporate mismanagement").

19        In short, the SAC fails to plead the requisite "strong inference" of scienter as to Ms.

20   Scienter because it does not allege "any facts independently establishing that [she] knew [her]

21   conduct"—which did not involve making statements to the market—"would have the effect of

22   misleading ***investors***."  *Cement & Concrete Workers*, 964 F. Supp. 2d at 1143 (emphasis added).

23              **2.      Ms. Sinatra's Stock Sales Add Nothing To The Scienter Analysis**

24        Ms. Sinatra's alleged sales of Wynn Resorts stock during the Class Period do not change

25   the scienter analysis.  *See* SAC ¶ 345.  The sale of company stock is indicative of scienter "only

26   ───────────────────── (continued)

27   against her, news articles exposing her role … damage to her personal reputation, and . . .
     gaming regulators finding her unsuitable …; (ii) defeat claims asserted against her and the
28   Company in the *Okada* matter; and (iii) to preserve her position at the Company and the valuable
     compensation and other benefits it afforded her."  SAC ¶ 346.

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS**
**SECOND AMENDED CLASS ACTION COMPLAINT**

1    when it is dramatically out of line with prior trading practices at times calculated to maximize the

2    personal benefit from undisclosed inside information." *Zucco Partners, LLC v. Digimarc Corp.*,

3    552 F.3d 981, 1005 (9th Cir. 2009) (internal quotation marks and citation omitted).  Here, "no

4    inference of scienter can be gleaned from [Plaintiffs'] stock sale assertions," *id.* at 1006, because

5    they have failed to "provide a 'meaningful trading history' for purposes of comparison to the

6    stock sales within the class period," *id.* at 1005; *see also Police Ret. Sys. of St. Louis v. Intuitive*

7    *Surgical, Inc.*, 759 F.3d 1051, 1064 (9th Cir. 2014) (complaint failed to plead scienter on basis of

8    stock sales where it pleaded "no allegations regarding the defendants' prior trading history").

9          Plaintiffs' omission of Ms. Sinatra's trading history is not surprising.   Judicially

10   noticeable facts establish that her stock sales during the Class Period were anything but

11   "suspicious" or "dramatically out of line" with her prior trading practices.  As the table below

12   shows, Ms. Sinatra sold a significantly smaller percentage of her total Wynn Resorts stock

13   holdings during the four-year Class Period than she did in the years preceding the Class Period.

| Date of Sale | Total Shares Sold | Number of Shares Held Prior to Sale | Percentage of Holdings Sold |
|---|---|---|---|
| **Pre-Class Period Sales** | | | |
| November 20, 2009 | 35,000 | 85,000 | 41.1%[9] |
| August 26, 2010 | 25,000 | 75,000 | 33.3%[10] |
| May 25, 2011 | 25,000 | 75,000 | 33.3%[11] |
| May 26, 2013 | 15,600 | 90,887 | 17.1%[12] |
| November 14, 2013 | 10,000 | 75,287 | 13.3%[13] |

[9] *See* Form 4 filed with the SEC on November 23, 2009, a true and correct copy of which is attached as Ex. 2 at pp. 56-58 to the Hanley Declaration.  "In the context of a Rule 12(b)(6) motion to dismiss a § 10(b) action, 'courts must consider . . . matters of which a court may take judicial notice.'"  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 848 (N.D. Cal. 2014), *aff'd*, 856 F.3d 605 (9th Cir. 2017).  As noted in Ms. Sinatra's Request for Judicial Notice, "[c]ourts in this circuit have routinely taken judicial notice of Forms 4 to determine whether insider stock sales raise an inference of scienter to support a § 10(b) action." *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *4 (N.D. Cal. Nov. 27, 2018). Accordingly, the Court may properly take judicial notice of the true and correct copies of Ms. Sinatra's Forms 4 attached to the Hanley Declaration.

[10] *See* Form 4 filed with the SEC on August 27, 2010, a true and correct copy of which is attached as Ex. 3 at pp. 59-61, to the Hanley Declaration.

[11] *See* Form 4 filed with the SEC on May 25, 2011, a true and correct copy of which is attached as Ex. 4 at pp. 62-64, to the Hanley Declaration.

