1   LATHAM & WATKINS LLP
      Michele D. Johnson (admitted *pro hac vice*)
2     *michele.johnson@lw.com*
    650 Town Center Drive, 20th Floor
3   Costa Mesa, CA 92626-1925
    Telephone: (714) 755-8113
4
    LATHAM & WATKINS LLP
5     Colleen C. Smith (admitted *pro hac vice*)
      *colleen.smith@lw.com*
6   12670 High Bluff Drive
    San Diego, CA 92130
7   Telephone: (858) 523-3985
8   CAMPBELL & WILLIAMS
      J. Colby Williams (Nevada Bar #5549)
9     *jcw@cwlawlv.com*
    700 S. Seventh Street
10  Las Vegas, NV 89101
    Telephone: (702) 382-5222
11
    *Attorneys for Defendant Stephen A. Wynn*
12

13                    UNITED STATES DISTRICT COURT

14                        DISTRICT OF NEVADA

15  | JOHN V. FERRIS and JOANN M. FERRIS, | Case No. 2:18-CV-00479-GMN-CWH |
16  | Individually and on Behalf of All Others | |
    | Similarly Situated, | CLASS ACTION |
17  |                           Plaintiffs, | |
    | | **DEFENDANT STEPHEN A. WYNN'S** |
18  | v. | **MOTION TO DISMISS THE SECOND** |
    | | **AMENDED CLASS ACTION** |
19  | | **COMPLAINT** |
    | WYNN RESORTS LIMITED, STEPHEN A. | |
20  | WYNN, CRAIG SCOTT BILLINGS, | **ORAL ARGUMENT REQUESTED** |
    | STEPHEN COOTEY, MATTHEW O. | |
21  | MADDOX, JOHN J. HAGENBUCH, | |
    | ROBERT J. MILLER, PATRICIA | |
22  | MULROY, CLARK T. RANDT JR., ALVIN | |
    | V. SHOEMAKER, KIMMARIE SINATRA, | |
23  | DANIEL B. WAYSON, JAY L. JOHNSON, | |
    | RAY R. IRANI, and J. EDWARD VIRTUE, | |
24  |                           Defendants. | |

25

26

27

28

1

## <u>NOTICE OF MOTION TO DISMISS</u>

2       Defendant Stephen A. Wynn ("Mr. Wynn") hereby moves to dismiss the Second

3   Amended Class Action Complaint (ECF No. 122) filed against him by Lead Plaintiffs John V.

4   Ferris and JoAnn M. Ferris, and named Plaintiff Jeffrey Larsen, individually and on behalf of all

5   others similarly situated ("Plaintiffs").

6       The Second Amended Complaint fails to state a claim and thus should be dismissed

7   pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities

8   Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b).  Mr. Wynn also moves to dismiss the

9   Second Amended Complaint on the additional ground that it fails to state particularized facts

10   sufficient to establish falsity or a strong inference of scienter.  This motion to dismiss is based

11   upon this notice, the accompanying memorandum of points and authorities, together with all

12   accompanying documents and exhibits, and such oral argument or other materials as may be

13   presented in connection with the hearing of this matter.

14   Dated:  August 18, 2020

15                                        LATHAM & WATKINS LLP
                                           Michele D. Johnson
16                                         Colleen C. Smith

17                                        <u>s/ Colleen C. Smith</u>
18                                         Colleen C. Smith (admitted *pro hac vice*)
                                           12670 High Bluff Drive
19                                         San Diego, CA 92130
                                           Telephone: (858) 523-3985
20                                         Email: colleen.smith@lw.com

21                                        CAMPBELL & WILLIAMS
                                           J. Colby Williams (Nevada Bar #5549)
22                                         700 S. Seventh Street
                                           Las Vegas, NV 89101
23                                         Telephone: (702) 382-5222
                                           Email:  jcw@cwlawlv.com
24                                         *Attorneys for Defendant Stephen A. Wynn*

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION & BACKGROUND ..................................................................... 1

4    II.    ARGUMENT ...................................................................................................... 3

