Patrick G. Byrne (Nevada Bar #7636)
Bradley T. Austin (Nevada Bar #13064)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone: 702.784.5200
Facsimile: 702.784.5252
Email: pbyrne@swlaw.com
        baustin@swlaw.com

*Attorneys for Defendants Wynn Resorts, Ltd.*
*and Matthew O. Maddox*

(additional counsel on signature page)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN V. FERRIS, et al., | ) Case No. 2:18-CV-00479-APG-BNW |
| Plaintiffs, | ) |
| | ) **WYNN RESORTS, LTD. AND MATTHEW** |
| vs. | ) **O. MADDOX'S REPLY IN SUPPORT OF** |
| | ) **MOTION FOR PARTIAL SUMMARY** |
| WYNN RESORTS LIMITED, et al., | ) **JUDGMENT ON ALLEGED FEBRUARY** |
| | ) **12, 2018 CORRECTIVE DISCLOSURES** |
| Defendants. | ) |
| | ) **ORAL ARGUMENT REQUESTED** |

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT .......................................................................................................3

   A.  Plaintiffs Do Not Dispute Any Facts Material to the Motion. ...........................3

   B.  The Court's Prior Orders Did Not Address the Law and Facts at Issue Here. ..............................5

   C.  The Company Defendants Should Prevail on Their Targeted Falsity Argument. ...........................7

   D.  The Company Defendants Should Prevail on Loss Causation. ..........................8

      1.  Plaintiffs' Leakage Theory Has Zero Evidentiary Support. ...................9

      2.  Plaintiffs Fail to Submit Evidence of Disaggregation. ..........................11

      3.  Plaintiffs Fail to Submit Evidence of Significant Market Reaction. .......................12

      4.  Plaintiffs Fail to Submit Evidence of a Significant Price Movement. ...................13

   E.  Plaintiffs Fail to Satisfy Federal Rule of Civil Procedure 56(d)....................14

      1.  Plaintiffs Fail to Identify Specific and Essential Facts. ........................14

      2.  Plaintiffs Fail to Meet Rule 56(d) Regarding Falsity............................15

      3.  Plaintiffs Fail to Meet Rule 56(d) Regarding Loss Causation. ...............16

      4.  Plaintiffs Already Have the Discovery They Claim to Need.....................17

      5.  There Is No Basis for Delay.................................................................19

III. CONCLUSION....................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...............................................................................................5

*Axis Spine NV, LLC v. Xtant Med. Holdings, Inc.*,
    2019 WL 1062362 (D. Nev. Mar. 6, 2019) ..............................................................3

*Bar St. III v. ACC Enters., LLC*,
    2017 WL 4293142 (D. Nev. Sept. 26, 2017) ..........................................................14

*Bepple v. Shelton*,
    2016 WL 633892 (D. Or. Feb. 17, 2016) .................................................................6

*Binn v. Bernstein*,
    2019 WL 2461816 (S.D.N.Y. May 21, 2019) .........................................................19

*In re BofI Holding, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020) (Lee, K. concurring)................................................1, 9

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
    752 F.3d 82 (1st Cir. 2014)..................................................................................7, 11

*Burke v. Prof. Transp., Inc.*,
    2018 WL 6107217 (W.D. Wash. Nov. 21, 2018) ....................................................15

*Burlington N. Santa Fe. RR. Co. v. Assiniboine & Sioux Tribes of For Peck Rsrv.*,
    323 F.3d 767 (9th Cir. 2003) .................................................................................14

*Calhoun v. Google, LLC*,
    645 F. Supp. 3d 916 (N.D. Cal. 2022) ......................................................................6

*Childs v. Caesars Ent. Operating Co., Inc.*,
    2020 WL 907558 (D. Nev. Feb. 25, 2020) ........................................................3, 4, 14

*In re Clorox Co. Sec. Litig.*,
    238 F. Supp. 2d 1139 (N.D. Cal. 2002), *aff'd sub nom.*, 353 F.3d 1125 (9th Cir. 2004).....................19

*Conkel v. Jeong*,
    73 F.3d 909 (9th Cir. 1995) ....................................................................................17

*Derrico v. PennyMac Corp.*,
    2018 WL 472998 (D. Nev. Jan. 17, 2018) ............................................................3, 15

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..................................................................................................9

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,
    2022 WL 2304287 (N.D. Cal. June 27, 2022) .........................................................19

*In re Enron Corp. Sec., Derivative & "Erisa" Litig.*,
    2005 WL 3504860 (S.D. Tex. Dec. 22, 2005) ................................................................9

*Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
    525 F.3d 822 (9th Cir. 2008) ................................................................14

*Fed. Nat'l Mortg. Ass'n v. SFR Invs. Pool 1, LLC*,
    2020 WL 3103897 (D. Nev. June 11, 2020) ................................................................3

*Fosbre v. Las Vegas Sands Corp.*,
    2017 WL 55878 (D. Nev. Jan. 3, 2017) ................................................................7

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ................................................................9, 10, 11

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
    141 S. Ct. 1951 (2021) ................................................................7

*Green v. Samples*,
    2023 WL 2744597 (D. Nev. Mar. 31, 2023) ................................................................4

*Hoffman v. Tonnemacher*,
    2005 WL 1383186 (E.D. Cal. June 7, 2005) ................................................................19, 20

*Hoffman v. Tonnemacher*,
    593 F.3d 908 (9th Cir. 2010) ................................................................20

*Hunt v. Enzo Biochem., Inc.*,
    530 F. Supp. 2d 580 (S.D.N.Y. 2008) ................................................................9

*Ja Naoko Ohno v. Yuko Yasuma*,
    723 F.3d 984 (9th Cir. 2013) ................................................................2, 15, 16

*Krause v. Nevada Mut. Ins. Co.*,
    2014 WL 428675 (D. Nev. Feb. 4, 2014), *aff'd*, 2014 WL 3592655 (D. Nev. July 21, 2014) ................................................................3

*Leskinen v. Perdue*,
    2019 WL 2567142 (E.D. Cal. June 21, 2019) ................................................................17

*Margolis v. Ryan*,
    140 F.3d 850 (9th Cir. 1998) ................................................................14, 15

*In re Mattel, Inc. Sec. Litig.*,
    2021 WL 4704578 (C.D. Cal. Oct. 6, 2021) ................................................................7

*Mauwee v. Palmer*,
    2015 WL 3764943 (D. Nev. June 16, 2015) ................................................................20

*Mayo v. Williams*,
    2018 WL 8345428 (D. Nev. Aug. 27, 2018) ................................................................3, 15

*Mineworkers' Pen. Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018) ................................................................1, 7, 8

**THE COMPANY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REPLY**

*Mitchell v. Nye Cnty.*,
　2023 WL 2242149 (D. Nev. Feb. 27, 2023) .................................................................... 3

*In re Moody's Corp. Sec. Litig.*,
　2013 WL 4516788 (S.D.N.Y. Aug. 23, 2013) ................................................................ 12

*Morin v. United States*,
　2005 WL 8165321 (D. Nev. Feb. 7, 2005) .................................................................... 14

*In re Motorola, Inc. Sec. Litig.*,
　505 F. Supp. 2d 501 (N.D. Ill. 2007) ............................................................................ 12

*Nelson v. Pima Cmty. Coll.*,
　83 F.3d 1075 (9th Cir. 1996) ...................................................................................... 2, 3

*Norfolk Cnty. Ret. Sys. V. Ustian*,
　2009 WL 2386156 (N.D. Ill. July 28, 2009) ................................................................ 10

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
　730 F.3d 1111 (9th Cir. 2013) .................................................................................... 7, 8

*In re Omnicom Grp., Inc. Secs. Litig.*,
　597 F.3d 501 (2nd Cir. 2010) ...................................................................................... 12

*Oppy. Homes, LLC v. Fed. Home Loan Mortg. Corp.*,
　169 F. Supp. 3d 1073 (D. Nev. 2016) ........................................................................... 17

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
　774 F.3d 598 (9th Cir. 2014) .................................................................................. 1, 8, 9

*In re Oracle Corp. Sec. Litig.*,
　627 F.3d 376 (9th Cir. 2010) ...................................................................... 1, 3, 11, 17

*Pirnik v. Fiat Chrysler Auto., N.V.*,
　327 F.R.D. 38 (S.D.N.Y. 2018) ...................................................................................... 1

*Prime Mover Cap. Part. L.P. v. Elixir Gaming Techs., Inc.*,
　898 F. Supp. 2d 673 (S.D.N.Y. Sept. 27, 2012) ........................................................... 10

*Ray v. Citigroup Glob. Markets, Inc.*,
　482 F.3d 991 (7th Cir. 2007) ....................................................................................... 12

