ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
Email: andrew@mlolegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Emily C. Finestone (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Tel:     (212) 661-1100
Fax:     (917) 463-1044
Email: jalieberman@pomlaw.com
         mjsteven@pomlaw.com
         efinestone@pomlaw.com

*Attorneys for Class Representatives John V. and JoAnn M. Ferris*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JOHN V. FERRIS and JOANN M. FERRIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>WYNN RESORTS LIMITED, et al.,<br><br>Defendants. | Case No. 2:18-CV-00479-CDS-BNW<br><br>**CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

{00626350;11 }

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     BACKGROUND ..................................................................................................... 2

        A.    Procedural History of the Action ............................................................. 2

        B.    The Settlement and Proposed Settlement Administration ....................... 5

III.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .......................... 8

        A.    The Ninth Circuit Strongly Favors Settlement ........................................ 8

        B.    The Proposed Settlement is Fair, Adequate, and Reasonable.................. 9

              1.    Plaintiffs and Lead Counsel Adequately Represented the Class ............... 9

              2.    The Settlement Was Negotiated at Arm's Length ................................... 10

              3.    The Relief Provided for the Class is More than Adequate ...................... 12

                    a.    The Settlement Amount is Within the Range of Reasonableness. 12

                    b.    The Costs, Risks, and Delay of Trial and Appeal......................... 13

                    c.    The Other Factors Established by Rule 23(e)(2)(C) Support
                          Preliminary Approval.................................................................. 14

              4.    The Settlement Treats Class Members Equitably .................................... 16

IV.     THE PROPOSED PLAN OF NOTICE SHOULD BE APPROVED............................. 16

V.      PROPOSED SCHEDULE OF EVENTS ..................................................................... 18

VI.     CONCLUSION....................................................................................................... 19

i
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Fedex Ground Package Sys., Inc.*,
  2016 WL 1427358 (N.D. Cal. Apr. 12, 2016) ...................................................15

*Baker v. SeaWorld Ent., Inc.*,
  2020 WL 4260712 (S.D. Cal. July 24, 2020) ....................................................13

*Baron v. HyreCar Inc.*,
  2024 WL 3504234 (C.D. Cal. July 19, 2024) ...................................................10

*Brightk Consulting Inc. v. BMW of N. Am., LLC*,
  2023 WL 2347446 (C.D. Cal. Jan. 3, 2023) .....................................................11

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) .......................................................................8, 9

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..................................................16

*Daniels v. Aria Resort & Casino, LLC*,
  2023 WL 2634613 (D. Nev. Mar. 23, 2023) ....................................................11

*Dent v. ITC Serv. Grp., Inc.*,
  2013 WL 5437331 (D. Nev. Sept. 27, 2013) .....................................................8

*Evans v. Wal-Mart Store, Inc.*,
  2020 WL 886932 (D. Nev. Feb. 24, 2020) ........................................................8

*Ferris v. Wynn Resorts Ltd.*,
  No. 23-80023, 2023 U.S. App. LEXIS 9656 (9th Cir. Apr. 21, 2023) ..............4

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................... *passim*

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ..................................................16

*Hessefort v. Super Micro Comput., Inc.*,
  2023 WL 7185778 (N.D. Cal. May 5, 2023) ....................................................13

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................................13

*In re BofI Holding, Inc. Sec. Litig.*,
  2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .........................................................16

*In re Galena Biopharma, Inc. Sec. Litig.*,
  2016 WL 3457165 (D. Or. June 14, 2016) ..........................................................14

*In re Gen. Instrument Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ...................................................................15

*In re HIV Antitrust Litig.*,
  2023 WL 11897610 (N.D. Cal. Sept. 25, 2023) ....................................................15

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009).................................................................15

*In re MGM Mirage Sec. Litig.*,
  708 F. App'x 894 (9th Cir. 2017) .........................................................................18

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................11, 12

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ...............................................................................18

*In re Stable Road Acquisition Corp.*,
  2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ...................................................10, 16

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ...............................................................................8

*Landmen Partners Inc. v. Blackstone Grp., L.P.*,
  No. 1:08-cv-03601, ECF No. 171 ..........................................................................15

*Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018) ...............................................................................15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950).............................................................................................18

*Musgrove v. Jackson Nurse Professionals, LLC*,
  2022 WL 2022 WL 2092656 (C.D. Cal. Jan. 11, 2022) ........................................15

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) .............................................................................8, 15

*Perks v. Activehours, Inc.*,
  2021 WL 1146038 (N.D. Cal. Mar. 25, 2021).......................................................10

*Riker v. Gibbons*,
　2010 WL 4366012 (D. Nev. Oct. 28, 2010) ..........................................................................10

*Tyus v. Wendy's of Las Vegas*,
　2021 WL 2169928 (D. Nev. May 27, 2021).........................................................................11