[12] *See* Form 4 filed with the SEC on May 7, 2013, a true and correct copy of which is attached as Ex. 5 at pp. 65-67, to the Hanley Declaration.

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS**
**SECOND AMENDED CLASS ACTION COMPLAINT**

- 12 -

| Class Period Sales | | | |
|---|---|---|---|
| May 9, 2014 | 13,907[14] | 95,314 | 14.6%[15] |
| November 29, 2016 | 42,343 | 143,472 | 29.5%[16] |
| June 9, 2017 | 22,624 | 221,067 | 10.2%[17] |
| September 15, 2017 | 21,451 | 223,443 | 9.6%[18] |
| November 8-9, 2017 | 20,810 | 226,992 | 9.1%[19] |

Not only were Ms. Sinatra's stock sales during the Class Period not "dramatically out of line" with her prior trading practices, the magnitude of her sales as a percentage of her Wynn Resorts stock holdings was too small to raise an inference of scienter. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) ("Moore sold only 37% of his total stock holdings during the Class Period. We typically require larger sales amounts . . . to allow insider trading to support scienter."). Moreover, Ms. Sinatra's stock holdings in Wynn Resorts *increased* during the Class Period, and she retained over 90% of her holdings. That fact negates an inference of scienter, since she "potentially would suffer the same losses as other investors when the value of [Wynn Resorts] stock dropped." *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1160 (C.D. Cal. 2007); *see also Applestein v. Medivation, Inc.*, 2011 WL 3651149, at *8 (N.D. Cal. Aug. 18, 2011) (holding that the fact that defendants held more company stock "at the end of the class period than they did at the beginning . . . strongly rebuts

──────── (continued) ────────

[13] *See* Form 4 filed with the SEC on November 14, 2013, a true and correct copy of which is attached as Ex. 6 at pp. 68-70, to the Hanley Declaration.

[14] The SAC incorrectly states that Ms. Sinatra sold 13,907 shares at $198.74 a share on May 9, 2014. As illustrated in Ms. Sinatra's Form 4 filed with the SEC on May 13, 2014, a true and correct copy of which is attached as Ex. 7 at pp. 71-73, to the Hanley Declaration, Ms. Sinatra sold 13,807 shares at that price that day. Ms. Sinatra additionally sold 100 shares at $199.20 a share that day, for a total of 13,907 shares.

[15] *See* Form 4 filed with the SEC on May 13, 2014, a true and correct copy of which is attached as Ex. 7 at pp. 71-73, to the Hanley Declaration.

[16] *See* Form 4 filed with the SEC on December 1, 2016, a true and correct copy of which is attached as Ex. 8 at pp. 74-76, to the Hanley Declaration.

[17] *See* Form 4 filed with the SEC on June 13, 2017, a true and correct copy of which is attached as Ex. 9 at 77-79, to the Hanley Declaration.

[18] *See* Form 4 filed with the SEC on September 19, 2017, a true and correct copy of which is attached as Ex. 10 at 80-82, to the Hanley Declaration.

[19] *See* Form 4 filed with the SEC on November 9, 2017, a true and correct copy of which is attached as Ex. 11 at pp. 83-85, to the Hanley Declaration.

LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT
- 13 -

an inference of scienter"); *In re Silicon Graphics*, 183 F.3d at 987 (rejecting inference of scienter where defendants "retained 90 percent of their available holdings"); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427 (9th Cir. 1994) (finding no scienter where defendants retained most of their stock and "ended up reaping the same large losses as did Plaintiffs").

Nor was the timing of Ms. Sinatra's stock sales during the Class Period suspicious. Each of her sales occurred shortly after the release of Wynn Resorts' quarterly results. As the Ninth Circuit has recognized, "[o]fficers of publicly traded companies commonly make stock transactions following the public release of quarterly earnings and related financial disclosures." *Lipton*, 284 F.3d at 1037 (holding that timing of stock sales was not suspicious where sales occurred shortly after quarterly earnings were released). And as discussed above, Ms. Sinatra is not alleged to have uttered a word during the Class Period, much less alleged to have made a false or misleading statement around the time she was selling her Wynn Resorts stock. *See In re Silicon Graphics*, 183 F.3d at 987-88 (fact that defendant who sold 65% of his stock did not utter any of the allegedly false and misleading statements dispelled an inference of scienter that plaintiffs asserted flowed from his stock sales).