5          A.    Plaintiffs' Allegations Still Do Not Meet the PSLRA's Heightened
                 Pleading Standards for False Statements or Omissions ........................................ 3

6          B.    Plaintiffs' Allegations Still Lack Sufficient Particularity and Do
7                Not Satisfy the PSLRA's Heightened Pleading Standards for
                 Scienter .......................................................................................................... 5

8
                 1.    Mr. Wynn's Awareness of Unconfirmed Allegations Do
9                      Not Support a Strong Inference of Scienter ................................ 6

10               2.    Mr. Wynn Had No Motive to Commit Securities Fraud ........................... 8

11               3.    Non-Fraudulent Explanations Are More Compelling ................................ 9

12   III.   CONCLUSION ................................................................................................. 10

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
505 F. Supp. 2d 662 (D. Colo. 2007)..................................................................4

*In re Apollo Grp., Inc. Sec. Litig.*,
2011 WL 5101787 (D. Ariz. Oct. 27, 2011).....................................................2, 7

*Ash v. Powersecure Int'l, Inc.*,
2016 WL 4939306 (E.D.N.C. Sept. 14, 2016), *aff'd sub nom. Maguire Fin.,
LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541 (4th Cir. 2017).............................9

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ...................................................4

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017)................................................................7

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ............................................................................3

*In re Copper Mt. Sec. Litig.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004) ..............................................................9

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976)..........................................................................................5

*Eshelman v. OrthoClear Holdings, Inc.*,
2008 WL 171059 (N.D. Cal. Jan. 18, 2008).....................................................7

*Glazer Capital Mgmt, L.P. v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ............................................................................9

*Golden Palm Investments Ltd. P'ship v. Azouri*,
2015 WL 3629903 (D. Nev. June 10, 2015)......................................................9

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ............................................................................9

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ............................................................................7

*In re Infonet Servs. Corp. Sec. Litig.*,
310 F. Supp. 2d 1080 (C.D. Cal. 2003) ............................................................5

*In re ITT Educ. Servs. Sec. & Deriv. Litig.*,
    859 F. Supp. 2d 572 (S.D.N.Y. 2012)......................................................................7

*Kuyat v. BioMimetic Therapeutics, Inc.*,
    747 F.3d 435 (6th Cir. 2014) .................................................................................8

*Kyung Cho v. UCBH Holdings, Inc.*,
    890 F. Supp. 2d 1190 (N.D. Cal. 2012) .................................................................7

*Lewis v. YRC Worldwide Inc.*,
    2020 WL 1493915 (N.D.N.Y. Mar. 27, 2020) .....................................................10

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002) ...............................................................................6

*Mallen v. Alphatec Holdings, Inc.*,
    861 F. Supp. 2d 1111 (S.D. Cal. 2012), *aff'd sub nom. Fresno Cty.*
    *Employees' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir.
    2015) .......................................................................................................................3

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) .....................................................................8, 9, 10

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) .................................................................5

*In re Paypal Holdings, Inc. S'holder Derivative Litig.*,
    2018 WL 466527 (N.D. Cal. Jan. 18, 2018)..........................................................7

*Plumley v. Sempra Energy*,
    2018 WL 1470224 (S.D. Cal. Mar. 26, 2018) ........................................................6

*In re Redback Networks, Inc. Sec. Litig.*,
    2007 WL 963958 (N.D. Cal. Mar. 30, 2007)..........................................................5

*Retail Wholesale & Department Store Union Local 338 Retirement Fund v.*
    *Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) .............................................................................3, 4

*In re Rigel Pharm,. Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) .................................................................................8

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) .................................................................................5

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) ..............................................................6, 7

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) .................................................................................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

Case No. 2:18-CV-00479-GMN-DJA
DEFENDANT S. WYNN'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................5, 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    258 F. Supp. 3d 1037 (N.D. Cal. 2017) ...............................................4, 7

*In re Yahoo! Inc. Sec. Litig.*,
    2012 WL 3282819 (N.D. Cal. Aug. 10, 2012), *aff'd*, 611 F. App'x 387 (9th
    Cir. 2015) ................................................................................................4