*Real Prop. & Impv'ts, 2014 v Dep't*,
　2002 WL 35646254 (D. Nev. Sept. 18, 2002) .............................................................. 19

*Reese v. Barton Healthcare Sys.*,
　2010 WL 3269873 (E.D. Cal. Aug. 18, 2010) .............................................................. 20

*ReliaStar Life Ins. Co. v. Grand Hills Resort & Country Club, Inc.*,
　2015 WL 1413388 (D. Nev. Mar. 27, 2015) ................................................................ 15

*In re REMEC Inc. Sec. Litig.*,
　702 F. Supp. 2d 1202 (S.D. Cal. 2010) ...................................................................... 1, 7

iv

**THE COMPANY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REPLY**

*In re REMEC Inc. Sec. Litig.*,
   702 F. Supp. 2d at 1273–74 ................................................................................12

*RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*,
   2017 WL 6389657 (D. Nev. Dec. 13, 2017) ..........................................................3

*Sec. & Exch. Comm'n v. Stein*,
   906 F.3d 823 (9th Cir. 2018) .........................................................................14, 15

*In re Semiconductor Mfg. Int'l Corp. Sec. Litig.*,
   2023 WL 6290742 (9th Cir. 2023) ........................................................................9

*Sierra Dev. Co. v. Chartwell Advisory Grp., Ltd.*,
   223 F. Supp. 3d 1098 (D. Nev. 2016) ...................................................................6

*Smilovits v. First Solar*,
   119 F. Supp. 3d 978 (D. Ariz. 2015) ...................................................................17

*State of Cal. v. Campbell*,
   138 F.3d 772 (9th Cir. 1998) ...............................................................................17

*Steinmetz v. Am. Honda Fin.*,
   2020 WL 5739960 (D. Nev. Mar. 20, 2020) ..........................................................3

*Strasburger v. Blackburne & Sons Realty Capital Corp.*,
   2021 WL 6104819 (C.D. Cal. Feb. 2, 2021)........................................................20

*Sundance Media Grp., LLC v. Yuneec USA, Inc.*,
   2020 WL 5502304 (D. Nev. Sept. 11, 2020) .........................................................3

*Sunde v. Haley*,
   2013 WL 5973815 (D. Nev. Nov. 7, 2013) ..........................................................19

*Tasty One, LLC v. Earth Smarte Water, LLC*,
   2022 WL 1308146 (D. Nev. Apr. 30, 2022).............................................3, 16, 17

*Tatum v. City and Cnty. of San Francisco*,
   441 F.3d 1090 (9th Cir. 2006) .............................................................................15

*Townsen v. Hebert*,
   2015 WL 5782036 (D. Nev. Oct. 2, 2015) .............................................................6

*In re Williams Sec. Litig.-WCG Subclass*,
   558 F.3d 1130 (10th Cir. 2009) ............................................................1, 2, 9, 12

*In re Williams Sec. Litig.*,
   496 F. Supp. 2d 1195 (N.D. Okla. 2007) (discussing *Ray* and *Motorola*) .........12

*Williams v. Trujillo*,
   2022 WL 1078907 (D. Ariz. Apr. 11, 2022) ........................................................19

*In re Worldcom, Inc. Sec. Litig.*,
   2005 WL 2319118 (S.D.N.Y. Sept. 21, 2005) .......................................................9

**THE COMPANY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REPLY**

*Wright-Bolton v. Andress-Tobiasson*,
    2015 WL 5603343 (D. Nev. Sept. 23, 2015), *aff'd*, 696 F. App'x 258 (9th Cir. 2017) .......................3

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...........................................................................8

**Rules**

Fed. R. Civ. P. 1 .................................................................................20

Fed. R. Civ. P. 56 .........................................................................*passim*

Local Rule 56-1 .............................................................................3, 4

**Other Authorities**

Defamation: A Lawyer's Guide (2023 Online ed.) ...................................................2

**THE COMPANY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REPLY**

## TABLE OF ABBREVIATED TERMS

| Abbreviation | Meaning |
| --- | --- |
| Motion | Wynn Resorts, Ltd. and Matthew O. Maddox's Motion for Partial Summary Judgment on Alleged February 12, 2018 Corrective Disclosures (**ECF 314**) |
| Opposition | Plaintiffs' Memorandum of Points and Authorities in Opposition to Wynn Resorts, Ltd. and Matthew O. Maddox's Motion for Partial Summary Judgment on Alleged February 12, 2018 Corrective Disclosures (**ECF 335**) |
| MGC | Massachusetts Gaming Commission |
| NGCB | Nevada Gaming Control Board |
| LVMPD | Las Vegas Metropolitan Police Department |
| IEB | Investigations and Enforcement Bureau of the MGC |
| Wynn Resorts or Company | Wynn Resorts, Ltd. |
| Company Defendants | Wynn Resorts, Ltd. and Matthew Maddox |
| MTD Order | This Court's July 28, 2021 Order Granting in Part Motions to Dismiss (ECF 171) |
| Class Certification Order | This Court's March 1, 2023 Order Granting Motion to Certify Class (ECF 283) |
| Jan. 26 WSJ Article | January 26, 2018 article by the WALL STREET JOURNAL entitled *Dozens of People Recount Pattern of Sexual Misconduct by Las Vegas Mogul Steve Wynn* (**ECF 317-6**) |
| NGCB Portal Report | February 12, 2018 article published by the WALL STREET JOURNAL entitled *Nevada Regulator, Inundated with Reports About Steve Wynn, Start Hotline for Tips* (**ECF 317-1**) |
| LVMPD Report | February 12, 2018 article published by the WALL STREET JOURNAL entitled *Nevada Regulator, Inundated with Reports About Steve Wynn, Start Hotline for Tips* (**ECF 317-1**) |
| Nevada Independent Report | February 12, 2018 article by THE NEVADA INDEPENDENT entitled *Las Vegas police receive two reports about Wynn in wake of sexual misconduct allegations* (**ECF 317-2**) |
| O'Melveny Report | February 9, 2018 article by the WALL STREET JOURNAL entitled *Wynn Resorts Board Cancels Law Firm Investigation of Ex-CEO Steve Wynn's Conduct* (**ECF 317-3**) |
| Stockholder Agreement Report | Wynn Resorts' February 9, 2018 Form 8-K filing with the SEC (**ECF 317-4**) |

| Abbreviation | Meaning |
|---|---|
| EW Crossclaim | March 26, 2016 First Amended Answer of Elaine P. Wynn to Aruze and Universal's Fourth Amended Counterclaim; Fifth Amended Counterclaim and Crossclaim of Elaine P. Wynn, filed in *Wynn Resorts, Limited v. Okada, et al.*, Case No. A-12-656710-B (Clark Cnty., Dist. Ct. Nev.) (**ECF 317-5**) |
| Cornell University Award Rescission Report | February 12, 2018 article by UWIRE entitled *Hotel School Rescinds Hospitality Icon Award After Allegations of Sexual Misconduct* (**ECF 318-29**) |
| Regulatory Risk Report | February 10, 2018 article by THE BOSTON GLOBE entitled *Problems with Wynn casino go deeper than the man* (**ECF 318-14**) |
| Wynn's Name on Boston Casino Report | February 10, 2018 article by THE BOSTON GLOBE entitled *Steve Wynn's name has no place in our skyline* (**ECF 318-15**) |

## I.      INTRODUCTION

Plaintiffs filed this action in February 2018, and since then, have leveraged the supposed February 12, 2018 "corrective" disclosures to stretch the class period and compound their claimed damages, seeking to "bludgeon [Wynn Resorts] into settling claims to 'avoid the cost and burden of litigation.'" *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 800 (9th Cir. 2020) (Lee, K. concurring). The Company Defendants moved for summary judgment because, almost six years into this case, Plaintiffs cannot back up their February 12 allegations with a shred or scintilla of evidence. Plaintiffs' Opposition confirms that they have no evidentiary support that the February 12 disclosures were corrective. The Class Period should end, at the latest, on January 26, 2018.[1]

In response to the Motion, Plaintiffs were required to submit admissible evidence and "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). They have failed to do so. Plaintiffs do not identify any "specific statements made by the Defendants that were made untrue or called into question by" the February 12 disclosures, as required to establish falsity. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 608 (9th Cir. 2014). They submit no evidence showing that the February 12 disclosures revealed the "facts misrepresented or omitted by" Defendants, as required to establish valid corrective disclosures. *Mineworkers' Pen. Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018). They submit no expert or other evidence concerning the market's reaction after the February 12 disclosures were first published at 11:25 a.m. *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1266 (S.D. Cal. 2010) ("[T]he decline in stock price caused by the revelation of that truth must be statistically significant."). And they submit no expert or other evidence attempting to disaggregate the more than a dozen news stories published about Wynn Resorts or the industry in general between the close of trading on February 9 and 12, 2018, some of which Plaintiffs have already acknowledged affected the stock price. *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1143 (10th Cir. 2009) (holding that failing to disaggregate is a "fatal flaw" in

---

[1]      The Company Defendants' Motion requested that the Class Period end on January 29, 2018 because Plaintiffs alleged it was the last trading day that the Jan. 26 WSJ Article impacted the stock price. ECF 122 ¶¶ 262–263. However, Plaintiffs admit that the Jan. 26 WSJ Article revealed the truth to the market on the day it was published. ECF 241 at 5. Therefore, the Class Period should actually end on January 26, 2018. *See Pirnik v. Fiat Chrysler Auto., N.V.*, 327 F.R.D. 38, 48 (S.D.N.Y. 2018) ("class period ends on the date when the full truth has been disclosed to the market" (quotations omitted)).

securities fraud cases). Without a scintilla of evidence supporting Plaintiffs' allegations, summary judgment is appropriate.