*Van Bronkhorst v. Safeco Corp.*,
　529 F.2d 943 (9th Cir. 1976) ...............................................................................................8

**Statutes**

Class Action Fairness Act of 2005.............................................................................................5

Private Securities Litigation Reform Act of 1995 ...............................................................17, 18

Securities Exchange Act of 1934...............................................................................................2

**Rules and Regulations**

17 CFR § 240.10b-5...................................................................................................................2

Fed. R. Civ. P. 23 .............................................................................................................. *passim*

Fed. R. Civ. P. 56(d) .............................................................................................................2, 4

**Other Authorities**

Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904 ............................................9

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2023
　Review and Analysis* (Cornerstone Research 2024).................................................................12

*Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone
　Research),
　 https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-
　Action-Settlements-2023-Review-and-Analysis.pdf ...............................................................12

Treasury Regulation § 1.468B-1...............................................................................................5

Class Representatives John V. Ferris, JoAnn M. Ferris, and Jeffrey Larsen ("Plaintiffs"), individually and on behalf of all members of the certified Class, submit this memorandum of points and authorities in support of their Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement. Plaintiffs also request that the Court approve the plan to notify Class Members about the proposed settlement and schedule a hearing ("Settlement Hearing") to consider the fairness and adequacy of the Settlement and any requests for attorneys' fees, reimbursement of Litigation Expenses, and compensatory awards to Plaintiffs.[1]

## I.    PRELIMINARY STATEMENT

After over six years of vigorous litigation, Plaintiffs and Defendants Wynn Resorts Limited ("Wynn Resorts" or the "Company"), Stephen Wynn, Kimmarie Sinatra, Matthew Maddox, and Stephen Cootey (collectively, "Defendants") (together with Plaintiffs, the "Parties") have reached an agreement to settle this Action, in its entirety, for a cash payment of seventy million dollars ($70,000,000) (the "Settlement"). This Settlement was reached at an advanced stage in the litigation. The Parties extensively briefed motions to dismiss, a motion for class certification, and a motion for partial summary judgment, as well as various discovery motions. Defendants produced thousands of documents, and the Parties exchanged written discovery. Plaintiffs also obtained documents from Nevada and Massachusetts gaming regulators who conducted thorough investigations of the alleged underlying misconduct giving rise to Plaintiffs securities laws claims, as well as documents from third-party analysts who tracked and evaluated Wynn Resorts securities. The Parties also participated in two in-person mediation sessions before a private mediator, before which they exchanged briefs detailing their respective positions on the strengths and weakness of the claims and defenses in this Action. Thus, the Settlement was reached with all Parties well informed and well positioned to evaluate the risks and advantages of Settlement as compared to continuing litigation.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation of Settlement (the "Stipulation") filed herewith. All citations and internal quotation marks are omitted and all emphasis is added unless otherwise indicated.

While Plaintiffs are confident in the merits of their claims, the Settlement provides certain, immediate recovery. In contrast, continuing litigation would have inherent risks, including the risk of a diminished recovery or no recovery at all. Plaintiffs faced a specific threat to their potential recoverable damages with Defendants arguing that partial summary judgment should be granted in their favor with respect to the second set of corrective disclosures from February 12, 2018. The Court deferred ruling on the merits of this argument, instead granting Plaintiffs the additional discovery they requested pursuant to Fed. R. Civ. P. 56(d). However, Defendants would have another opportunity to raise these arguments, and, if successful, Defendants would eliminate a portion of the Class Period and reduce Plaintiffs' maximum potential recoverable damages by hundreds of millions of dollars. This Settlement resolves any uncertainty and provides a substantial, concrete recovery to the Class. Class Members who properly submit valid Proof of Claim forms will each receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation.

Thus, as discussed more fully below, this Settlement easily satisfies the standards under Rule 23(e) and is fair, reasonable, and an adequate resolution for the Class, which balances the substantial risks, costs, and uncertainty of continued ligation with the objective of achieving the highest possible recovery for the Class. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the Settlement.

## II. BACKGROUND

### A. Procedural History of the Action

This is a securities class action brought against Defendants, as well as the now-dismissed Former Defendants, asserting violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as well as Securities and Exchange Commission Rule 10b-5 on behalf of a certified Class consisting of all individuals and entities that purchased or otherwise acquired Wynn Resorts Securities between March 28, 2016 and February 12, 2018, inclusive (the "Class Period"), and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of

the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class are the persons and entities who request exclusion from the Class in connection with the mailing of the Class Notice.