Finally, had Ms. Sinatra "been selling [her] shares to 'dump' what [she] knew was artificially inflated stock"—and she was not—"other equally (or more) knowledgeable defendants presumably would have done the same thing." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir. 2002). Yet there is no allegation that Stephen Wynn—Wynn Resorts' CEO, Chairman and largest shareholder during the Class Period—sold any Wynn Resorts stock during the Class Period. The fact that Mr. Wynn, who according to Plaintiffs was the ringleader of the alleged fraud here, did not sell any stock negates any inference of scienter arising from Ms. Sinatra's stock sales. *See Metzler*, 540 F.3d at 1067; *In re Vantive*, 283 F.3d at 1094; *see also In re FVC.com Sec. Litig.*, 136 F. Supp. 2d 1031, 1039 (N.D. Cal. 2000) (fact that CEO sold no stock "negate[ed] any slight inference of scienter"), *aff'd*, 32 F. App'x 338 (9th Cir. 2002).

### C.     Plaintiffs' Section 20(a) Claim Against Ms. Sinatra Fails

To state a claim under Section 20(a) of the Exchange Act, a plaintiff must plead a primary violation of Section 10(b) and that the defendant exercised "actual power or control"

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

- 14 -

over the primary violator. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). Section 20(a) claims may be dismissed summarily if the plaintiff fails to plead a primary violation of Section 10(b). *Zucco*, 552 F.3d at 990. For the reasons set forth above and in the Wynn Resorts Defendants' Motion to Dismiss, Plaintiffs fail to plead a Section 10(b) claim against any Defendant, and so the Section 20(a) claim against Ms. Sinatra necessarily fails.

Further, the SAC does not allege any facts to show that Ms. Sinatra exercised "actual power or control" over any purported primary violator of Section 10(b). "Plaintiffs in alleging a [S]ection 20(a) claim cannot rely 'on boilerplate allegations; they must provide some factual support that defendants were in a position to control a primary violator.'" *Sgarlata v. PayPal Holdings, Inc.*, 2018 WL 6592771, at *8 (N.D. Cal. Dec. 13, 2018) (citation omitted); *see also City of Westland Police & Fire Ret. Sys. v. Sonic Sols.*, 2009 WL 942182, at *11 (N.D. Cal. Apr. 6, 2009) ("bare legal conclusions . . . devoid of any factual underpinnings" do not state a Section 20(a) claim).[20] Yet, in alleging their Section 20(a) claim, Plaintiffs rely solely on boilerplate allegations. They do not allege any facts to show that Ms. Sinatra controlled any purported primary violator of Section 10(b). Instead, Plaintiffs lump Ms. Sinatra in with all the other Individual Defendants, and make the following conclusory allegation:

> Because of their positions of control and authority as senior officers, the Individual Defendants were able to and did control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

SAC ¶ 446. Courts have repeatedly dismissed Section 20(a) claims based on such boilerplate allegations. *See, e.g.*, *Special Situations Fund III QP, L.P. v. Brar*, 2015 WL 1393539, at *10

---

[20] Some courts in the Ninth Circuit have held that a "plaintiff must plead the circumstances of the control relationship with sufficient particularity to satisfy [R]ule 9(b)." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 3058563, at *15 (N.D. Cal. July 19, 2017) (citation omitted); *In re Rigel Pharm., Inc. Sec. Litig.*, 2009 WL 5125344, at *6 (N.D. Cal. Dec. 21, 2009). However, even under a notice pleading standard, Plaintiffs cannot simply rely on conclusory or boilerplate allegations. *See Iqbal*, 556 U.S. at 678.

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

- 15 -

1
2
3
4
5

(N.D. Cal. Mar. 26, 2015) (dismissing Section 20(a) claim based on allegation that defendants "had the power, influence and authority to cause, and did cause, directly or indirectly, others to engage in the wrongful conduct complained of herein, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading," and noting that "these are 'boilerplate' allegations that courts have typically rejected").[21]