*Youngers v. Virtus Inv. Partners Inc.*,
    195 F. Supp. 3d 499 (S.D.N.Y. 2016)........................................................2

**STATUTES**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u..................................1, 2, 8, 10

**RULES**

Federal Rule of Civil Procedure 9(b)................................................................2

1                                **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION & BACKGROUND

The Second Amended Complaint in this case may be longer than the prior complaints, but the allegations it contains are not new.  Plaintiffs fundamentally seek to recover for losses they claim to have suffered as result of a brief decline in the Wynn Resorts stock price after the release of a media article in late January 2018, in the early stages of the #metoo movement, reporting *allegations* of sexual misconduct by Mr. Wynn ("the media article").  While Mr. Wynn denied—and continues to deny—the accuracy of any of those allegations, at the time, Mr. Wynn made the decision to resign as CEO of Wynn Resorts so that the company he created could continue its success, and in order to ensure that Wynn Resorts' shareholders would not suffer from the distraction allegations of this nature might cause.  Following Mr. Wynn's resignation, Wynn Resorts' stock price dropped, closing at $164.16 at the end of the class period.  Second Am. Compl., ECF No. 122 ("SAC") ¶¶ 6, 10.  But, three months later on May 10, 2018, shares bounced back to $201.51 per share—worth more than before the media article and Mr. Wynn's resignation, when the stock had traded at $200.60.  ECF No. 82-3, Ex. 26 (Stock Chart) at 3-4.

Just as before, Plaintiffs' allegations are not sufficient to state a claim for securities fraud.  Plaintiffs fundamentally assert that statements about the Wynn Resorts Code of Conduct, its business operations, and its regulatory environment were false because Mr. Wynn and others failed to disclose personal settlements he entered in 2005 and 2006 resolving *unsubstantiated allegations* of personal misconduct, and that he engaged in a pattern of misconduct that led to additional claims in early 2018.  These assertions do not meet the heightened pleading requirements of the PSLRA.  As this Court previously found, the vast majority of the statements Plaintiffs challenge—including the handful made directly by Mr. Wynn—are aspirational statements that amount to non-actionable puffery.  ECF No. 119 (May 27, 2020 Dismissal Order) at 35.  Even if these statements were actionable, the federal securities laws do not impose a general duty to disclose unproven claims or allegations of corporate mismanagement.  As this Court also previously concluded, none of the challenged statements suggest anything about Mr. Wynn's personal conduct that would give rise to any independent duty to disclose his personal

1  settlements. *Id.* at 34.  And while Plaintiffs rely heavily on the findings of state gaming

2  regulators—specifically, the Nevada Gaming Commission ("NGC"), Nevada Gaming Control

3  Board ("NGCB"), and the Massachusetts Gaming Commission ("MGC")— *those regulatory*

4  *bodies did not evaluate or reach any conclusions regarding whether any of the allegations of*

5  *misconduct were true.  E.g.,* ECF No. 97-7 (MGC Decision and Order) at 1 (confirming that "[a]t

6  no time was it our obligation to assess the truth of the allegations that give rise to this matter").

7  Plaintiffs' claims once again fail on falsity alone.

8       Plaintiffs' complaint fails for the additional and independent reason that they have not

9  pled facts supporting the necessary strong inference of scienter—a state of mind tantamount to

10  intent or conscious action *to commit securities fraud*.  Knowledge of unproven and contested

11  accusations such as is the case here are not "facts sufficient to establish a strong inference of

12  scienter" under the demanding pleading requirements of Federal Rule of Civil Procedure 9(b)

13  and the PSLRA.  *In re Apollo Grp., Inc. Sec. Litig.*, 2011 WL 5101787, at *10 n.5 (D. Ariz. Oct.

14  27, 2011) (internal quotations omitted); *accord Youngers v. Virtus Inv. Partners Inc.*, 195 F.