Instead of demonstrating genuine issues for trial, or producing *any* evidence, Plaintiffs assert that the Court has already decided these issues. *See* Opp'n at 12–15. That is incorrect. The Court's prior rulings on earlier issues were based upon different legal standards and have no bearing on this Motion, which addresses the merits and the evidence. Plaintiffs can no longer stand on supposition and allegations. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for . . . summary judgment."). Overcoming summary judgment requires ***evidence***, and Plaintiffs have produced none supporting their February 12 disclosures.

The only "support" that Plaintiffs offer of a market reaction to the February 12 disclosures is lawyer speculation that the news must have "leaked" to the market before the *Wall Street Journal* published the news at 11:25 a.m. In particular, Plaintiffs argue the information must have hit the market earlier because *Wall Street Journal* reporters contacted the Company for comment before they published the story. Opp'n at 9–10. But a reporter seeking comment from the subject of a forthcoming article is evidence only that the reporter was doing his or her job, not leaking information to the public. *See* Defamation: A Lawyer's Guide, § 7:18 (2023 Online ed.) ("[C]ontact with [the subject] by [the reporters] prior to publication to verify information or get his or her response may be a desirable and responsible practice and its absence might suggest journalistic negligence."). Plaintiffs produce no evidence suggesting the information actually leaked to the market. Much more than Plaintiffs' speculation is required to overcome summary judgment. *See In re Williams*, 558 F.3d at 1138 (holding that leakage theories must "show some mechanism for how the truth was revealed," and that "[t]he inability to point to a single corrective disclosure does not relieve the plaintiff of showing how the truth was revealed").

In a last-ditch effort to avoid summary judgment, Plaintiffs ask for more time under Federal Rule of Civil Procedure 56(d). But even in doing that, Plaintiffs have utterly failed to meet Rule 56(d)'s requirements. Plaintiffs concede that their Rule 56(d) request is premised not on specific facts likely to surface in discovery but rather on a "belief" that "Defendants are holding back relevant information." Opp'n at 22. This is insufficient to warrant relief. *Ja Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 1013 n.29 (9th Cir. 2013) (When requesting relief under Rule 56(d), "it is not enough to rely on vague assertions

that discovery will produce needed, but unspecified, facts"). This Court has time and again rejected similarly vague appeals to postpone summary judgment.[2] Almost six years into this case and with the benefit of years of discovery, detailed regulatory reports and findings, thousands of documents, and transcripts from prior cases and hearings, Plaintiffs do not (because they cannot) point to specific facts yet to be discovered as required under Rule 56(d).

For the reasons explained in the Motion and below, the Company Defendants' Motion should be granted and the Class Period should end on January 26, 2018.

## II.   ARGUMENT

### A.   Plaintiffs Do Not Dispute Any Facts Material to the Motion.

District of Nevada Local Rule 56-1 mandates that any plaintiff opposing summary judgment must "include a concise statement setting forth each fact material to the disposition of the motion that the [plaintiff] claims is or is not genuinely in issue, citing the particular portions of any . . . evidence on which the party relies." LR 56-1. This rule embodies the bedrock requirement that, in response to such a motion, plaintiffs must "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387. "[M]ere allegation and speculation do not create a factual dispute for . . . summary judgment." *Nelson*, 83 F.3d at 1081–82.

Plaintiffs flunk this requirement. The majority of their "counterstatement of facts" does not even address the February 12 disclosures at all. *See* Opp'n at 4–9. And the small section of the Opposition that does address these disclosures does not identify a single disputed issue for trial. *Id.* at 9–10. Instead, it purports to introduce the "additional ***undisputed*** facts" that "reporters at the WSJ and at least one Wynn

---

[2]    *See Mitchell v. Nye Cnty.*, 2023 WL 2242149, at *2 (D. Nev. Feb. 27, 2023); *Tasty One, LLC v. Earth Smarte Water, LLC*, 2022 WL 1308146, at *2 (D. Nev. Apr. 30, 2022); *Sundance Media Grp., LLC v. Yuneec USA, Inc.*, 2020 WL 5502304, at *5 (D. Nev. Sept. 11, 2020); *Fed. Nat'l Mortg. Ass'n v. SFR Invs. Pool 1, LLC*, 2020 WL 3103897, at *2 (D. Nev. June 11, 2020); *Steinmetz v. Am. Honda Fin.*, 2020 WL 5739960, at *3 (D. Nev. Mar. 20, 2020); *Childs v. Caesars Ent. Operating Co., Inc.*, 2020 WL 907558, at *2 (D. Nev. Feb. 25, 2020); *Mayo v. Williams*, 2018 WL 8345428, at *3 (D. Nev. Aug. 27, 2018); *Axis Spine NV, LLC v. Xtant Med. Holdings, Inc.*, 2019 WL 1062362, at *4 (D. Nev. Mar. 6, 2019); *Derrico v. PennyMac Corp.*, 2018 WL 472998, at *4 (D. Nev. Jan. 17, 2018); *RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, 2017 WL 6389657, at *6 (D. Nev. Dec. 13, 2017); *Wright-Bolton v. Andress-Tobiasson*, 2015 WL 5603343, at *5 (D. Nev. Sept. 23, 2015), *aff'd*, 696 F. App'x 258 (9th Cir. 2017); *Krause v. Nevada Mut. Ins. Co.*, 2014 WL 428675, at *4 (D. Nev. Feb. 4, 2014), *aff'd*, 2014 WL 3592655 (D. Nev. July 21, 2014).

employee were aware of the news of the police reports and the NGCB portal before the market opened on

February 12, 2018." *Id.* (emphasis added). As explained below, the fact that reporters at the *Wall Street

Journal* were aware of certain information before they published it—a truism that applies to every

article—has no bearing on the Motion. But more importantly, Plaintiffs have failed to dispute the material

facts requiring summary judgment as to the February 12 disclosures, as required by Local Rule 56-1 and

decades of precedent.

Indeed, Plaintiffs introduce no evidence and make no showing disputing the dispositive facts

requiring summary judgment here, including that:

- Defendants never made any statements about whether complaints might be made to the NGCB or LVMPD against Mr. Wynn (Mot. at 17);

- The alleged complaints to the NGCB and LVMPD were made only after publication of the Jan. 26 WSJ Article and after Defendants' statements responding to that article (*id.*);

- The NGCB Portal Report and the LVMPD Report were first published to stockholders in a *Wall Street Journal* article at 11:25 a.m. on February 12 (*id.* at 13–14);

- The article did not state that the complaints made to the LVMPD related to sexual misconduct until after trading hours on February 12, when the article was updated (*id.* at 14);

- The movement in Wynn Resorts' stock price after the 11:25 a.m. article was not statistically significant (*id.* at 24–25);

- No equity analysts mentioned the NGCB Portal Report or the LVMPD Report, and no equity analysts said that either disclosure affected the price of Wynn Resorts' stock (*id.* at 24);

- The trading volume on February 12 was not statistically significant, and there was more trading before the 11:25 a.m. article than after (*id.* at 23, 25);

- At least 14 Wynn Resorts-specific and industry-specific events were disclosed between February 9 and 12, 2018 (*id.* at 12–14, 27);

- Plaintiffs already admitted that at least three confounding events—the O'Melveny Report, the Stockholder Agreement Report, and the Cornell University Award Rescission Report— impacted Wynn Resorts' stock price on February 12 (*id.* at 12–14);

- Plaintiffs have introduced no evidence or analysis even attempting to disaggregate any non-fraud events from the alleged fraud-induced stock declines (*id.* at 27).