The operative complaint (ECF No. 122) alleged that Defendants knew about or recklessly disregarded allegations of sexual misconduct against Defendant Stephen Wynn and concealed them, and in concealing such allegations of sexual misconduct, Defendants made material misrepresentations or omitted material facts during the Class Period. Defendants and the Former Defendants moved to dismiss the Complaint, and the Court dismissed Plaintiffs' claims against the Former Defendants and certain of the alleged misrepresentations or omissions against Defendants. The Court sustained Plaintiffs' claims against Defendants related to: (a) the Company's and Mr. Wynn's March 28, 2016 press release responding to Elaine Wynn's Answer and Crossclaim filed March 28, 2016 in the *Okada* litigation; (b) the Company's April 5, 2016 statement in response to Elaine Wynn's April 4, 2016 news release; and (c) the Company's and Mr. Wynn's responses to the January 26, 2018 *Wall Street Journal* Article ("WSJ Article"). ECF No. 171. The Court also sustained corrective disclosures from January 26, 2018 (the WSJ Article) and February 12, 2018 (the news that (a) two women had filed reports with the Las Vegas Metropolitan Police Department alleging that Mr. Wynn had sexually assaulted them in the 1970s, and (b) the Nevada Gaming Control Board opened an "online portal" for people to submit voluntary, confidential statements regarding any publicly announced investigation, including the investigation into allegations of sexual misconduct against Mr. Wynn). ECF No. 171; *see also* ECF No. 283. The Court then bifurcated discovery, with the first phase focused on class certification issues. ECF No. 198. Following the completion of class-related discovery, Plaintiffs moved for class certification, and the Court certified the Class. ECF No. 283. Thereafter, merits discovery began. Defendants filed a petition with Ninth Circuit seeking interlocutory review of the

class certification order, which was denied. *Ferris v. Wynn Resorts Ltd.*, No. 23-80023, 2023 U.S. App. LEXIS 9656 (9th Cir. Apr. 21, 2023).

The scope of discovery was hotly contested, with the Parties unable to reach agreement on the appropriate relevant period, search terms, and custodians, which culminated in Plaintiffs filing a motion to compel and certain Defendants filing a motion for a protective order. ECF Nos. 327, 329. In response to Plaintiffs' subpoenas, the Nevada Gaming Control Board produced documents related to their investigation of the Company following the publication of the WSJ Article, and the Massachusetts Gaming Commission produced documents related to their similar investigation, which included, *inter alia*, materials they received from the Company during the investigation, as well as transcripts of interviews and hearings conducted during the investigation. Plaintiffs also subpoenaed several third-party analysts and received, cumulatively, over a thousand documents from Deutsche Bank Securities Inc., S&P Global Inc., Barclays Capital Inc., BofA Securities, Inc., UBS Securities LLC, Jeffries LLC, J.P. Morgan Securities LLC, and Roth Capital Partners, LLC, which included, *inter alia*, analyst reports from February 1, 2016 through June 1, 2018 and communications with the Company. Meanwhile, Defendants produced documents consistent with their narrower interpretation of the scope of discovery (*i.e.*, for a shorter time period, for fewer custodians, and with more limiting search terms than Plaintiffs proposed). Defendants also filed a partial summary judgment motion seeking to knock out Plaintiffs' claims related to the February 12, 2018 corrective disclosures. The Magistrate Judge ultimately granted the bulk of Plaintiffs' motion to compel, and the District Court judge denied the motion for partial summary judgment without prejudice, granting Plaintiffs relief under Fed. R. Civ. P. 56(d). ECF Nos. 373, 375.

Plaintiffs sought clarification of the Magistrate Judge's discovery order based on disagreements with Defendants concerning the interpretation of the order (ECF No. 382), which the Court provided (ECF No. 400). Defendants filed objections to the Magistrate Judge's discovery order (ECF No. 379), which are still pending. Meanwhile, Plaintiffs filed another discovery motion related to the Company's privilege log. ECF No. 366. At a hearing to discuss the potential

appointment of a special master for the purposes of the privilege log motion, the Court denied Plaintiffs' motion to compel without prejudice and ordered Defendants to submit a revised privilege log. ECF No. 377. The Court appointed, and Defendants and Plaintiffs evenly split the costs of retaining, the Honorable Jay Young (ret.) for the purposes of resolving discovery disputes between the Parties related to the Company's privilege log. ECF No. 390. However, the Parties reached the Settlement before Plaintiffs had filed their renewed motion to compel related to the revised privilege log.

**B.    The Settlement and Proposed Settlement Administration**

This Settlement was reached after a second in-person mediation session before Gregory P. Lindstrom in August 2024. The first mediation session took place in September 2023 and was unsuccessful. In the time between those two mediation sessions, the Parties remained in contact with the mediator via email and telephone and kept open the possibility of continuing settlement negotiations. Ultimately, the second mediation session resulted in the parties reaching a settlement in principle, the essential terms and conditions of which they memorialized in a binding and enforceable Short Form Agreement and then the Stipulation.