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Plaintiffs' failure to allege Ms. Sinatra's control over any purported primary violator of Section 10(b) is further underscored by the fact that Ms. Sinatra, who served as Executive Vice President, General Counsel and Secretary of Wynn Resorts during the Class Period, *see* SAC ¶ 21, was a ***subordinate*** of the other Individual Defendants and the Director Defendants who are alleged to have made the alleged misstatements and/or signed the documents containing the alleged misstatements.   Plaintiffs do not, and cannot, explain how Ms. Sinatra could have exercised control over alleged primary violators who clearly outranked her within Wynn Resorts. *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007) (dismissing Section 20(a) claim against a Vice President where there were no allegations he "was able to exercise control over the other 10b-5 Defendants when the other 10b-5 Defendants held positions of Vice President or higher"); *In re Energy Recovery Inc. Sec. Litig.*, 2016 WL 324150, at *26 (N.D. Cal. Jan. 27, 2016) (dismissing Section 20(a) claim against Chief Marketing Officer that "did not speak on the Company's behalf during earnings conference calls with investors, nor did she sign any SEC filings," and there was "no allegation that she directed or exercised control over [the CEO] who allegedly made the false and misleading statements").

21
22
23
24
25
26
27
28

---

[21] *See also, e.g., Sgarlata*, 2018 WL 6592771, at *8 ("These conclusory allegations of control over day-to-day activities are insufficient to establish control person liability."); *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *22 (C.D. Cal. May 23, 2008) ("Plaintiffs cannot simply base their claims on boilerplate allegations; they must provide some factual support that defendants were in a position to control a primary violator"); *Hansen*, 527 F. Supp. 2d at 1163 ("[T]his boilerplate allegation [which included participation in the company's operations] is insufficient to state a claim for control person liability."); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 66281, at *19 (N.D. Cal. Jan. 4, 2017) (holding that "conclusory" allegation that defendants were "involved in the day-to-day operations of, and exercised power and control over [corporate defendants], including by . . . directing their public statements and regulatory actions," does "not plead the specific circumstances of [defendants'] alleged control"); *Sonic Solutions*, 2009 WL 942182, at *11 (allegation that defendants were control persons "[b]y reason of their positions . . . and their [stock] ownership" rejected as "bare legal conclusions . . . devoid of any factual underpinnings").

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

- 16 -

1

## V.  <u>CONCLUSION</u>

2

For the foregoing reasons, Kimmarie Sinatra respectfully submits that the Second

3

Amended Complaint should be dismissed as to her.  Because the defects cannot be cured, the

4

claims against Ms. Sinatra should be dismissed without leave to amend.

5

Dated this 14th day of August 2020.

6

GARMAN TURNER GORDON LLP

7

*/s/ Erika Pike Turner*

8

ERIKA PIKE TURNER
Nevada Bar No. 6454
DYLAN T. CICILIANO

9

Nevada Bar No. 12348
7251 Amigo Street, Suite 210

10

Las Vegas, Nevada 89119

11

ORRICK, HERRINGTON & SUTCLIFFE LLP
JAMES N. KRAMER (*Pro Hac Vice*)

12

CA Bar No. 154709
M. TODD SCOTT (*Pro Hac Vice*)

13

CA Bar No. 226885
405 Howard Street

14

San Francisco, CA 94105

15

CHRISTINE E. HANLEY (*Pro Hac Vice*)
WA Bar No. 50801

16

701 5th Avenue, Suite 5600
Seattle. WA 98107

17

18

*Attorneys for Defendant Kimmarie Sinatra*

19

20

21

22

23

24

25

26

27

28

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

- 17 -

1

## CERTIFICATE OF SERVICE

2      The undersigned, an employee of Garman Turner Gordon LLP, hereby certifies that on

3  the 14th day of August 2020, she caused a copy of the foregoing document, to be served

4  electronically to all parties of interest through the Court's CM/ECF system as follows:

5  Andrew R. Muehlbauer
   andrew@mlolegal.com
6  Sean P. Connell
   sean@mlolegal.com
7  Jeremy A. Lieberman
   jalieberman@pomlaw.com
8  Murielle J. Steven Walsh
   mjsteven@pomlaw.com
9  Aatif Iqbal
   aiqbal@pomlaw.com
10 *Attorneys for Lead Plaintiffs*

11

12

13                                    */s/ Tonya Binns*
                                      An employee of
14                                    GARMAN TURNER GORDON LLP

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Garman Turner Gordon
LLP
Attorneys At Law
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**KIMMARIE SINATRA'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**