15  Supp. 3d 499, 519 (S.D.N.Y. 2016) (dismissing Section 10(b) claims where "news articles only

16  provided [defendants] . . . with knowledge of accusations, not with facts contradictory to their

17  statements") (emphasis in original).  And here, Plaintiffs offer no allegations that Mr. Wynn sold

18  stock at any point during the class period or otherwise profited from purported fraud.  The more

19  logical inference is that Mr. Wynn sought to avoid the distraction of litigation involving serious

20  allegations against him by resolving those claims in 2005 and 2006—at precisely the time Wynn

21  Resorts was opening Wynn Las Vegas and Wynn Macau—so that he could focus on the task of

22  launching those properties and building value for Wynn Resorts shareholders.

23       Despite multiple attempts, Plaintiffs have not come close to satisfying the PSLRA's

24  stringent pleading standards for falsity, scienter, and loss causation.  The claims against Mr.

25  Wynn should be dismissed.

26

27

28

## II.     ARGUMENT

### A.     Plaintiffs' Allegations Still Do Not Meet the PSLRA's Heightened Pleading Standards for False Statements or Omissions

As discussed in the motion to dismiss filed by Wynn Resorts and Individual Defendants, Plaintiffs' Second Amended Complaint does not add any materially new allegations and does not correct the pleading deficiencies that this Court correctly held supported dismissal of the prior complaint.  The claims against Mr. Wynn based on these same challenged statements fail for the same reasons.  And while Plaintiffs identify a handful of alleged false statements made individually by Mr. Wynn (SAC ¶¶ 105, 166, 197, 249, 254, 265), Plaintiffs' allegations do not establish that any of these statements was in any way false or misleading.

Statements About Encore Boston.  Plaintiffs challenge three statements Mr. Wynn made about the company's progress toward opening the Encore in Boston Harbor, asserting that these statements were somehow rendered false by personal allegations against Mr. Wynn.  SAC ¶¶ 166, 249, 254.  But as the Court previously held, statements such as these that do not contain "any reference to Defendant Wynn or his alleged sexual misconduct." ECF No. 119 at 26.  A statement is only misleading "if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from one that actually exists.'"  *Id.* (citing *Retail Wholesale & Department Store Union Local 338 Retirement Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (same); *see also Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1122, 1128-29 (S.D. Cal. 2012), *aff'd sub nom. Fresno Cty. Employees' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015) (finding no falsity because the plaintiffs failed to plead "inconsistent contemporaneous statements or information" made by the defendants).  These statements do no such thing.  They focus entirely on the progress and work done toward opening in Massachusetts, and have nothing to do with any allegations regarding Mr. Wynn's personal conduct.  *E.g.*, SAC ¶ 166 ("We worked very hard to compete for the right to operate in Massachusetts. . . ."); *id.* ¶ 249 ("[T]hen we're going to open this place in Boston in two dozen months, and we're going to have a case study of how a grand hotel, built in a major metropolitan

1  city, can change the neighborhood for the better. "); *id.* ¶ 254 (discussing regulatory approvals in

2  Macau and noting that the rigorous review there was considered by Massachusetts regulators).

3      <u>Statement About Employee Layoffs</u>.  Plaintiffs also identify a statement made by Mr.

4  Wynn in 2015 during an earnings call observing that Wynn Resorts valued employee job security

5  and "We don't do layoffs."  SAC ¶ 197.  Here again this statement pertaining to employee

6  retention is both general corporate puffery and has nothing whatsoever to do with any allegations

7  made against Mr. Wynn.  *See* ECF No. 119 at 23 (statements about employee job security are

8  mere puffery); *see also id.* at 28-29 (citing *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *10 (N.D.

9  Cal. Nov. 27, 2018) ("Where a defendant 'said nothing about' the subject of the alleged

10 omission, 'there is no duty to disclose, as [§ 10(b)] does not contain a freestanding completeness

11 requirement.'") (quoting *In re Yahoo! Inc. Sec. Litig.*, 2012 WL 3282819, at *9 (N.D. Cal. Aug.

12 10, 2012), *aff'd*, 611 F. App'x 387 (9th Cir. 2015)).

13     <u>Statement About Code of Conduct</u>.  Plaintiffs also point to one statement made by Mr.