Summary judgment is required. *See Childs*, 2020 WL 907558, at *3 (Gordon, J.) (granting

summary judgment where the plaintiff "present[ed] no contrary evidence" and no "evidence raising a

genuine dispute" as to material issues); *Green v. Samples*, 2023 WL 2744597, at *5 (D. Nev. Mar. 31,

2023) (granting summary judgment where the plaintiff "submit[ted] no evidence to support the allegations

made in his complaint or the summary of his version of events in his opposition").

Rather than disputing the facts germane to the Motion, Plaintiffs' counterstatement primarily contains facts irrelevant to the February 12, 2018 disclosures that are, instead, related to the EW Crossclaim, historical allegations of misconduct against Mr. Wynn, and the MGC and NGCB investigations. Opp'n at 4–9. But those are issues for another day.  This Motion concerns only the February 12 disclosures and the market's reaction to them.

To refute the Motion, Plaintiffs were required to produce evidence showing each of the following: (a) statements by Defendants that no additional allegations would surface in the future against Mr. Wynn, *see* Mot. at 17–18 (there are no such statements); (b) that the February 12 disclosures revealed the "very facts" allegedly concealed by Defendants, *see id.* at 20–21 (they did no such thing); (c) that the February 12 disclosures resulted in a statistically significant stock price movement, *see id.* at 21–25 (they did not); and (d) the disaggregation of non-fraud events from the alleged fraud-induced stock declines on February 12, *see id.* at 25–27 (Plaintiffs have not and very likely cannot do so). Plaintiffs produced no evidence for any of these facts. Plaintiffs' counterstatement of irrelevant facts does not overcome summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

### B.     The Court's Prior Orders Did Not Address the Law and Facts at Issue Here.

Rather than produce evidence disputing the facts in the Motion, Plaintiffs claim the issues have already been decided. Opp'n at 12–15. That is incorrect as a matter of law.

Plaintiffs assert that "[a]t the motion to dismiss stage, the Court ruled that the LVMPD Report and the NGCB Portal Report were sufficiently alleged as corrective disclosures." *Id.* at 13. The NGCB Portal Report, however, appears nowhere in the Court's MTD Order. ECF 171. Plaintiffs did not even allege that it was a corrective disclosure. *See id.* at 37 (stating that the only alleged corrective disclosures are the Jan. 26 WSJ Article and the LVMPD Report).

As to the LVMPD Report, it is correct that the Court assumed as true Plaintiffs' allegation that it "revealed the truth and [was] followed by [a] stock price drop[]." *Id.* But the Court carefully limited its holding to its analysis of the pleadings. *Id.* at 37 (stating that "**at this stage,** the plaintiffs have adequately

alleged that the misrepresentations were a substantial cause of the stock price drops" (emphasis added));
*id.* at 39 (stating that "***[f]or purposes of the motions to dismiss***, the plaintiffs have plausibly alleged that
the" LVMPD Report was a corrective disclosure (emphasis added)). Neither the Court's MTD Order nor
the SAC identified any statements by Defendants addressing whether the NGCB or LVMPD would
receive complaints in the future against Mr. Wynn. As the Company Defendants have explained and
Plaintiffs do not dispute, no such statements exist.

   Moreover, a "ruling for purposes of a motion to dismiss does not bind the Court now for summary
judgment." *Sierra Dev. Co. v. Chartwell Advisory Grp., Ltd.*, 223 F. Supp. 3d 1098, 1106 (D. Nev. 2016).
On summary judgment, the Court must consider the facts and the admissible evidence. *See Calhoun v.
Google, LLC*, 645 F. Supp. 3d 916, 934 n.8 (N.D. Cal. 2022) ("[T]he standards [on a motion to dismiss
and a motion for summary judgment] are completely different: one considers plausibility, the other, the
actual factual record."). As explained in the Motion, the undisputed facts here require summary judgment
as to the February 12 disclosures. Plaintiffs can no longer hide behind unsubstantiated allegations and
inapplicable pleading standards. *See Townsen v. Hebert*, 2015 WL 5782036, at *6 (D. Nev. Oct. 2, 2015)
("Plaintiff's allegations are mere assertions uncorroborated by facts and insufficient to defeat a summary
judgment motion.").

   Plaintiffs also point to the Court's Class Certification Order, where the Court found a "sufficient
match between the defendants' alleged misrepresentations in their January 26, 2018 press release and the
February 2018 disclosures" to certify a class. Opp'n at 13. Again, however, "[m]eaningful differences
exist between motions for summary judgment and motions to certify a class." *Bepple v. Shelton*, 2016 WL
633892, at *3 (D. Or. Feb. 17, 2016). The Court's Class Certification Order carefully acknowledged these
differences. The Court repeatedly noted that it did not evaluate the merits issues discussed in this Motion,
including loss causation and disaggregation. ECF 283 at 15 (stating that whether "any inflation the alleged
misstatements caused in 2016 equals the price drop following the WSJ Article nearly two years later . . . .
is a loss causation argument, ***which I do not address at the class certification stage***" (emphasis added));
*id.* at 22 ("Thus, there is a sufficient match, ***at this stage***, to support an inference of price impact."
(emphasis added)); *id.* at 25 (stating that whether "Nye should take into consideration other confounding
events that may explain some or all of the back-end price drop is a loss causation argument that ***I do not***

THE COMPANY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REPLY

*address at the class certification stage*" (emphasis added)).

In particular, the legal standards for corrective disclosures are distinct at class certification and summary judgment. Class certification asks whether there is a "mismatch" between an alleged misstatement and a corrective disclosure, such as where a misrepresentation is generic but its corrective disclosure is specific. *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1961 (2021). At summary judgment, the Court's inquiry is more pointed. Corrective disclosures must reveal the "very facts misrepresented or omitted by the defendant." *Mineworkers*, 881 F.3d at 753 ("To prove loss causation," plaintiffs must produce evidence "tracing the loss back to the very facts about which the defendant lied."); *see also Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013) (at summary judgment, "a plaintiff can satisfy loss causation by showing that 'the defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiff's economic loss'"). Plaintiffs cite no cases holding that a class certification "mismatch" analysis precludes summary judgment on the different question of loss causation. To the contrary, Plaintiffs' authority recognizes that these standards are distinct. *See In re Mattel, Inc. Sec. Litig.*, 2021 WL 4704578, at *5 (C.D. Cal. Oct. 6, 2021) ("price impact and loss causation are distinct" (citing *Goldman*)). And Plaintiffs unequivocally conceded that the standards were distinct at class certification. ECF 270 at 1, 5–7, 11 (accusing Defendants of making premature and "improper loss causation" arguments, and stating that whether a disclosure is "corrective" is a merits issue that cannot be decided at class certification). As Plaintiffs then acknowledged, the time to address this issue is now.

Courts in securities fraud cases—including this very Court—grant summary judgment for lack of loss causation evidence after previously denying motions to dismiss and granting class certification. *See, e.g.*, *Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878, at *8, *14, *18, *23 (D. Nev. Jan. 3, 2017) (granting summary judgment on loss causation after denying motion to dismiss and certifying class); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d at 1275 (same); *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 97 (1st Cir. 2014) (same). The same is warranted here.

## C.     The Company Defendants Should Prevail on Their Targeted Falsity Argument.

The Motion raised a narrow falsity argument: Plaintiffs' failure to identify "specific statements

made by the Defendants that were made untrue or called into question by" the February 12 disclosures. Mot. at 17 (quoting *Apollo*, 774 F.3d at 608). Plaintiffs do not dispute this requirement. And their Opposition makes no attempt to identify the requisite prior statements or "trac[e] the loss back to 'the very facts about which the defendant lied,'" as required under Ninth Circuit law. *Mineworkers*, 881 F.3d at 753. Consequently, summary judgment is appropriate.

Beyond incorrectly claiming that the Court already ruled on this issue, the Opposition states only that "[t]he evidence obtained to date . . . corroborates every single allegation in the SAC regarding Defendants' reckless disregard of Mr. Wynn's sexual misconduct," and "each of the Individual Defendants was on notice of potential serious misconduct by Steve Wynn no later than March, 2016, when the Counterclaim was filed, yet Defendants failed to conduct the barest of investigations." Opp'n at 14. But Plaintiffs do not explain how this is relevant to falsity. Defendants' alleged "recklessness" and failure to investigate has nothing to do with Plaintiffs' burden to identify public statements that were "made untrue or called into question by" the February 12 disclosures. *Apollo*, 774 F.3d at 608. Evidence of recklessness could possibly be relevant, if at all, to the distinct question of scienter—but the Company Defendants did not move on that issue. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (explaining that to plead scienter, plaintiffs must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness"). Plaintiffs' burden here was to produce evidence of statements Defendants made to the market that concealed or misrepresented the "very facts" disclosed on February 12. *Mineworkers*, 881 F.3d at 753. They do not even attempt to do so.