The Settlement requires Defendants to pay $70,000,000 into an Escrow Account for the benefit of Class Members. That amount, plus any and all interest earned thereon, constitutes the Settlement Fund. Notice to Class Members and the cost of administering the Settlement ("Notice and Administration Costs") will be funded by the Settlement Fund. Stipulation, ¶ 10. Once Notice and Administration Costs (except for payment of the CAFA notice, which Defendants are obligated to pay pursuant to Stipulation, ¶ 41), taxes,[2] attorneys' fees and Litigation Expenses awarded by the Court, and any awards to Plaintiffs approved by the Court have been paid from the Settlement Fund, the remaining amount (the "Net Settlement Fund"), will be distributed pursuant

---

[2] Because the Settlement Fund is a "qualified settlement fund" under Treasury Regulation § 1.468B-1, the income earned on the Settlement Fund is taxable. All taxes and tax-related expenses will be paid out of the Settlement Fund.

to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.

Within sixteen (16) calendar days of Preliminary Approval, the Claims Administrator will use the shareholder records gathered for Class Notice and either (a) email the Settlement Notice and Proof of Claim form, substantially in the form set forth in Exhibits A-1 and A-2 to the Stipulation, to those Class Members for whom an email address is available, or (b) mail the Settlement Notice and Proof of Claim Form by first-class mail, postage prepaid, to Class Members. The Claims Administrator will also provide Settlement Notices and Proof of Claim Forms to nominees to mail to beneficial owners or mail them directly to those beneficial owners who the nominees previously identified. The Claims Administrator will also seek to provide notice to any additional potential Class Members by sending the Notice to a broad list of nominees to identify any additional beneficial holders who were not on the notice list generated in connection with Class Notice, and will publish the Summary Settlement Notice, substantially in the form set forth in Exhibit A-3 to the Stipulation, on a national U.S. wire service, such as GlobeNewswire or PR Newswire.

The Class has already been notified of the pendency of this Action, and Class Members have had an opportunity to exclude themselves from the Class. ECF No. 311. Thus, as discussed *infra* Section III.B.3.c., the parties submit that a second opportunity for exclusion should not be provided. *See* Stipulation, ¶ 1(f). The Court approved Plaintiffs' selection of JND Legal Administration ("JND")[3] as the Notice Administrator. ECF No. 311, ¶ 3 As of April 1, 2024, JND had mailed a total of 244,626 Class Notices to potential Class Members and nominees. ECF No. 364, ¶ 2. JND received only fifteen requests for exclusion, one of which appears to be invalid because it states that the individual did not purchase, acquire, or sell any Wynn Resorts securities. *Id.* ¶ 5; ECF No. 364-1. Lead Counsel proposes using JND as the Claims Administrator as well. JND is well known and experienced in the administration of securities fraud class action

---

[3] Lead Counsel selected JND to administer the Class Notice after a competitive bidding process.

settlements and because JND administered the Class Notice, JND already has an established database of potential Class Members, as well as an established website, email address, mailing address, and telephone number for this Action.

The Settlement Notice will direct Class Members to the website maintained by the Claims Administrator, www.WynnSecuritiesLitigation.com, where each Class Member will be able to find the Stipulation and its exhibits, the Preliminary Approval Order, the Settlement Notice and Proof of Claim Form, and directions on how to complete and submit the Proof of Claim form. The Settlement Notice will also describe the terms of the Settlement and the attorneys' fees award, Litigation Expenses reimbursement, and compensatory awards to Plaintiffs that Plaintiffs may seek, and will provide the date of the Settlement Hearing, as well as the procedures for objecting to the foregoing matters.

No later than thirty-five (35) calendar days before the Settlement Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorneys' fees, Litigation Expenses, and awards to Plaintiffs. Those papers will explain why the Settlement should be approved and will describe Lead Counsel's efforts on behalf of the Class (including the time and rates of each employee of Plaintiffs' counsel who contributed to the outcome). No later than seven (7) calendar days before the Settlement Hearing, Lead Counsel will submit reply papers in further support of the motion for final approval of the Settlement, Plan of Allocation, request for an award of attorneys' fees and Litigation Expenses, and awards to Plaintiffs.

Any Class Member who objects to the Settlement or related matters must do so no later than twenty-one (21) calendar days before the Settlement Hearing and must send copies of such objections to the Court as well as designated counsel for Plaintiffs and the Class and Defendants. These provisions and timeline are standard in securities class action settlements.

1

2

### III.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

#### A.    The Ninth Circuit Strongly Favors Settlement

The Ninth Circuit has "repeatedly noted that there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same); *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . ."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("there is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits"); *Evans v. Wal-Mart Store, Inc.*, 2020 WL 886932, at *1 (D. Nev. Feb. 24, 2020) ("There is a strong judicial preference for pre-trial settlement of complex class actions as settlement of class actions is favored as a matter of strong judicial policy.").