14 Wynn in a letter accompanying the Wynn Resorts Code of Conduct issued on August 1, 2016 in

15 which he urged company employees to "comply with the Code."  SAC ¶ 105.  But as this Court

16 has already concluded, statements such as these are "inherently aspirational," not objectively

17 verifiable, and do not imply that every officer, director, or employee always adheres to the

18 standards of a code of conduct.  ECF No. 119 at 23-24 (citing *Hewlett-Packard*, 845 F.3d at

19 1276; *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 686 (D. Colo.

20 2007)).  And even if this statement were somehow actionable under the federal securities laws,

21 Plaintiffs' allegations do not establish that anything Mr. Wynn said in his letter was false.

22     <u>Statement Denying Allegations After the Media Article</u>.  Finally, Plaintiffs challenge a

23 statement made by Mr. Wynn *after* the publication of the media article, in which he denied the

24 allegations of sexual misconduct leveled against him.  SAC ¶ 265.  Mr. Wynn's personal denial

25 of public accusations of misconduct is hardly the basis of a securities fraud claim.  *Cf.  In re*

26 *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 258 F. Supp. 3d 1037,

27 1043 (N.D. Cal. 2017) (holding that "the federal securities laws do not require a [defendant] to

28 accuse itself of wrongdoing").  None of those accusations has been proven true, and even the

1   state gaming regulators declined to make any findings regarding the truth or falsity of these

2   allegations, all of which resulted in settlements that occurred *after* the Class Period.  *See* ECF

3   No. 97-7 at 1.[1]

4   **B.    Plaintiffs' Allegations Still Lack Sufficient Particularity and Do Not Satisfy**

5         **the PSLRA's Heightened Pleading Standards for Scienter**

6         Even if Plaintiffs had met the mark to plead falsity (which they have not), the Second

7   Amended Complaint still fails for the additional reason that it does not allege particularized facts

8   supporting scienter—that is, a strong inference that the defendant acted with the required state of

9   mind, which is akin to "intent to deceive, manipulate, or defraud."  *Ernst & Ernst v. Hochfelder*,

10  425 U.S. 185, 194 & n.12 (1976).  This pleading requirement is "exacting."  *Tellabs, Inc. v.*

11  *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  In the Ninth Circuit, scienter must be

12  alleged "in great detail, [by] facts that constitute strong circumstantial evidence of deliberately

13  reckless or conscious misconduct."  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974

14  (9th Cir. 1999).  A plaintiff must plead "a highly unreasonable omission, involving not merely

15  simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary

16  care."  *Id.* at 976 n.5.  The facts pled "must not only be particular, but also must 'strongly imply

17  [the defendant's] *contemporaneous* knowledge that the statement was false when made.'"  *In re*

18  *Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1102 (C.D. Cal. 2003); *see also Ronconi*

19  *v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (to plead scienter, "the complaint must contain

20  allegations of specific 'contemporaneous statements or conditions' that demonstrate the

21

22

23  _____

    [1] Plaintiffs also have not come close to demonstrating that this statement caused shareholders'
24  economic losses.  Plaintiffs claim that it was the issuance of the media article, and its alleged
    revelation of the "truth," that caused their losses.  *See* SAC ¶¶ 262-270.  But again, Mr. Wynn's
25  statements were made *after* that article was published, and after the associated stock price drop.
    A statement that was made after the alleged truth was revealed to the market could not have
26  caused any alleged losses.  *See In re New Century*, 588 F. Supp. 2d 1206, 1237 n.26 (C.D. Cal.
    2008) (finding that the defendant "cannot be liable for losses that occurred prior to disclosures
27  that implicated its misrepresentations"); *In re Redback Networks, Inc. Sec. Litig.*, 2007 WL
    963958, at *4 (N.D. Cal. Mar. 30, 2007) ("The Court is at a loss to understand how Plaintiffs'
28  injury for such purchases was caused by the alleged fraud when the stock price already had fallen
    to $4 . . . before the truth about the Qwest transactions were made public").

1  intentional or the deliberately reckless false or misleading nature of the statements") (quotations

2  omitted).  Plaintiffs' allegations fail to meet this high standard.