Plaintiffs failed to rebut the Company Defendants' falsity argument with evidence, so summary judgment should be granted.

### D.    The Company Defendants Should Prevail on Loss Causation.

Plaintiffs do not dispute that to establish loss causation on February 12, they must produce evidence that the movement in the Company's stock price was statistically significant at the 95% confidence level. Opp'n at 15. They further do not dispute that after the NGCB Portal Report and LVMPD Report first became public at 11:25 a.m. on February 12, the Company's stock price movement was not statistically significant. *Id.* By effectively conceding these points, Plaintiffs have conceded loss causation for February 12. *See Nuveen*, 730 F.3d at 1121 (the failure to "demonstrate a causal connection" between

the alleged misrepresentation and the economic loss suffered meant plaintiffs cannot establish loss causation). Summary judgment is also warranted for several additional and independent reasons.

### 1.    Plaintiffs' Leakage Theory Has Zero Evidentiary Support.

Plaintiffs try to overcome their dispositive concessions by asserting the theory that the NGCB Portal Report and LVMPD Report must have been "leaked" to the market before 11:25 a.m. on February 12. Opp'n at 15–16. But this is pure speculation and Plaintiffs offer no evidence supporting this theory.

It is possible for the truth to "leak" to the market in advance of a public disclosure in some cases. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). But merely invoking "leakage" with no evidence of a leak cannot defeat summary judgment. To create a dispute of material fact that a stock's price was affected by leakage, a plaintiff must "show some mechanism for how the truth was revealed" to the public.[3] *In re Williams*, 558 F.3d at 1138. "[Plaintiff must] establish that his losses were attributable to some form of revelation to the market of the wrongfully concealed information[.]" *Id.* (quoting *In re Worldcom, Inc. Sec. Litig.*, 2005 WL 2319118, at *23 (S.D.N.Y. Sept. 21, 2005)). "A plaintiff cannot simply state that the market had learned the truth by a certain date and, because the learning was a gradual process, attribute all prior losses to the revelation of the fraud." *Id.* Rather, a plaintiff must "present[] *evidence* that the content of the disclosures was leaking *out to the market* gradually prior to their release." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 421 (7th Cir. 2015) (emphasis added).

Therefore, it is well-settled law that regardless of the theory espoused, to create a triable issue of fact on loss causation, a plaintiff must come forward with evidence of when and how the truth became known to the market. *In re BofI, Inc. Sec. Lit.*, 977 F.3d at 789. Absent evidence of public disclosure, "leakage" claims are just speculation that "the market must have known" sooner. *In re Williams*, 558 F.3d at 1138 (affirming the exclusion of plaintiffs' expert's testimony on that basis).

Here, Plaintiffs do not offer any leakage evidence. They do not point to any news segment, social

---

[3]      *See also In re Semiconductor Mfg. Int'l Corp. Sec. Litig.*, 2023 WL 6290742, at *1 n.1 (9th Cir. 2023) (because a report was "not publicly available," or "available to the market," it "cannot constitute a corrective disclosure"); *Appollo*, 774 F.3d at 608 (referring to a "corrective disclosure" as a "public disclosure"); *Hunt v. Enzo Biochem., Inc.*, 530 F. Supp. 2d 580, 597 (S.D.N.Y. 2008) (noting "courts have routinely equated corrective disclosures with statements that have reached the public" (citing cases)); *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, 2005 WL 3504860, at *16 (S.D. Tex. Dec. 22, 2005) (citing as examples of corrective disclosures "whistleblowers, analysts' questioning financial results, resignations of CFOs or auditors, announcements by the company . . . , newspapers and journals, etc.").

**THE COMPANY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REPLY**

media post, blog post, or other mechanism by which the information could leak to the market. Plaintiffs instead point to an email showing that two *Wall Street Journal* reporters asked the Company for comment roughly two hours before publishing the 11:25 a.m. article on February 12. Opp'n at 16 (citing ECF 335-33). That reporters privately contacted the Company for comment before publication, a customary step,[4] says nothing about what the market knew or when. *Compare Glickenhaus & Co.,* 787 F.3d at 421 (citing specific disclosures, plus evidence that information was actually leaking to the market), *and Norfolk Cnty. Ret. Sys. V. Ustian*, 2009 WL 2386156, at *6 (N.D. Ill. July 28, 2009) (citing "a series of partial disclosures, corresponding ratings adjustments, and subsequent trading"), *with Prime Mover Cap. Part. L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 686 (S.D.N.Y. Sept. 27, 2012) (a disclosure during a private conference call was inadequate to allege leakage). Plaintiffs simply assume the Company's stock price movement before 11:25 a.m. must reflect leakage but they have provided no evidence of this. In fact, even if there were leakage (there is no evidence there was), the stock price movement before 11:25 a.m. was not statistically significant under either Dr. Sabry or Nye's models. *See* Suppl. Decl. of Faten Sabry, Ph.D. ("Sabry Suppl. Decl.") ¶¶ 13–18, filed concurrently herewith; *see also id.* ¶¶ 6–12, 19–22.

Plaintiffs also claim that a media inquiry from a St. Louis television station at 3:32 p.m. ET on February 12—***four hours after*** the 11:25 a.m. *Wall Street Journal* article was published—is evidence of leakage. Opp'n at 16 (citing ECF 335-37). That makes no sense. Plaintiffs do not and cannot explain how this after-the-fact event supports an inference of before-the-fact leakage. Even if the police reports were leaked to the market before 11:25 a.m., Plaintiffs cannot establish that the market learned of the police reports, which were filed on January 29 and February 5, only shortly before trading hours opened on February 12. ECF 317-2 at 1 (stating the dates of the complaints received by the LVMPD).

Because Plaintiffs submit no evidence of any actual leak to the market, their leakage theory fails.

---

[4]  Beginning on January 19, 2018 and continuing through February 12, 2018, reporters from the *Wall Street Journal* were in almost daily contact with the Company. Hillenbrand Suppl. Decl. ¶ 8. Between January 26 and February 12, 2018, the *Wall Street Journal* published over a dozen stories that referenced the misconduct allegations against Mr. Wynn, and its reporters on numerous occasions asked the Company for comment in advance of publication. *Id.* Moreover, Plaintiffs submitted a media inquiry log with the Opposition (ECF 335-43) showing that the Company received roughly 180 media inquiries (including from reporters at the *Wall Street Journal*) in connection with the Jan. 26 WSJ Article's allegations and Mr. Wynn's resignation on February 6, 2018.

### 2.    Plaintiffs Fail to Submit Evidence of Disaggregation.

Even if Plaintiffs had presented some credible leakage evidence in the Opposition—they did not—their claims would still fail. Indeed, Plaintiffs make no attempt to disaggregate other firm-specific, non-fraud information from their causal analysis. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d at 392. To do so: (1) plaintiffs' expert must first testify "that no firm-specific, nonfraud related information contributed to the decline in stock price during the relevant time period and explain[] in nonconclusory terms the basis for this opinion"; then (2) the defendants "shoulder the burden of identifying some significant, firm-specific, nonfraud related information that could have affected the stock price"; and then (3) "the burden shifts back to the plaintiffs to account for that specific information or provide a loss-causation model that doesn't suffer from the same problem[.]" *Glickenhaus*, 787 F.3d at 422.

Here, Plaintiffs fail at the threshold: Nye's declaration does not state that no firm-specific, nonfraud related information contributed to the decline in stock price during the relevant time period. ECF 336. For her part, Dr. Sabry identified several Wynn Resorts-specific events that were disclosed to the market during the same time period, including three events—the O'Melveny Report, Stockholder Agreement Report, and Cornell University Award Recission Report—that Plaintiffs already argued had an impact on the Company's stock price on February 12.[5] ECF 315 ¶ 55. The O'Melveny Report and Stockholder Agreement Report are not "corrective" of any alleged misstatements—*i.e.*, they are ***not*** "related to the fraud." *Compare* ECF 283 at 17 n.5, 22–23, *with* Opp'n at 20. Plaintiffs must therefore disaggregate these events, and no amount of discovery can change that. Opp'n at 20.