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement of claims brought on a class-wide basis. A class action settlement should be approved if the Court finds it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Obtaining approval is a three-step process: (1) the court must provide "preliminary approval of the proposed settlement," (2) notice of the settlement must be provided to all affected class members, then (3) the Court holds a "final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented." *Dent v. ITC Serv. Grp., Inc.*, 2013 WL 5437331, at *5 (D. Nev. Sept. 27, 2013).

At this stage, Plaintiffs only seek preliminary approval of the Settlement. Preliminary approval should be granted where "the parties[] show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) considers whether:

(A)    The class representatives and class counsel have adequately represented the class;

(B)    The proposal was negotiated at arm's length;

(C)    The relief provided for the class is adequate, taking into account:

    i.    The costs, risks, and delay of trial and appeal;

    ii.    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.    The terms of any proposed award of attorney's fees, including timing of payment; and

    iv.    Any agreement required to be identified under Rule 23(e)(3); and

(D)    The proposal treats class members equitably relative to each other.

These factors are not exclusive, nor are they intended to displace any factors previously adopted by the Courts. Fed. R. Civ. P. 23(e)(2) advisory committee's notes to 2018 amendments, 324 F.R.D. 904, 918. Thus, the eight factors that the Ninth Circuit has traditionally considered (the "*Hanlon* factors"), many of which overlap with Rule 23(e)(2), are still relevant:

> [(1)] The strength of the plaintiffs' case; [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of maintaining class action status throughout the trial; [(4)] the amount offered in settlement; [(5)] the extent of discovery completed and the stage of the proceedings; [(6)] the experience and views of counsel; [(7)] the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*See Briseño*, 998 F.3d at 1023 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). As set forth below, the proposed Settlement satisfies both the Rule 23(e)(2) factors and the *Hanlon* factors.[4]

**B.    The Proposed Settlement is Fair, Adequate, and Reasonable**

**1.    Plaintiffs and Lead Counsel Adequately Represented the Class**

Rule 23(e)(2)(A) requires the Court to consider whether Plaintiffs and Lead Counsel have adequately represented the Class, which requires a finding that Plaintiffs "[do] not have a conflict

---

[4] *Hanlon* factor 7 is inapplicable, as there is no government participant, and factor 8 will be addressed at the final approval stage after the Class Members have been given notice of the Settlement and have had an opportunity to be heard.

of interest" with the Class and Plaintiffs are "represented by qualified and competent [lead] counsel." *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *5 (C.D. Cal. July 19, 2024). This overlaps with the sixth *Hanlon* factor, which considers the experience and views of counsel. "The recommendation of experienced counsel in favor of settlement carries a 'great deal of weight' in a court's determination of the reasonableness of a settlement." *Riker v. Gibbons*, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010); *see also In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *9 (C.D. Cal. Apr. 23, 2024) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement. This makes sense, as counsel is most closely acquainted with the facts of the underlying litigation.").

Here, the Court already determined at the Class certification stage that Plaintiffs "do not have conflicts with the class, and their participation in this case for several years shows they and their counsel will vigorously prosecute the case." ECF No. 283 at 9. Further, the Court recognized that Lead Counsel "is experienced in handling securities class actions and is familiar with applicable law, as shown by both their prior experience and their filings in this case." *Id.* at 26-27. Indeed, Plaintiffs' Counsel have a long and successful track record of representing investors in such cases in federal and state courts nationwide. *See* ECF Nos. 30-1; 31-4. Accordingly, this factor weighs in favor of preliminary approval.

### 2. The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires the Court to consider whether the Settlement was negotiated at arm's length. The fifth *Hanlon* factor (the extent of discovery completed and the stage of the proceedings) is relevant to this analysis. *See Perks v. Activehours, Inc.*, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021) (stating the factor of whether the settlement was negotiated at arm's length overlaps with the *Hanlon* factor requiring the Court to consider the extent of the discovery completed and the stage of the proceedings).

Here, the parties reached a Settlement following multiple in-person mediation sessions with an experienced mediator, before which the parties exchanged briefs summarizing their

respective positions on the strengths and weaknesses of the claims and defenses in this Action. The involvement of the mediator supports that the settlement negotiations were at arm's length. *See Brightk Consulting Inc. v. BMW of N. Am., LLC*, 2023 WL 2347446, at *6 (C.D. Cal. Jan. 3, 2023) (finding involvement of an experienced mediator "increases the likelihood that the settlement was negotiated at arm's length").