3  **1.  Mr. Wynn's Awareness of Unconfirmed Allegations Do Not Support a Strong Inference of Scienter**

4

5  While Plaintiffs seek to avoid dismissal by adding more pages to the complaint,

6  Plaintiffs' core allegations remain the same.  Specifically, Plaintiffs assert that various statements

7  about the Wynn Resorts Code of Conduct and compliance with gaming regulations were false or

8  misleading because "Mr. Wynn had engaged in a pattern of sexual misconduct" that was

9  deliberately concealed from investors.  *E.g.*, SAC ¶¶ 136, 140, 142, 146, 179, 181, 184, 209, 211.

10  These allegations—like those in the prior complaint—are conclusory and far too general to

11  support an inference of scienter.  *See Plumley v. Sempra Energy*, 2018 WL 1470224, at *4 (S.D.

12  Cal. Mar. 26, 2018) (finding no scienter where the complaint alleged a "cover-up and

13  underreporting," but did "not contain specific factual allegations to support a strong inference" of

14  intent or recklessness); *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1263-

15  64 (C.D. Cal. 2015) (rejecting argument that a purported "pattern of fraud" supports a strong

16  inference of scienter absent "particularized allegations demonstrating a pattern of fraud"); *see

17  also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (affirming dismissal

18  because failure to allege specifics is "insufficient to demonstrate deliberate or conscious

19  recklessness"); *see also* ECF No. 119 at 19 (citing *Sprewell v. Golden State Warriors*, 266 F.3d

20  979, 988 (9th Cir. 2001)) ("The Court . . . is not required to accept as true allegations that are

21  merely conclusory . . . .").

22  *First*, the alleged "pattern of sexual misconduct" identifies *allegations* of harassment or

23  misconduct from the 1990s—long before the class period and before Wynn Resorts even existed

24  (SAC ¶¶ 56-65, 82-85)—and allegations made (and resolved) in 2005 and 2006.  *Id.* ¶¶ 71-73

25  (2005 settlement), ¶¶ 78-79 (2006 settlement).  But Plaintiffs fail to identify any alleged facts

26  establishing that Mr. Wynn knew or even suspected that he had any duty to disclose

27  unsubstantiated allegations regarding his personal conduct to investors, or that statements about

28  his suitability, or about the company's compliance with law, were somehow rendered false.

1    Rather, as the Court previously found, such allegations once again tend only to establish that Mr.

2    Wynn was "aware of the alleged misconduct and the accompanying settlement[s]."  ECF No.

3    119 at 34.  The resolution of private legal claims (accompanied by no finding of wrongdoing) is

4    not equivalent to actual knowledge that general statements made about Wynn Resorts'

5    compliance with regulations and laws were affirmatively misleading to shareholders.  *See, e.g.*,

6    *Eshelman v. OrthoClear Holdings, Inc.*, 2008 WL 171059, at *6-7 (N.D. Cal. Jan. 18, 2008)

7    (dismissing securities complaint where neither the "manner in which" defendant settled nor the

8    "mere fact of the decision to settle" established scienter).

9           Indeed, there is no plausible basis to conclude that Mr. Wynn deliberately or recklessly

10   withheld allegations from investors that he contested and *had no duty to disclose* in the first

11   place.  *See Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 758 (7th Cir. 2007) ("Accusations

12   differ from proof; business executives are not charged with 'knowing' the truth of unproven

13   assertions."); *In re Apollo Grp., Inc. Sec. Litig.*, 2011 WL 5101787, at *10 n.5 (D. Ariz. Oct. 27,

14   2011) (unproven and contested allegations "do not amount to 'facts' sufficient to establish a

15   strong inference of scienter"); *accord ScripsAmerica*, 119 F. Supp. 3d at 1262 ("It is well settled

16   that 'allegations from other complaints or documents, which are unproved and are contested,

17   may not be used to establish facts to demonstrate scienter.'"); *Kyung Cho v. UCBH Holdings,*

18   *Inc.*, 890 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012) (finding that "allegations from other