But Plaintiffs do not even try. Nye submits no evidence or analysis of any kind relating to disaggregation. ECF 336. Summary judgment is therefore required. *See Bricklayers*, 752 F.3d at 95 (affirming summary judgment where plaintiff's expert "did not establish any reliable means of" disaggregation, instead "ma[king] a judgment call as to confounding information without any

---

[5]    On summary judgment, it is Plaintiffs' affirmative burden to produce evidence of statistically significant price reaction. Mot. at 21–22 (citing cases). Accordingly, their reliance on the Company Defendants' arguments at the class certification stage is misplaced. Opp'n at 19. Plaintiffs further omit that they affirmatively claimed that the O'Melveny Report and Stockholder Agreement Report affected the Company's stock price on February 12. ECF 270 at 8; ECF 270-2 ¶¶ 36–40. They cannot backtrack on that position now.

1   methodological underpinning").[6]

2   Plaintiffs do not acknowledge any of the Company Defendants' authorities either. Rather, they cite

3   *In re Motorola, Inc. Sec. Litig.*, 505 F. Supp. 2d 501 (N.D. Ill. 2007), for the proposition that, faced with

4   summary judgment, a plaintiff does not bear the burden to disaggregate the effects of confounding adverse

5   information. But the Seventh Circuit's decision in *Ray v. Citigroup Glob. Markets, Inc.*, 482 F.3d 991,

6   995 (7th Cir. 2007), soon after *Motorola*, placed the burden firmly on the plaintiff to present loss causation

7   evidence at summary judgment. *See In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1263 n.50 (N.D.

8   Okla. 2007) (discussing *Ray* and *Motorola*). Plaintiffs fail to carry their burden here.

9   ### 3.   Plaintiffs Fail to Submit Evidence of Significant Market Reaction.

10   Despite Plaintiffs' claims, the Company Defendants have not moved for summary judgment on

11   materiality. Opp'n at 17. Instead, the Motion explained that the lack of any discussion about the February

12   12 disclosures by market participants establishes a lack of market reaction. Mot. at 24 (noting that zero

13   equity analysts commented on the NGCB Portal Report and LVMPD Report). This is unsurprising. By

14   February 12, 2018: (1) the market was saturated with news about allegations of misconduct against Mr.

15   Wynn, *see* Sabry Suppl. Decl. ¶¶ 29–37, App. II; (2) the market knew that the Company and its regulators

16   were investigating the allegations and that based on the nature of those allegations, which included sexual

17   misconduct, other authorities (including the police) might do so as well, *see* ECF 317-6; ECF 318-5; ECF

18   318-6, -14, -16, -17; and (3) amidst the unrelenting media coverage and investigations following the Jan.

19   26 WSJ Article, Mr. Wynn resigned from the Company on February 6, 2018, *see* ECF No. 317-4 at 27.[7]

20   [6]   *See also In re Omnicom Grp., Inc. Secs. Litig.*, 597 F.3d 501, 512 (2nd Cir. 2010) (affirming
21   summary judgment because the disaggregation analysis by plaintiff's expert did not "suffice to draw the
     requisite causal connection between the information in the June 12 article and the fraud alleged in the
22   complaint"); *In re Williams*, 558 F.3d at 1142 (affirming summary judgment where plaintiff's expert "saw
     no need to separate fraud-related from non-fraud-related losses, because he assumed any and all losses
23   were of the former variety"); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d at 1273–74 (excluding expert
     and granting summary judgment where plaintiff's expert "fail[ed] to separate the loss caused by the
24   disclosure of corrective information (new, negative, company-specific, revealing a prior misrepresentation
     or omission) from loss caused by the disclosure of other company-specific information"); *In re Moody's
25   Corp. Sec. Litig.*, 2013 WL 4516788, at *12 (S.D.N.Y. Aug. 23, 2013) (granting summary judgment for
     defendants on loss causation where plaintiff's theory rested on "factually unsupported assumption" that
26   entirety of stock drop related to the alleged fraud).

27   [7]   Equity analysts covering the Company viewed Mr. Wynn's resignation as a positive development
     that resolved most uncertainty and allowed the Company to move past the misconduct allegations. Sabry
28   Suppl. Decl. ¶¶ 35–37, App. III.

Plaintiffs quote a February 20, 2018 Morgan Stanley analyst report's "recent allegations" and "regulatory risk" language. Opp'n at 17 (citing ECF 315 at 25). But that report referenced the Jan. 26 WSJ article and the MGC and NGCB investigations launched that same day. Indeed, "recent allegations" and "regulatory risk" appear ***verbatim*** in a February 9, 2018 Morgan Stanley analyst report—before the NGCB Portal Report and LVMPD Report were even published. Suppl. Decl. of Edward Hillenbrand ("Hillenbrand Suppl. Decl.") Ex. C, filed concurrently herewith; *see also* Sabry Suppl. Decl. ¶¶ 23–28.

Plaintiffs' assertion that news reports alleging misconduct by Mr. Wynn in the 1970s "suggested an even longer pattern of misbehavior . . . which potentially increased the Company's regulatory exposure" is totally unsupported by evidence. Opp'n at 18. The Jan. 26 WSJ Article already cited allegations against Mr. Wynn from as far back as the 1980s and 1990s. ECF 317-6 at 6, 7, 9. As the Company Defendants have explained and Plaintiffs do not refute, not one analyst even mentioned the NGCB Portal Report and LVMPD Report. ECF 315 ¶¶ 47–49. Nor did any regulator in their detailed reports. ECF 320-4; ECF 321-1. Hence, there is no evidence to support Plaintiffs' counterfactual claim that decades-old reports somehow "increased the Company's regulatory exposure."[8] Sabry Suppl. Decl. ¶¶ 29–31.

**4.    Plaintiffs Fail to Submit Evidence of a Significant Price Movement.**

Nye did not conduct any analysis in response to the Motion or Dr. Sabry's declaration. ECF 336. Instead, Plaintiffs rely solely on Nye's class certification reports (not declarations) and claim that whether the movement in the Company's stock price on February 12, 2018 was statistically significant across the entire trading day is a triable issue. Opp'n at 15 (citing ECF 335-40 ¶ 31).[9] But as discussed above, Plaintiffs do not dispute that the stock price movement ***after*** the disclosures were published at 11:25 a.m. on February 12 was statistically insignificant under both Dr. Sabry and Nye's models. ECF 315 ¶¶ 33–37.

---

[8]    A list of follow-on news reports about the complaints received by the LVMPD says nothing about whether the LVMPD Report impacted the Company' stock price on February 12, 2018. Opp'n at 18 (citing ECF 335-36).

[9]    Plaintiffs specifically cite to Nye's "fraud-induced volatility" explanation for his decision to terminate his February 12, 2018 estimation window on January 26, 2018 instead of February 9, 2018. Opp'n at 15 (citing ECF 335-40 ¶¶ 56–65). Dr. Sabry did not have an opportunity to respond at class certification to Nye's fraud-induced volatility explanation, and the Court did not address this issue in its Class Certification Order. ECF 283. Though this issue is not relevant to the Motion, and need not be decided to grant summary judgment, Dr. Sabry debunks Nye's explanation in Appendix IV to her Supplemental Declaration, filed concurrently herewith.

And while there is no basis for Plaintiffs' speculative leakage theory, Dr. Sabry's analysis establishes that the stock price movement **before** the disclosures were published at 11:25 a.m. also was statistically insignificant under both her and Nye's models. Sabry Suppl. Decl. ¶¶ 13–22. Accordingly, summary judgment is warranted.

### E.   Plaintiffs Fail to Satisfy Federal Rule of Civil Procedure 56(d).

As parties often do when they lack evidence to support their allegations, Plaintiffs urge the Court to delay summary judgment under Rule 56(d). Opp'n at 21–29; ECF 335-1; ECF 336. But while Plaintiffs correctly cite Rule 56(d)'s requirements, they fall woefully short of meeting them. As the Company Defendants explained in the Motion, the issues here depend on publicly-available information, not unproduced documents in the Company's files. Moreover, Plaintiffs have already received any and all discovery they could possibly need to oppose the Motion.[10] Indeed, the Company Defendants have pressed Plaintiffs to identify with specificity what facts and evidence they claim to need to oppose the Motion. Hillenbrand Suppl. Decl ¶ 2, E. A. Plaintiffs strategically ignored that request. *Id.* ¶ 3.

#### 1.   Plaintiffs Fail to Identify Specific and Essential Facts.

Plaintiffs must show that "(1) [they have] set forth in affidavit form the **specific facts** [they] hope[] to elicit from further discovery; (2) the **facts** sought exist; and (3) the sought-after **facts** are essential to oppose summary judgment." *Childs*, 2020 WL 907558, at *1 (citing *Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (emphasis added)); *see also* Opp'n at 21. Plaintiffs also must show that it is "likely" that "those facts will be discovered during further discovery." *Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018) (quoting *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998)). Failure to comply with these requirements "is a proper ground for denying discovery and proceeding to summary judgment." *Fam. Home & Fin. Ctr., Inc.*, 525 F.3d at 827.