Moreover, the advanced stage of the proceedings supports that the negotiations were at arm's length. As detailed above, before reaching the Settlement, the parties extensively briefed motions to dismiss, a motion for class certification, a Rule 23(f) petition seeking to appeal the class certification order,[5] and a motion for partial summary judgment, as well as various discovery motions. Further, Plaintiffs received thousands of documents from Defendants during discovery, as well as documents from gaming regulators who investigated the Company and third-party analysts who tracked and evaluated Wynn Resorts securities. In addition, the parties exchanged written discovery. Thus, the Parties were well positioned to evaluate the strengths and weaknesses of their respective claims and defenses and, with the assistance of the mediator, opted to resolve this Action for an amount that factors in both the risks of continued litigation and the objective of maximizing the recovery for the Class. *See Daniels v. Aria Resort & Casino, LLC*, 2023 WL 2634613, at *3 (D. Nev. Mar. 23, 2023) (finding "based upon the extent of discovery completed and the current stage of the proceedings," the parties "had a good grasp on the merits of their case before settlement talks," weighing in favor of granting preliminary approval); *Tyus v. Wendy's of Las Vegas*, 2021 WL 2169928, at *5 (D. Nev. May 27, 2021) (similar). Accordingly, this factor weighs in favor of granting preliminary approval.

---

[5] While the Class has been certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008). Indeed, Defendants sought to eliminate a portion of the Class in their partial summary judgment motion. Thus, the third *Hanlon* factor (the risks of maintaining class action status through the trial) supports preliminary approval or is neutral.

### 3.    The Relief Provided for the Class is More than Adequate

#### a.    The Settlement Amount is Within the Range of Reasonableness

The fourth *Hanlon* factor requires the Court to consider the amount offered in the settlement. Here, the $70,000,000 settlement is more than adequate in light of the risks of continuing litigation and the best possible recovery for the Class. The potential recoverable damages were highly contested throughout the litigation, and if Defendants were to prevail in their attempt to eliminate the claims related to the February 12, 2018 corrective disclosures, damages could have been reduced significantly, to approximately $158 million. The $70 million settlement represents 44% of these damages. Even assuming Defendants were unsuccessful (*i.e.*, Plaintiffs recovered the maximum amount of damages), the settlement would still fall within the range of reasonableness. Plaintiffs' damages expert estimates that if Plaintiffs *fully prevailed* and the Court accepted Plaintiffs' damages theory, the total *maximum* damages would be approximately $926.7 million. Thus, the $70 million settlement amount represents approximately 7.6% of the total *maximum* damages potentially available, which is above the average recovery in securities class actions of a similar size. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis*, at 6 (Cornerstone Research 2024), available at https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf (reporting the median settlement, as a percentage of estimated damages recovery, was 4.6% for the year 2023 and 3.3% for the years 2014-2022 in securities class actions asserting Section 10(b) claims with estimated shareholder losses ranging between $500 and $999 million).[6] Accordingly, this factor weighs in favor of preliminary approval.

---

[6] The report recognizes that "[l]arger cases . . . typically settle for a smaller percentage of damages." *Id.*

**b.      The Costs, Risks, and Delay of Trial and Appeal[7]**

Rule 23(e)(2)(C)(i) requires the Court to consider the adequacy of the Settlement in light of the "costs, risks, and delay of trial and appeal." "[C]ourts consistently acknowledge that securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020). As detailed above, this case was commenced in 2018, the Parties spent more than six years zealously litigating it, and the issues remained hotly contested. Shortly before the Settlement was reached, Plaintiffs filed a motion challenging the Company's privilege designations, and the Court had appointed a special master to adjudicate any disputes related to the Company's privilege log. Further, Defendants had filed objections to the Magistrate Judge's discovery order compelling them to produce additional discovery from a broader period and for additional custodians, which were still pending. Defendants would have then had another opportunity to raise their partial summary judgment arguments, which could have potentially eliminated a portion of the Class Period and substantially reduced the maximum possible recovery to the Class (*i.e.*, from $926.7 million to $158 million). The parties also had not yet begun expert discovery, which would have required the exchange of expert reports and depositions of the experts, and potentially culminated in *Daubert* motions seeking to exclude the opinions of some or all experts. The deadline for filing such motions was July 2025. ECF No. 388 ¶ 9.

Thus, while Plaintiffs and Lead Counsel are confident in the merits of Plaintiffs' claims, success was not guaranteed, and the road to success remained long and arduous. Proving that Defendants acted with scienter "is complex and difficult to establish at trial." *Hessefort v. Super Micro Comput., Inc.*, 2023 WL 7185778, at *4 (N.D. Cal. May 5, 2023). Further, proving loss causation would have required the parties to present competing damages expert witnesses, and "in a battle of experts, the outcome cannot be guaranteed." *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016). Even if Plaintiffs prevailed, Defendants would likely

---

[7] This factor overlaps with the following *Hanlon* factors: the strength of Plaintiffs' case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor); and the risks of maintaining class action status through the trial (third factor).

have appealed to the Ninth Circuit, which could span several years, and potentially include an *en banc* review from the Ninth Circuit and/or a writ of certiorari to the Supreme Court. During the appeals process, the Class would not receive any distributions, and they faced the risk that any award in their favor would be reversed. Thus, the Settlement provides the Class with certain, immediate recovery while avoiding these risks, and Plaintiffs and Lead Counsel believe it is in the best interest of the Class. Accordingly, this factor weighs in favor of preliminary approval.