19   complaints or documents, which are unproved and are contested, may not be used to establish

20   facts to demonstrate scienter.").  The "securities laws do not impose a general duty to disclose

21   corporate mismanagement or uncharged criminal conduct."  *In re ITT Educ. Servs. Sec. & Deriv.*

22   *Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012);  *accord In re Paypal Holdings, Inc. S'holder*

23   *Derivative Litig.*, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018) ("Federal securities laws do

24   not impose upon companies a 'duty to disclose uncharged, unadjudicated wrongdoing.'"); *In re*

25   *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 258 F. Supp. 3d 1037,

26   1043 (N.D. Cal. 2017) ("[T]he federal securities laws do not require a company to accuse itself

27   of wrongdoing."); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 650 (S.D.N.Y.

28

1  2017) ("It is well established that companies do not have a duty to disclose uncharged,

2  unadjudicated wrongdoing.").

3      *Second*, Plaintiffs' allegations rest in part on allegations of misconduct that were not even

4  made until February 2018.  SAC ¶¶ 88-95 (discussing allegations not raised until 2018).

5  Mr. Wynn could not possibly have deliberately or recklessly concealed these allegations from

6  investors before February 2018 because the allegations and claims did not even exist at the time

7  of the statements Plaintiffs challenge.  *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435,

8  442 (6th Cir. 2014) (report "released at the end of the class period and well after the allegedly

9  misleading statements were made" had "little bearing on what the company did or did not know

10  at the time the allegedly misleading statements were made").

11        **2.**     **Mr. Wynn Had No Motive to Commit Securities Fraud**

12      Also absent from Plaintiffs' latest complaint is any allegation that Mr. Wynn had any

13  motive to commit securities fraud.  He is not alleged to have sold a single share of Wynn Resorts

14  stock in the offering or otherwise at any point during the class period.  There are no allegations

15  that Mr. Wynn engaged in a scheme to artificially inflate Wynn Resorts stock price to financially

16  enrich himself.  This fact strongly undermines any inference of scienter.  *See, e.g., In re Rigel*

17  *Pharm,. Inc. Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012) (finding that "because none of the

18  defendants sold stock during the period . . . [in] which they would have benefitted from any

19  allegedly fraudulent statements, the value of [the defendants'] stock and stock options does not

20  support an inference of scienter"); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d

21  1049, 1067 (9th Cir. 2008) (holding that the absence of a change in pattern in  stock sales

22  suggested that there was no insider information from which to benefit, and failed to "raise the

23  necessary 'strong inference' of scienter required by the PSLRA.").

24      To avoid dismissal, Plaintiffs now contend for the first time that Mr. Wynn was

25  motivated by a desire to "conceal" allegations of "deliberately unlawful behavior," "obtain

26  advantages in divorce proceedings," and "continue engaging in sexual misconduct."  SAC

27  ¶¶ 334, 372.  But Plaintiffs do not explain how these general (manufactured) allegations establish

28  motive to commit securities fraud.  In fact, courts have long held that such conclusory allegations

1  of motive to conceal alleged misconduct for personal gain are not sufficient.  *See In re Copper*

2  *Mt. Sec. Litig.*, 311 F. Supp. 2d 857, 872-73 (N.D. Cal. 2004) (finding allegations of a CEO and

3  CFO's "desire to retain their job and prestige" insufficient to "provide a strong inference of

4  scienter"); *see also Ash v. Powersecure Int'l, Inc.*, 2016 WL 4939306, at *4 (E.D.N.C. Sept. 14,

5  2016), *aff'd sub nom. Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541 (4th Cir. 2017)

6  (rejecting allegations that the CEO committed securities fraud to "save face," because "the mere

7  'preservation of reputation' does not 'constitute a cognizable motive for fraud under the

8  Exchange Act.'").

9           **3.        Non-Fraudulent Explanations Are More Compelling**

10          Finally, in determining whether the allegations are sufficient to support the necessary

11  strong inference of scienter, the Court should consider "not only inferences urged by the

12  plaintiff[s],"  but also "competing inferences" and "non-culpable explanations" that are