Importantly, Plaintiffs cannot satisfy Rule 56(d)'s requirements by requesting additional discovery that is "generically relevant" to the case; the discovery must be "essential" to oppose summary judgment.

---

[10]   Plaintiffs concede that no rule, law, or principle precludes summary judgment motions before the close of fact discovery. Opp'n at 21. Tellingly, all of their cases involve summary judgment motions filed before the case was at issue and discovery commenced. *See Bar St. III v. ACC Enters., LLC*, 2017 WL 4293142, at *1 (D. Nev. Sept. 26, 2017); *Morin v. United States*, 2005 WL 8165321, at *1 (D. Nev. Feb. 7, 2005); *Burlington N. Santa Fe. RR. Co. v. Assiniboine & Sioux Tribes of For Peck Rsrv.*, 323 F.3d 767, 773–74 (9th Cir. 2003).

*Id.* Merely "complain[ing] about the adequacy of [the Company Defendants'] discovery responses, declar[ing] [the] intention to take additional discovery, and generally describ[ing] the areas of discovery [Plaintiffs] wish[] to pursue and the information [they] hope[] to elicit" is not enough. *Burke v. Prof. Transp., Inc.*, 2018 WL 6107217, at *3 (W.D. Wash. Nov. 21, 2018).[11]

Further, Plaintiffs need to identify the specific facts that are essential to oppose the Motion. This Court has repeatedly denied Rule 56(d) relief for failure to specify "what facts" the nonmoving party "hopes to elicit through discovery, that such facts exist, [or] how those facts are essential to his opposition." *Derrico*, 2018 WL 472998, at *4; *see also infra* n.1 (citing cases). So too here. Plaintiffs do not come close to making the specific and detailed showing required under Rule 56(d). Speculating what further discovery "could show" falls well short of meeting Rule 56(d)'s requirements for both falsity and loss causation. *See Mayo*, 2018 WL 8345428, at *3; *see also ReliaStar Life Ins. Co. v. Grand Hills Resort & Country Club, Inc.*, 2015 WL 1413388, at *4 (D. Nev. Mar. 27, 2015).

### 2. Plaintiffs Fail to Meet Rule 56(d) Regarding Falsity.

Plaintiffs claim to need additional discovery about "the prior accusations of misconduct against Mr. Wynn, as well as the Company's and regulators' investigations of the same." Opp'n at 24. The Opposition further states, without any basis or factual support, that additional discovery "will demonstrate" that the February 12 disclosures corrected the misimpression created by the alleged misstatements "denying and downplaying allegations of Mr. Wynn's misconduct and the Company's failure to investigate or report the allegations to regulators or investors." *Id.* at 25. This broad, vague statement is not a "specific fact," as required under Rule 56(d).

Even if it were, Plaintiffs do not explain why it is "likely" this information will be revealed through further discovery. As explained below, Plaintiffs already have the discovery they are requesting. *Infra*

---

[11]    *See also Ja Naoko Ohno*, 723 F.3d at 1013 n.29 ("it is not enough to rely on vague assertions that discovery will produce needed, but unspecified, facts" (quotation omitted)); *Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1100–01 (9th Cir. 2006) (an affidavit merely identifying discovery not yet received that does not cite any "specific facts" the discovery would reveal or explain why the discovery is "essential" to the motion is insufficient); *Margolis*, 140 F.3d at 853–54 (affidavit failed to "provide any basis or factual support for [its] assertions that further discovery would lead to the facts and testimony described," and was "based on nothing more than wild speculation"); *Stein*, 906 F.3d at 833 (defendant "failed to identify with specificity facts likely to be discovered that would justify additional discovery" or explain how the additional facts were "essential" to his opposition, and the requested discovery was "the object of mere speculation").

**THE COMPANY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REPLY**

§ II.E.4; *see also Tasty One, LLC*, 2022 WL 1308146, at *2 (denying Rule 56(d) relief where the nonmoving party "already received the documents that formed the basis for its" request). The content of the February 12 disclosures is public and alleged in the SAC. ECF 335-1 ¶ 5 (admitting the SAC "draws from, and references, these regulatory documents"). And Plaintiffs have received thousands of documents spanning 14 years from the Company. They have received hundreds of documents directly from the MGC and NGCB as well, in addition to hundreds of pages of regulatory findings.

Nor do Plaintiffs explain how this information is "essential to oppose" the Motion. As explained above, the Motion challenges Plaintiffs' failure to identify ***public statements*** that were later contradicted by the February 12 disclosures. No further discovery could possibly rectify this flaw, as the information needed to rebut it is already in the public domain and has been for years.

### 3.   Plaintiffs Fail to Meet Rule 56(d) Regarding Loss Causation.

Plaintiffs also claim to need more discovery about "the February 12, 2018 corrective disclosures and their impact on the Company's stock price, as well as the impact of any confounding factors on the Company's stock price." Opp'n at 24. The Walsh Declaration claims, without any basis or support, that this discovery will demonstrate that "key market participants, including the Company and other stock analysts, understood the corrective disclosure[s] constitute new information that contributed to the decline in the Company's stock price." ECF 335-1 ¶ 71. Nye's declaration likewise speculates that "evidence produced during discovery may demonstrate that purported confounding factors are in fact related to the allegations in this matter." ECF 336 ¶ 8.

These are not "specific facts" within the meaning of Rule 56(d). Rather, they are vague categories of information Plaintiffs have failed to establish despite years of discovery. But "it is not enough to rely on vague assertions that discovery will produce needed, but unspecified, facts." *Ja Naoko Ohno*, 723 F.3d at 1013 n.29. As discussed above, the private email communication between the Company and the *Wall Street Journal* that Nye cites as loss causation evidence (which the Company Defendants ***produced in discovery***) is irrelevant—it does not show what the market knew and when; suggesting otherwise is pure speculation. ECF 336 ¶ 8.

Even if any of these were a "fact" for Rule 56(d) purposes, Plaintiffs do not explain why it is "likely" this information will be revealed through further discovery. As discussed below, Plaintiffs already

**THE COMPANY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REPLY**

have the discovery they are requesting and none of it suggests that the alleged February 12 corrective disclosures had any impact on the Company's stock price. *Infra* § II.E.4; *see also Tasty One, LLC*, 2022 WL 1308146, at *2. The parties' experts have already scoured the relevant equity analyst reports, which are publicly available. Plaintiffs have received scores of internal and external emails about the NGCB Portal Report and LVMPD Report, the O'Melveny Report, and the Stockholder Agreement Report. They have received all of the Company's relevant communications with investors, equity analysts, and media members. Plaintiffs and Nye are just speculating that further communications exist without "put[ting] forth any facts to show that such conversations took place." *Conkel v. Jeong*, 73 F.3d 909, 914 (9th Cir. 1995). That is not sufficient. *See Oppy. Homes, LLC v. Fed. Home Loan Mortg. Corp.*, 169 F. Supp. 3d 1073, 1078 (D. Nev. 2016) ("the evidence [plaintiff] seeks to uncover through additional discovery either 'is almost certainly nonexistent or is the object of pure speculation'" (quoting *State of Cal. v. Campbell*, 138 F.3d 772, 779–90 (9th Cir. 1998))); *Leskinen v. Perdue*, 2019 WL 2567142, at *4 (E.D. Cal. June 21, 2019) (mere claims of "pretext" in emails or "defamatory information" in a personnel file "are unspecific and will not ward off summary judgment"). Indeed, the Company has reviewed thousands of emails and documents on and after February 12 and there are no documents discussing the NGCB Portal Report or LVMPD Report's effect on the Company's stock price. There is no email, like in *Smilovits v. First Solar*, 119 F. Supp. 3d 978, 995 (D. Ariz. 2015), that "noted investor concerns and recognized the [alleged corrective disclosure] caused [a] stock drop." There is no email that says the NGCB Portal Report and LVMPD Report are related to the O'Melveny Report, Stockholder Agreement Report, or any other confounding news events either. Thus, Plaintiffs do not meet their burden under Rule 56(d).

Plaintiffs also do not explain how this information is "essential to oppose" the Motion. Loss causation is determined based upon how the market reacts (if at all) to the public revelation of a fraudulent act. *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 392. The information needed to assess market reaction—statements to the market, analyst reports, stock price movement, and trading volume—is all public and would come from sources other than the Company. The Company Defendants' private documents cannot change what was told to the market and when, or whether the market reacted and how.

### 4. Plaintiffs Already Have the Discovery They Claim to Need.

The Company Defendants did not "stonewall" Plaintiffs at all. *See generally* ECF 328; ECF 330.

The Company Defendants have produced thousands of documents in the case, from as far back as 2005 and as recent as 2018, including materials from the *Okada* litigation, MGC investigation, NGCB investigation, and Special Committee investigation.[12] ECF 330 ¶¶ 5, 12. In Phase One of discovery, the Company Defendants searched for and produced not just external communications but also internal documents discussing the price impact of the alleged misstatements and corrective disclosures. *Id.* ¶ 5. During Merits discovery, the Company Defendants have collected from over 20 custodians using roughly 600 search terms over a 14-year time period. *Id.* ¶ 13. They have reviewed hundreds of thousands of documents, and less than 1% of them have been responsive. *Id.* ¶ 11.

Across Phase One and Merits discovery, the Company Defendants have produced scores of documents that discuss the NGCB Portal Report, LVMPD Report, O'Melveny Report, or Stockholder Agreement Report. Hillenbrand Suppl. Decl. ¶ 4. The Company Defendants have confirmed that there are no communications, during or after the Class Period, that discuss the impact (or lack thereof) of the NGCB Portal Report or LVMPD Report on the Company's stock price or communications that claim the NGCB Portal Report or LVMPD Report are "related" to the O'Melveny Report or Stockholder Agreement Report. *Id.* ¶¶ 5–6. Far from being "likely" that additional discovery will somehow break open the case, Defendants' sampling shows that the documents Plaintiffs are requesting are not responsive. ECF 330 ¶¶ 14–17. And while Plaintiffs claim in the Opposition that the Company Defendants provided "inadequate responses to interrogatories" and applied "facially inappropriate privilege redactions," they have not asked to address these issues with the Company Defendants or taken any steps to move to compel. Opp'n at 23; ECF 335-1 ¶¶ 85–86, 93, 95.

Plaintiffs insist that they require four categories of information to oppose the Company Defendants' falsity arguments, and three categories of documents to oppose their loss causation arguments. Opp'n at 24–25. Plaintiffs already have these documents and have not identified any gaps in the Company Defendants' productions. ECF 330 ¶¶ 3, 5, 12. At bottom, Plaintiffs have no basis to suspect

---

[12] Plaintiffs cite from the Special Committee report (which they already have) to claim they are supposedly missing materials from that investigation. ECF 335-1 ¶ 64. The Company Defendants have explained to Plaintiffs that the Company has produced what it has. Hillenbrand Suppl. Decl. ¶ 9, Ex. B. In any event, there is no suggestion or evidence that anything from the Special Committee's investigation would further inform the Court's analysis of the alleged February 12 corrective disclosures.

that additional relevant information exists. Opp'n at 22, 27. "A vague suggestion that some other information might exist is insufficient to overcome Defendants' insistence that they already have produced the relevant documents." *In re Clorox Co. Sec. Litig.*, 238 F. Supp. 2d 1139, 1146 (N.D. Cal. 2002), *aff'd sub nom.*, 353 F.3d 1125 (9th Cir. 2004); *see also Binn v. Bernstein*, 2019 WL 2461816, at *3 (S.D.N.Y. May 21, 2019) ("merely argu[ing] in their brief that they need depositions, documents, and third-party discovery" does not satisfy Rule 56(d)'s requirements).

Plaintiffs claim that granting Rule 56(d) relief is appropriate where "the material sought is also the subject of outstanding discovery requests." Opp'n at 21–22 (quoting and citing cases). But Plaintiffs' cases are inapposite. In all of them, the nonmoving party established that the moving party had failed to produce discovery on topics that were critical to the motion.[13] For the reasons stated above, Plaintiffs have not and cannot do so here. And unlike the plaintiff in *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2022 WL 2304287, at *2 (N.D. Cal. June 27, 2022), Plaintiffs have not "identified facts indicating that [the requested] discovery exists." Opp'n at 24.

### 5.     There Is No Basis for Delay.

Plaintiffs' request for 45 days to depose Dr. Sabry and to submit a responsive declaration from Nye should be denied. Opp'n at 28–29. Plaintiffs could have asked the Company Defendants or the Court for additional time before responding to the Motion. But they never did. Plaintiffs could have asked to depose Dr. Sabry before the responding to the Motion. Again, they never did. Nye could have conducted analysis attempting to rebut Dr. Sabry's opinions. He chose not to. Nearly six years into this case, and eight months into merits discovery, there is no basis for further delay.

Plaintiffs incorrectly suggest that the Court's scheduling order precludes the filing of summary judgment motions prior to January 25, 2025. But that merely sets **the last day** for filing motions. ECF 302 at 5 (setting the deadline for summary judgment motions on January 25, 2025). "No mechanism of the Court prevent[s]" a party from "mov[ing] for summary judgment prior to the dispositive motion deadline." *Williams v. Trujillo*, 2022 WL 1078907, at *3 (D. Ariz. Apr. 11, 2022). In fact, under the default rules, "a

---

[13]     *See Real Prop. & Impv'ts, 2014* v *Dep't*, 2002 WL 35646254, at *1 (D. Nev. Sept. 18, 2002) ("Metro has not produced the evidence Plaintiffs need in order to oppose the motion."); *Sunde v. Haley*, 2013 WL 5973815, at *4 (D. Nev. Nov. 7, 2013) (defendants "have not had an opportunity to conduct the necessary discovery" of taking the plaintiff's deposition); *Hoffman v. Tonnemacher*, 2005 WL 1383186, at *3 (E.D. Cal. June 7, 2005) (stating it is not clear that defendant "has provided substantial information").

1  party may move for summary judgment *at any time* until 30 days after the close of all discovery." *Reese*

2  *v. Barton Healthcare Sys.*, 2010 WL 3269873, at *3 (E.D. Cal. Aug. 18, 2010) (emphasis added).

3  Nor does Rule 56 limit the number of motions that can be filed. In fact, it encourages "successive

4  motions" where, like here, they "foster[] the 'just, speedy, and inexpensive resolution" of the case.

5  *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010) (quoting Fed. R. Civ. P. 1); *Mauwee v.*

6  *Palmer*, 2015 WL 3764943, at *5 (D. Nev. June 16, 2015) (citing *Hoffman*); *see also Strasburger v.*

7  *Blackburne & Sons Realty Capital Corp.*, 2021 WL 6104819, at *2 (C.D. Cal. Feb. 2, 2021) (permitting

8  and granting a summary judgment motion in a securities fraud case that addressed a discrete issue (citing

9  *Hoffman*)). The Motion is in the heartland of Rule 56. Deciding targeted falsity and loss causation issues

10 now will significantly reduce the scope of discovery and Plaintiffs' claimed damages, eliminating a crucial

11 obstacle to the ultimate resolution of this dispute.

12 The Court should deny Plaintiffs' request for additional time. But to the extent the Court grants it,

13 the Company Defendants request an opportunity to respond to any further briefing or evidence.

14 **III.    CONCLUSION**

15 The Company Defendants have established by undisputed facts that Plaintiffs cannot prove that

16 the remaining alleged February 12, 2018 corrective disclosures revealed the falsity of any prior statements,

17 were corrective of any prior statements, or caused the Company's stock price to decline on February 12.

18 Plaintiffs resort to requesting additional time and discovery because they have no basis to oppose the

19 merits of the Motion. But they fall woefully short of meeting Rule 56(d)'s standard for relief and their

20 claims that the Company Defendants are "withholding" relevant information are belied by the record.

21 For these reasons, the Court should grant the Motion and order that the Class Period ends on

22 January 26, 2018.

23

24

25

26

27

28

**THE COMPANY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REPLY**

DATED: December 19, 2023

KIRKLAND & ELLIS LLP

_/s/ Mark S. Holscher_

Mark Holscher (_Pro Hac Vice_)
Austin Norris (_Pro Hac Vice_)
Michael J. Shipley (_Pro Hac Vice_)
Edward Hillenbrand (_Pro Hac Vice_)
KIRKLAND & ELLIS LLP
555 South Flower Street, Ste. 3700
Los Angeles, California 90071
Telephone: 213.680.8190
Facsimile: 213.808.8097
Email: mark.holscher@kirkland.com
         austin.norris@kirkland.com
         michael.shipley@kirkland.com
         edward.hillenbrand@kirkland.com

Matthew Solum (_Pro Hac Vice_)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: 212.446.4688
Facsimile: 212.446.4900
Email: matthew.solum@kirkland.com

Patrick G. Byrne (Nevada Bar #7636)
Bradley T. Austin (Nevada Bar #13064)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone: 702.784.5200
Facsimile: 702.784.5252
Email: pbyrne@swlaw.com
         baustin@swlaw.com

_Attorneys for Defendants Wynn Resorts, Ltd._
_and Matthew O. Maddox_

**THE COMPANY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REPLY**