### c. The Other Factors Established by Rule 23(e)(2)(C) Support Preliminary Approval

Under Rule 23(e)(2)(C), the Court also considers (1) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (2) the terms of any proposed award of attorney's fees, including timing of payment; and (3) any agreement required to be identified under Rule 23(e)(3). For the reasons that follow, each of these factors weigh in favor of preliminary approval.

First, the method for processing Class Members' claims includes well established and effective procedures that are used in virtually all securities class actions. Subject to Court approval, Plaintiffs have selected JND as the Claims Administrator, who the Court already approved for the purposes or providing Class Notice to Class Members. Under the guidance of Lead Counsel, JND will process claims, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. This claims processing method is standard in securities class action settlements and has long been found to be effective and reasonable.

Second, as disclosed in the Settlement Notice, Lead Counsel will apply for a percentage of the common fund for attorneys' fees in an amount not to exceed 33 ⅓ % to compensate counsel for their services rendered on behalf of the Class. The proposed fee amount is reasonable in light of the work performed and the results obtained, and Courts routinely approve similar fee requests in securities fraud class actions. *See In re Galena Biopharma, Inc. Sec. Litig.*, 2016 WL 3457165,

at *11 (D. Or. June 14, 2016) (awarding roughly 32.27% attorney fee for a settlement with a total estimated monetized benefit of $27,888,667); *Landmen Partners Inc. v. Blackstone Grp., L.P.*, No. 1:08-cv-03601, ECF No. 171 ¶ 1.20, ECF No. 191 ¶ 14 (S.D.N.Y. 2013) (33.33% of $85 million); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515–16 & n.354 (S.D.N.Y. 2009) (33.33% of $510 million); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-35 (E.D. Pa. 2001) (approving attorneys' fee of 33% of $48 million settlement of securities class action). Nevertheless, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation, ¶¶ 18-19.

Third, Plaintiffs have identified all agreements they have entered into with Defendants in connection with Settlement. In addition to the Stipulation, the Parties entered into a confidential Supplemental Agreement regarding exclusion. *See* Stipulation ¶ 40. However, the Parties agree that no second opportunity for exclusion from the Class should be permitted (Stipulation, ¶ 3), as Class Notice was already provided to potential Class Members and the Class Members were given a full and fair opportunity to exclude themselves. "There is no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out." *See Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018); *see also Officers for Just.*, 688 F.2d at 635 ("[T]o hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement process so favored in the law."); *In re HIV Antitrust Litig.*, 2023 WL 11897610, at *2 (N.D. Cal. Sept. 25, 2023) (finding a second opportunity to opt out was not necessary); *Musgrove v. Jackson Nurse Pros., LLC*, 2022 WL 2092656, at *7 n.8 (C.D. Cal. Jan. 11, 2022) ("[A]n additional opportunity to request exclusion is not warranted here."); *Alexander v. Fedex Ground Package Sys., Inc.*, 2016 WL 1427358, at *6 (N.D. Cal. Apr. 12, 2016) (finding "courts are not required to give a second opt-out opportunity after class certification" and the objector failed to explain why a second opt-out opportunity was warranted).

1
2
3
4
5

The Supplemental Agreement, which would only be applicable if the Court requires a second opportunity for Class Members to opt out of the Class, provides Defendants with the option to terminate the Stipulation if the requests for exclusion from the Class exceed certain agreed-upon criteria. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Stable Road*, 2024 WL 3643393, at *7.[8]

6

### 4.    The Settlement Treats Class Members Equitably

7
8
9
10
11
12
13
14
15
16

Rule 23(e)(2)(D) requires the Court to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, and Plaintiffs and the other Class Members will all receive their payment pursuant to the same formula. Accordingly, this factor weighs in favor of preliminary approval. *See In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *7–8 (S.D. Cal. Oct. 14, 2022) (finding *pro rata* distribution of settlement constituted equitable treatment of class members); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019) (*pro rata* distribution method of distributing relief "is standard in securities and class actions and is effective").

17

## IV.    THE PROPOSED PLAN OF NOTICE SHOULD BE APPROVED

18
19
20
21
22

Rule 23(e)(1)(B) provides for any proposed settlement of a class action, "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal." In addition, Rule 23(c)(2)(B) provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

23
24
25
26
27

---

[8] As is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact an individual settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."). In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera* if the Court requests.

28

Here, the proposed Notice satisfies the PSLRA, 15 U.S.C. § 78u-4(A)(7)(A)-(F), Rule 23, and due process by providing detailed information concerning, as well as a cover page summarizing: (1) the rights of Class Members, including the manner in which objections can be lodged; (2) the nature, history, and progress of the litigation; (3) the proposed Settlement, including the aggregate amount as well as an estimate of the average amount of recovery per share; (3) a statement concerning the Parties' disagreement about the amount of damages that would be recoverable if the Plaintiffs were to prevail; (5) how to file a Claim Form; (6) a description of the Plan of Allocation; (7) the fees and litigation expenses to be sought by Lead Counsel, including the approximate amount of fees and expenses per share; (8) the identity of Lead Counsel, how to contact Lead Counsel or the Claims Administrator, and how to obtain further information regarding the proposed Settlement; and (9) the reasons for the settlement. *See* Stipulation, Ex. A-1. Plaintiffs request that the Court approve its selection of Claims Administrator, JND Legal Administration, which the Court previously approved for the purposes of providing the Class Notice, to administer the dissemination of notice and analysis of claims received.

The proposed Preliminary Approval Order, Ex. A to the Stipulation, mandates that Lead Counsel provide Class Members with notice of the Settlement by emailing or mailing, first-class mail, postage prepaid, the Settlement Notice and Proof of Claim Form to Class Members who can be identified with reasonable effort. Stipulation, Ex. A ¶ 8. The Claims Administrator will use the notice database established in connection with Class Notice to ensure that all recipients identified at that time receive notice by these means and will also send requests to a broad range of nominees that any additional potential Class Members that may have held shares as beneficial owners be identified. Contemporaneously with this distribution, the Claims Administrator will cause copies of the Settlement Notice, Proof of Claim form, and other key documents to be posted on the litigation website previously established in connection with Class Notice, www.WynnSecuritiesLitigation.com, from which copies of the Settlement Notice and Claim Form

can be downloaded. *Id.* ¶ 11. Additionally, Summary Notice will be disseminated electronically at least once in a national U.S. wire service such as GlobeNewswire or PR Newswire. *Id.* ¶ 12.

The proposed Notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) ("Rule 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."). The proposed form and manner of providing notice to Class Members is the best practicable under the circumstances and satisfies due process, Rule 23, and the PSLRA. *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017) (affirming approval of a similar notice program, which involved, *inter alia*, mailing the settlement notice, posting it over a national newswire service, and establishing and maintaining a settlement-specific website).

## V.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose for the Court's consideration the following schedule of events in connection with the Settlement Hearing, as set forth in the proposed Preliminary Approval Order filed herewith: if the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Settlement Hearing for a date no earlier than 100 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the final Settlement Hearing. The remaining dates will be determined by the date that the Preliminary Approval Order is entered on and the date that the Settlement Hearing is scheduled for.

| Event | Deadline for Compliance |
|---|---|
| Mailing or email of Settlement Notice | Within sixteen (16) calendar days of the entry of the Preliminary Approval Order (the "Notice Date") (Preliminary Approval Order ¶ 8) |

| Event | Deadline for Compliance |
|---|---|
| Publication of Summary Settlement Notice | Within ten (10) calendar days after the Notice Date (Preliminary Approval Order ¶ 12) |
| Deadline for Plaintiffs to file papers in support of the Settlement, the Plan of Allocation, and the application for attorneys' fees and expenses | No later than thirty-five (35) calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶ 22) |
| Filing Deadline for Objections | No later than twenty-one (21) calendar days prior to the Settlement Hearing Date (Preliminary Approval Order ¶ 18) |
| Deadline for Claims to be Filed | Postmarked or submitted electronically no later than seven (7) calendar days after the Settlement Hearing (Preliminary Approval Order ¶ 15(a)) |
| Deadline for Lead Plaintiff to file reply papers in further support of the Settlement, the Plan of Allocation and for application for attorneys' fees and expenses | No later than seven (7) calendar days before the Settlement Hearing (Preliminary Approval Order ¶ 23) |
| Date for Settlement Hearing | To be set by the Court, no earlier than 100 days after Preliminary Approval (Preliminary Approval Order ¶ 3) |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement, the proposed Plan of Allocation, and the proposed Plan of Notice, and set a Settlement Hearing in for a date no earlier than 100 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

Dated: September 16, 2024

**POMERANTZ LLP**

By */s/ Murielle J. Steven Walsh*
Jeremy A. Lieberman (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Emily C. Finestone (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 212-661-8665
Email: jalieberman@pomlaw.com
      mjsteven@pomlaw.com
      efinestone@pomlaw.com

*Lead Counsel for Plaintiffs*

**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer (Nevada Bar #10161)
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
Email: andrew@mlolegal.com

*Liaison Counsel for Plaintiffs*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (*pro hac vice*)
Daniel Tyre-Karp (*pro hac vice*)
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
          dtyrekarp@rosenlegal.com

*Additional Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Murielle J. Steven Walsh*
Murielle J. Steven Walsh