13  "rationally drawn from the facts alleged,"  *Tellabs*, 551 U.S. at 314, including "inferences

14  unfavorable to the plaintiffs."  *Metzler*, 540 F.3d at 1061 (quoting *Gompper v. VISX, Inc.*, 298

15  F.3d 893, 896 (9th Cir. 2002)).  The "inference of scienter must be more than merely plausible or

16  reasonable—it must be cogent and at least as compelling as any opposing inference of

17  nonfraudulent intent."  *Tellabs*, 551 U.S. at 314; *see also Golden Palm Investments Ltd. P'ship v.*

18  *Azouri*, 2015 WL 3629903, at *3 (D. Nev. June 10, 2015) (dismissing complaint finding scienter

19  allegations not as compelling as the inference of nonfraudulent intent).

20          Here, Plaintiffs ask the Court to infer that Mr. Wynn must have acted with fraudulent

21  intent because he was aware of "allegations of sexual misconduct against him" and settlements

22  of potential claims arising from those allegations.  SAC ¶¶ 329-30.  Yet even if taken as true,

23  Plaintiffs' allegations—which simply repeat allegations made elsewhere—confirm only that Mr.

24  Wynn was confronted with claims that he opted to resolve through settlement.  The mere

25  existence of a settlement says nothing about whether the accusations had merit, let alone whether

26  Mr. Wynn knew he had a duty to disclose the existence of these claims to shareholders and

27  instead elected to stay silent.  *See Glazer Capital Mgmt, L.P. v. Magistri*, 549 F.3d 736, 748 (9th

28  Cir. 2008) (holding that a settlement agreement with the SEC did not show scienter and was "not

1    sufficient to meet the pleading requirements of the PSLRA"); *Lewis v. YRC Worldwide Inc.*,

2    2020 WL 1493915, at *15 (N.D.N.Y. Mar. 27, 2020) ("the fact that Defendants engaged in

3    settlement discussions with the DOJ does not trigger disclosure").  A much more plausible

4    competing inference is that Mr. Wynn sought to resolve serious potential claims made against

5    him in order to eliminate the distraction that allegations of that nature would necessarily entail,

6    and so that he could continue about the business of running a successful company, Wynn

7    Resorts.  Because the nonculpable inferences are logical and compelling, Plaintiffs' theory is not

8    sufficient to plead a strong inference of scienter.  *See Metzler*, 540 F.3d at 1064-65 (a court is

9    "not required to indulge unwarranted inferences in order to save a complaint from dismissal").

10   **III.    CONCLUSION**

11          Despite several attempts, Plaintiffs have not come close to meeting the PSLRA's

12   exacting pleading requirements for securities fraud.  Mr. Wynn accordingly requests that the

13   Court dismiss the Second Amended Complaint, with prejudice.  *See id.* at 1060 n.4 (affirming

14   dismissal with prejudice where the plaintiff had "multiple opportunities to amend" and was

15   "unable to cure the defects that required dismissal").

16   Dated:  August 18, 2020

17                                                           LATHAM & WATKINS LLP
                                                               Michele D. Johnson
18                                                             Colleen C. Smith

19                                                             s/ Colleen C. Smith
20                                                           Colleen C. Smith (admitted *pro hac vice*)
                                                             12670 High Bluff Drive
21                                                           San Diego, CA 92130
                                                             Telephone: (858) 523-3985
22                                                           Email: colleen.smith@lw.com

23                                                           CAMPBELL & WILLIAMS
24                                                             J. Colby Williams (Nevada Bar #5549)
                                                             700 S. Seventh Street
25                                                           Las Vegas, NV 89101
                                                             Telephone: (702) 382-5222
26                                                           Email:  jcw@cwlawlv.com

27                                                           *Attorneys for Defendant Stephen A. Wynn*

28

1

## <u>CERTIFICATE OF SERVICE</u>

2
3
4

     I certify that on August 18, 2020, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

5
6

           /s/  *Colleen C. Smith*
           Colleen C. Smith

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

Case No. 2:18-CV-00479-GMN-DJA
DEFENDANT S. WYNN'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT