1  ANDREW R. MUEHLBAUER, ESQ.
   Nevada Bar No. 10161
2  **MUEHLBAUER LAW OFFICE, LTD.**
   7915 West Sahara Avenue, Suite 104
3  Las Vegas, Nevada 89117
   Telephone: 702.330.4505
4  Facsimile: 702.825.0141
   Email: andrew@mlolegal.com
5
6  **POMERANTZ LLP**
   Jeremy A. Lieberman (*pro hac vice*)
7  Murielle J. Steven Walsh (*pro hac vice*)
   Emily C. Finestone (*pro hac vice*)
8  600 Third Avenue, 20th Floor
   New York, New York 10016
9  Tel:    (212) 661-1100
   Fax:    (917) 463-1044
10 Email: jalieberman@pomlaw.com
   mjsteven@pomlaw.com
11 efinestone@pomlaw.com

12 *Attorneys for Class Representatives John V. and JoAnn M. Ferris*

   **UNITED STATES DISTRICT COURT**
13              **DISTRICT OF NEVADA**

14

15 | JOHN V. FERRIS and JOANN M. FERRIS, | Case No. 2:18-CV-00479-CDS-BNW |
   | Individually and on Behalf of All Others | |
16 | Similarly Situated, | |
   | | **CLASS REPRESENTATIVES' MOTION** |
17 | Plaintiffs, | **FOR FINAL APPROVAL OF CLASS** |
   | | **ACTION SETTLEMENT AND** |
18 | v. | **MEMORANDUM OF POINTS AND** |
   | | **AUTHORITIES IN SUPPORT** |
19 | WYNN RESORTS LIMITED, et al., | |
   | | |
20 | Defendants. | |

21

22

23

24

25

26

27

28 {00637014;13 }

MOTION FOR FINAL APPROVAL

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     THE SETTLEMENT WARRANTS FINAL APPROVAL.................................... 3

        A.      Plaintiffs and Lead Counsel Adequately Represented the Class ............................ 4

        B.      The Settlement Was Negotiated at Arm's Length at an Advanced Stage in the
                Proceedings .......................................................................................................... 6

        C.      The Relief Provided for the Class is More than Adequate .................................... 7

                1.      The Settlement Amount is Within the Range of Reasonableness.............. 7

                2.      The Costs, Risks, and Delay of Trial and Appeal...................................... 8

                3.      The Proposed Method for Distributing Relief is Effective....................... 11

                4.      The Requested Attorneys' Fees are Reasonable....................................... 11

                5.      The Only Supplemental Agreement Has Not Been Triggered ................. 12

        D.      The Settlement Treats Class Members Equitably ................................................. 13

        E.      The Reaction of Class Members to the Proposed Settlement ............................... 13

III.    THE PLAN OF ALLOCATION SHOULD BE APPROVED ......................................... 14

IV.     THE NOTICE PROGRAM SATISFIED DUE PROCESS AND RULE 23(e) .............. 15

        A.      The Dissemination of the Notice Satisfied Due Process and Rule 23 ................. 15

        B.      The Contents of the Notice Satisfied Due Process and Rule 23 ........................... 16

V.      CONCLUSION.................................................................................................... 17

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Abadilla v. Precigen, Inc.*,
   2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ..........................................................13

5

6

*Andrade-Heymsfield v. NextFoods, Inc.*,
   2024 WL 3871634 (S.D. Cal. Apr. 8, 2024)............................................................14

7

8

*Baker v. SeaWorld Ent., Inc.*,
   2020 WL 4260712 (S.D. Cal. July 24, 2020) ...........................................................8

9

*Baron v. HyreCar Inc.*,
   2024 WL 3504234 (C.D. Cal. July 19, 2024) ...........................................................4

10

*Brightk Consulting Inc. v. BMW of N. Am., LLC*,
   2023 WL 2347446 (C.D. Cal. Jan. 3, 2023) .............................................................7

11

12

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ..........................................................................3, 4

13

14

*Christine Asia Co. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .........................................................13

15

16

*Daniels v. Aria Resort & Casino, LLC*,
   2023 WL 2634613 (D. Nev. Mar. 23, 2023) ............................................................7

17

*Eisen v. Porsche Cars N. Am., Inc.*,
   2014 WL 439006 (C.D. Cal. Jan. 30, 2014) .............................................................7

18

19

*Evans v. Wal-Mart Store, Inc.*,
   2020 WL 886932 (D. Nev. Feb. 24, 2020) ...............................................................3

20

*Glass v. UBS Fin. Servs., Inc.*,
   331 F. App'x 452 (9th Cir. 2009) ............................................................................3

21

22

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................................... *passim*

23

24

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .........................................................12

25

*Hessefort v. Super Micro Comput., Inc.*,
   2023 WL 7185778 (N.D. Cal. May 5, 2023) ..........................................................10

26

27

28

{00637014;13 }

ii

MOTION FOR FINAL APPROVAL

*IBEW Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
   2012 WL 5199742 (D. Nev. Oct. 19, 2012) ................................................................8

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ...........................................................10

*In re BofI Holding, Inc. Sec. Litig.*,
   2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .............................................................13

*In re Celera Corp. Sec. Litig.*,
   2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ............................................................16

*In re Galena Biopharma, Inc. Sec. Litig.*,
   2016 WL 3457165 (D. Or. June 14, 2016) ..................................................................11

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ..........................................................................12

*In re HCV Prison Litig.*,
   2020 WL 6363842 (D. Nev. Oct. 29, 2020) ..................................................................9

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) .........................................................................12

*In re Lidoderm Antitrust Litig.*,
   2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ...........................................................11

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................9

*In re Stable Road Acquisition Corp.*,
   2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ....................................................5, 12, 14

*In re Tesla Inc. Sec. Litig.*,
   2023 WL 4032010 (N.D. Cal. June 14, 2023), *aff'd sub nom. Littleton v. Musk
   (In re Tesla, Inc., Sec. Litig.)*, 2024 WL 4688894 (9th Cir. Nov. 6, 2024) ...........10

*Joh v. Am. Income Life Ins. Co.*,
   2020 WL 109067 (N.D. Cal. Jan. 9, 2020) .................................................................16

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................................6

*Khoja v. Oxigen Therapeutics, Inc.*,
   2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ............................................................14

*Kim v. Allison*,
   8 F.4th 1170 (9th Cir. 2021) ....................................................................................3, 4

*Landmen Partners Inc. v. Blackstone Grp., L.P.*,
    No. 1:08-cv-03601 (S.D.N.Y.) ............................................................................11

*Lundell v. Dell, Inc.*,
    2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ......................................................16

*Luzerne Cnty. Ret. Sys. v. Kacprowski (In re MGM Mirage Sec. Litig.)*,
    708 F. App'x 894 (9th Cir. 2017) ........................................................................16

*Meijer, Inc. v. Abbott Lab'ys*,
    2011 WL 13392313 (N.D. Cal. Aug. 11, 2011) ..................................................11

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................3, 4

*Perez v. Rash Curtis & Assocs.*,
    2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ....................................................11

*Perks v. Activehours, Inc.*,
    2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ......................................................6

*Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*,
    516 F.3d 1095 (9th Cir. 2008) ..............................................................................3

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ......................................................................15

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12303367 (C.D. Cal. July 9, 2013) ................................................9, 14

*Riker v. Gibbons*,
    2010 WL 4366012 (D. Nev. Oct. 28, 2010) ........................................................5

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ............................................................................15

*Tabak v. Apple, Inc.*,
    2024 WL 4642877 (N.D. Cal. Oct. 30, 2024) ....................................................13

*Tyus v. Wendy's of Las Vegas, Inc.*,
    2021 WL 2169928 (D. Nev. May 27, 2021) ........................................................7

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ................................................................................3

**Statutes**

15 U.S.C. § 78u-4(a)(7)(A)-(F) ..................................................................................17

Securities Exchange Act of 1934 ................................................................................................5

**Rules and Regulations**

17 C.F.R. § 240.10b-5 .............................................................................................................5

Fed. R. Civ. P. 23 ........................................................................................................... *passim*

Fed. R. Civ. P. 56(d) ................................................................................................................2

**Other Authorities**

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2023
     Review and Analysis* (Cornerstone Research 2024), available at
     https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-
     Action-Settlements-2023-Review-and-Analysis.pdf ................................................8

Class Representatives John V. Ferris, JoAnn M. Ferris, and Jeffrey Larsen ("Plaintiffs"), individually and on behalf of all members of the certified Class, submit this memorandum of points and authorities in support of their Motion for Final Approval of Class Action Settlement.[1]

## I.    INTRODUCTION

After over six years of hard-fought litigation, Plaintiffs and Defendants Wynn Resorts Limited ("Wynn Resorts" or the "Company"), Stephen Wynn, Kimmarie Sinatra, Matthew Maddox, and Stephen Cootey (collectively, "Defendants") (together with Plaintiffs, the "Parties") reached an agreement to settle this Action, in its entirety, for a cash payment of seventy million dollars ($70,000,000) (the "Settlement").[2] On September 16, 2024, Plaintiffs filed a motion for preliminary approval of the Settlement (ECF No. 422), which the Court granted on October 15, 2024 (ECF No. 432). MSW Decl. ¶ 41. A comprehensive notice plan ensued advising class members of the Settlement. To date, not a single objection has been lodged against the Settlement, which is strong evidence of its reasonableness and fairness. MSW Decl. ¶ 67; MSW Decl. Ex. 4 ¶ 14.

Indeed, the Settlement was reached at an advanced stage in the litigation, after Plaintiffs had surpassed critical milestones in the Action and fully vetted and weighed the risks of continuing this litigation versus the certainty of securing this significant financial recovery for the Class now. Specifically, Plaintiffs had drafted and filed two amended complaints, and the Parties had extensively briefed two motions to dismiss, a motion for class certification, Defendants' Rule 23(f) petition challenging the grant of class certification, and a motion for partial summary judgment, as well as various discovery motions. MSW Decl. ¶ 43. Defendants also produced thousands of documents, and the Parties exchanged written discovery. *Id.* In addition, Plaintiffs obtained

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated September 16, 2024 (the "Stipulation") (ECF No. 422-2) and the Declaration of Murielle J. Steven Walsh in Support of Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Litigation Expenses, and Compensatory Awards to Plaintiffs ("MSW Decl.") filed herewith. All citations and internal quotation marks are omitted, and all emphasis is added unless otherwise indicated.

[2] A detailed recitation of the underlying claims and the procedural history of this Action is set forth in the MSW Decl.

documents from Nevada and Massachusetts gaming regulators who conducted thorough investigations of the alleged underlying misconduct giving rise to Plaintiffs securities laws claims, as well as documents from third-party analysts who tracked and evaluated Wynn Resorts securities. *Id.* The Parties also participated in two in-person mediation sessions before a private mediator, before which they exchanged briefs detailing their respective positions on the strengths and weakness of the claims and defenses in this Action. *Id.* Thus, the Settlement was reached with all Parties well informed and well positioned to evaluate the risks and advantages of Settlement as compared to continuing litigation. *Id.*

While Plaintiffs are confident in the merits of their claims, the Settlement provides a certain, immediate and substantial recovery. MSW Decl. ¶ 44. In contrast, continuing litigation would have inherent risks, including the risk of a diminished recovery or no recovery at all. *Id.* Among other risks, Plaintiffs faced a specific threat to collecting their total potential recoverable damages with Defendants arguing that partial summary judgment should be granted in their favor with respect to the second set of corrective disclosures on February 12, 2018. MSW Decl. ¶ 45. If Defendants' arguments succeeded, the Class Period and recoverable damages would have been significantly limited. *Id.* The Court deferred ruling on the merits of that argument, instead granting Plaintiffs the additional discovery they requested pursuant to Fed. R. Civ. P. 56(d). MSW Decl. ¶ 32. However, Defendants would have another opportunity to raise these arguments after the close of discovery, and, if successful, Defendants would eliminate that portion of the Class Period and reduce Plaintiffs' maximum potential recoverable damages by hundreds of millions of dollars. This Settlement resolves any uncertainty and provides a substantial, concrete recovery to the Class. MSW Decl. ¶ 45.

Thus, as discussed more fully below, this Settlement easily satisfies the standards under Rule 23(e) and is fair, reasonable, and an excellent resolution for the Class. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement, including the Plan of Allocation.

## II.     THE SETTLEMENT WARRANTS FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement of claims brought on a class-wide basis. Whether to grant such approval lies within the district court's discretion. *See Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 455 (9th Cir. 2009) ("The district court's decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof."). This discretion should be guided by the Ninth Circuit's repeated recognition that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021); *Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same); *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . ."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("there is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits"); *See also Evans v. Wal-Mart Store, Inc.*, 2020 WL 886932, at *1 (D. Nev. Feb. 24, 2020) ("There is a strong judicial preference for pre-trial settlement of complex class actions as settlement of class actions is favored as a matter of strong judicial policy.").

The Court may approve a class action settlement under Fed. R. Civ. P. 23(e)(2) when the settlement is "fair, reasonable, and adequate." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). In making this determination, Rule 23(e)(2) provides that the Court consider whether:

    (A)    The class representatives and class counsel have adequately represented the class;

    (B)    The proposal was negotiated at arm's length;

    (C)    The relief provided for the class is adequate, taking into account:

        i.    The costs, risks, and delay of trial and appeal;

        ii.    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

iii.     The terms of any proposed award of attorney's fees, including timing of payment; and

iv.     Any agreement required to be identified under Rule 23(e)(3); and

(D)     The proposal treats class members equitably relative to each other.

These factors are not exclusive, nor are they intended to displace any factors previously adopted by the Courts. Fed. R. Civ. P. 23(e)(2) advisory committee's notes to 2018 amendments; *see also Kim*, 8 F.4th at 1178 (the Court must "scrutinize[e] the settlement's fairness in light of well-established factors"). Thus, the eight factors that the Ninth Circuit has traditionally considered (the "*Hanlon* factors"), many of which overlap with Rule 23(e)(2), are still relevant:

> [(1)] The strength of the plaintiffs' case; [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of maintaining class action status throughout the trial; [(4)] the amount offered in settlement; [(5)] the extent of discovery completed and the stage of the proceedings; [(6)] the experience and views of counsel; [(7)] the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*See Briseño*, 998 F.3d at 1023 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In applying the pertinent factors, the Court should not prejudge the merits of the case. *See Officers for Just.*, 688 F.2d at 625 ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. . . . [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). All of these factors, to the extent they apply, favor final approval.[3]

## A.     Plaintiffs and Lead Counsel Adequately Represented the Class

Under Rule 23(e)(2)(A), the Court considers whether Plaintiffs and Lead Counsel have adequately represented the Class, which requires a finding that Plaintiffs "[do] not have a conflict of interest" with the Class and Plaintiffs are "represented by qualified and competent [lead] counsel." *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *5 (C.D. Cal. July 19, 2024). This overlaps with the sixth *Hanlon* factor, which considers the experience and views of counsel. "The

---

[3] The seventh *Hanlon* factor is inapplicable, as there is no government participant.

4
MOTION FOR FINAL APPROVAL

recommendation of experienced counsel in favor of settlement carries a 'great deal of weight' in a court's determination of the reasonableness of a settlement." *Riker v. Gibbons*, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010). "This makes sense, as counsel is most closely acquainted with the facts of the underlying litigation." *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *9 (C.D. Cal. Apr. 23, 2024).

Here, the Court already determined at the Class certification stage that Plaintiffs "do not have conflicts with the class, and their participation in this case for several years shows they and their counsel will vigorously prosecute the case." ECF No. 283 at 9. Further, the Court recognized that Lead Counsel "is experienced in handling securities class actions and is familiar with applicable law, as shown by both their prior experience and their filings in this case." *Id.* at 26-27. Indeed, Plaintiffs' Counsel have a long and successful track record of representing investors in such cases in federal and state courts nationwide. *See* Ex. A to Exs. 1, 2, & 3. of the MSW Decl.

Further, Lead Counsel's vigorous prosecution of this action further demonstrates that they have adequately represented the Class. Among other things, Lead Counsel: (i) conducted an extensive investigation into potential violations of the securities laws at issue, including a thorough review of public documents related to the regulatory investigation into the Company and its qualifiers, the Company's filings with the U.S. Securities and Exchange Commission ("SEC"), analyst reports, press releases, and other publicly available information; (ii) drafted a detailed second amended class action complaint asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder; (iii) briefed and successfully defeated in large part of Defendants' motion to dismiss the second amended class action complaint; (iv) engaged in extensive fact discovery, including obtaining and reviewing thousands of documents, exchanging written discovery, and briefing multiple discovery motions with the Court; (v) consulted and retained experts on issues related to damages and loss causation; (vi) briefed and successfully moved for class certification; (viii) briefed and defeated Defendants' Rule 23(f) petition seeking to appeal the class certification order; (ix) opposed Defendants' partial summary judgment motion; (x) participated in multiple formal mediation sessions, (xi) negotiated

the Settlement, and (xii) have been diligently complying with the Notice plan and Settlement procedures. MSW Decl. ¶¶ 4, 11-42, 51-60.

At each of these stages, Plaintiffs diligently supervised and provided meaningful direction and assistance to Lead Counsel. Plaintiffs' efforts included, *inter alia*, communicating regularly with Plaintiffs' Counsel about case developments and strategy, reviewing and commenting on court filings and other material documents, responding to Defendants' discovery requests, including by searching for and producing responsive documents, preparing for and providing testimony at depositions, and authorizing Lead Counsel to settle this Action in the range that they did. MSW Decl. Exs. 7-8 ¶¶ 3-6; MSW Decl. Ex. 9 ¶¶ 3-4. Accordingly, this factor weighs in favor of final approval.

### B. The Settlement Was Negotiated at Arm's Length at an Advanced Stage in the Proceedings

Rule 23(e)(2)(B) requires the Court to consider whether the Settlement was negotiated at arm's length. The fifth *Hanlon* factor (the extent of discovery completed and the stage of the proceedings) is relevant to this analysis. *See Perks v. Activehours, Inc.*, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021) (stating the factor of whether the settlement was negotiated at arm's length overlaps with the *Hanlon* factor requiring the Court to consider the extent of the discovery completed and the stage of the proceedings).

Here, the Settlement has none of the indicia of collusion. *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011) ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund"). The parties reached the Settlement following multiple in-person mediation sessions with an experienced mediator, before which the parties exchanged briefs summarizing their respective positions on the strengths and weaknesses of the claims and defenses in this Action. The involvement of the mediator supports that the settlement negotiations were at

arm's length. *See Brightk Consulting Inc. v. BMW of N. Am., LLC*, 2023 WL 2347446, at *6 (C.D. Cal. Jan. 3, 2023) (finding involvement of an experienced mediator "increases the likelihood that the settlement was negotiated at arm's length").

Moreover, the advanced stage of the proceedings supports that the negotiations were at arm's length. As detailed above, before reaching the Settlement, the parties extensively briefed motions to dismiss, a motion for class certification, a Rule 23(f) petition seeking to appeal the class certification order, and a motion for partial summary judgment, as well as various discovery motions. Further, Plaintiffs received thousands of documents from Defendants during discovery, as well as documents from gaming regulators who investigated the Company and third-party analysts who tracked and evaluated Wynn Resorts securities. In addition, the parties exchanged written discovery. Thus, the Parties were well positioned to evaluate the strengths and weaknesses of their respective claims and defenses and, with the assistance of the mediator, opted to resolve this Action for an amount that factors in both the risks of continued litigation and the objective of maximizing the recovery for the Class. *See Daniels v. Aria Resort & Casino, LLC*, 2023 WL 2634613, at *3 (D. Nev. Mar. 23, 2023) (finding "based upon the extent of discovery completed and the current stage of the proceedings," the parties "had a good grasp on the merits of their case before settlement talks," weighing in favor of approval); *Tyus v. Wendy's of Las Vegas, Inc.*, 2021 WL 2169928, at *5 (D. Nev. May 27, 2021) (similar); *Eisen v. Porsche Cars N. Am., Inc.*, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (counsel having "ample information and opportunity to assess the strengths and weaknesses of their claims and defenses" weighed in favor of final approval). Accordingly, this factor weighs in favor of granting final approval.

### C.    The Relief Provided for the Class is More than Adequate

#### 1.    The Settlement Amount is Within the Range of Reasonableness

The fourth *Hanlon* factor requires the Court to consider the amount offered in the settlement. Here, the $70,000,000 settlement is more than adequate in light of the risks of continuing litigation and the best possible recovery for the Class. The potential recoverable damages were highly contested throughout the litigation, and if Defendants were to prevail in their

attempt to eliminate the claims related to the February 12, 2018 corrective disclosures, Plaintiffs' damages expert estimates that damages could have been reduced significantly, to approximately $158 million. MSW Decl. ¶ 45. The $70 million settlement represents 44% of these damages. Even assuming Defendants were unsuccessful (*i.e.*, Plaintiffs recovered the maximum amount of damages), the settlement would still fall within the range of reasonableness. Plaintiffs' damages expert estimates that if Plaintiffs *fully prevailed* and the Court accepted Plaintiffs' damages theory, the total *maximum* damages would be approximately $926.7 million. MSW Decl. ¶ 50. Thus, the $70 million settlement amount represents approximately 7.6% of the total *maximum* damages potentially available, which is above the average recovery in securities class actions of a similar size. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis*, at 6 (Cornerstone Research 2024), available at https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf (reporting the median settlement, as a percentage of estimated damages recovery, was 4.6% for the year 2023 and 3.3% for the years 2014-2022 in securities class actions asserting Section 10(b) claims with estimated shareholder losses ranging between $500 and $999 million);[4] *See also IBEW Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities settlement where recovery was 3.5% of maximum damages and noting "[t]his amount is within the median recovery in securities class actions settled in the last few years"). Accordingly, this factor weighs in favor of final approval.

## 2.    The Costs, Risks, and Delay of Trial and Appeal[5]

Rule 23(e)(2)(C)(i) requires the Court to consider the adequacy of the Settlement in light of the "costs, risks, and delay of trial and appeal." "[C]ourts consistently acknowledge that securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020). "In most situations,

---

[4] The report recognizes that "[l]arger cases . . . typically settle for a smaller percentage of damages." *Id.*

[5] This factor overlaps with the following *Hanlon* factors: the strength of Plaintiffs' case (first factor) and the risk, expense, complexity, and likely duration of further litigation (second factor).

unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re HCV Prison Litig.*, 2020 WL 6363842, at *3 (D. Nev. Oct. 29, 2020).

As detailed above, after this case was commenced in 2018, the Parties spent more than six years and millions of dollars in time and expenses zealously litigating it, and yet critical issues remained hotly contested. At the time the Settlement was reached, Plaintiffs had filed a motion challenging thousands of the Company's privilege designations, and the Court had appointed a special master to adjudicate any disputes related to the Company's privilege log. MSW Decl. ¶¶ 35-36. Plaintiffs faced the risk that Defendants' privilege assertions would be upheld, which would have blocked Plaintiffs' ability to access what they believe to be critical evidence of Defendants' scienter. Further, Defendants had filed objections to the Magistrate Judge's discovery order compelling them to produce additional discovery from a broader period than they had agreed to and for additional custodians, which were still pending. MSW Decl. ¶¶ 34, 36.

Moreover, while Plaintiffs and Lead Counsel are confident in the merits of Plaintiffs' claims, success was not guaranteed. *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at * 6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."). As already detailed, Plaintiffs successfully blocked Defendants' premature summary judgment motion targeting loss causation with respect to the second corrective disclosure of February 12, 2018, but Defendants would have then had another opportunity to raise the same arguments after the close of discovery. MSW Decl. ¶ 32. If Defendants were successful on their second attempt, it would have eliminated a portion of the Class Period and substantially reduced the maximum possible recovery to the Class from $926.7 million to $158 million.[6] MSW

---

[6] While the Class has been certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008). Thus, the third *Hanlon* factor (the risks of maintaining class action status through the trial) supports final approval or is neutral.

Decl. ¶ 45. Even if Plaintiffs prevailed on Defendants' second summary judgment attempt, they still would have the burden of proving loss causation, a time-consuming and expensive task that would have required the Parties to present competing damages expert witnesses, a "battle of experts, [where] the outcome cannot be guaranteed." *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016).

Plaintiffs also had the burden of proving at trial that Defendants made materially false statements and "acted with scienter, which is complex and difficult to establish." *Hessefort v. Super Micro Comput., Inc.*, 2023 WL 7185778, at *4 (N.D. Cal. May 5, 2023). Among other things, Defendants have continued to suggest that the 2016 alleged misstatements are inactionable because Mr. Wynn acknowledged the existence of the 2005 settlement and the Company was not disputing or contradicting its existence. ECF No. 329 at 6 n.6. Defendants have also noted that, after it concluded its investigation, the Massachusetts Gaming Commission stopped short of accusing the Company of having willfully provided false or misleading information to the Commission. ECF No. 128 at 10-11. Although Plaintiffs had strong counter arguments, there was no assurance that the jury would side with Plaintiffs on this point. *See In re Tesla Inc. Sec. Litig.*, 2023 WL 4032010, at *1 (N.D. Cal. June 14, 2023) ("After a three-week trial in January 2023, the jury awarded a verdict for Defendants on all claims."), *aff'd sub nom. Littleton v. Musk (In re Tesla, Inc., Sec. Litig.)*, 2024 WL 4688894 (9th Cir. Nov. 6, 2024).

Even if Plaintiffs prevailed, Defendants would likely have appealed to the Ninth Circuit, which could have delayed proceedings for another several years, and potentially included an *en banc* review from the Ninth Circuit and/or a writ of certiorari to the Supreme Court. During the appeals process, the Class would not receive any distributions and they faced the risk that any award in their favor would be reversed. Thus, the Settlement provides the Class with certain, immediate recovery while avoiding these risks, and Plaintiffs and Lead Counsel believe it is in the best interest of the Class. MSW Decl. ¶ 63. Accordingly, this factor weighs in favor of final approval.

### 3.    The Proposed Method for Distributing Relief is Effective

The Court must "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments. Here, the method for processing Class Members' claims includes well established and effective procedures that are used in virtually all securities class actions. The Settlement proceeds will be allocated to Class Members who submit valid Proof of Claim and Release forms. MSW Decl. ¶ 57. The Court approved JND Legal Administration ("JND"), who the Court previously approved for the purposes of providing Class Notice to Class Members, as the Claims Administrator. ECF No. 432. Under the guidance of Lead Counsel, JND will process claims, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation) after Court approval. MSW Decl. ¶ 57. This claims processing method is standard in securities class action settlements and has long been found to be effective and reasonable.

### 4.    The Requested Attorneys' Fees are Reasonable

Lead Counsel is applying for a percentage of the common fund for attorneys' fees in the amount of 33 ⅓ % to compensate Plaintiffs' Counsel for their services rendered on behalf of the Class. As discussed in detail in the accompanying brief in support of Lead Counsel's motion for attorneys' fees, the proposed fee amount is reasonable in light of the work performed,the results obtained, and the long duration of the litigation to date. Moreover, Courts routinely approve similar fee requests in securities fraud class actions. *See Perez v. Rash Curtis & Assocs.*, 2020 WL 1904533, at *15 (N.D. Cal. Apr. 17, 2020) (awarding 33 ⅓ % of $267,349,000 settlement amount); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (awarding 33 ⅓ % of $104,750,000 settlement amount); *Meijer, Inc. v. Abbott Lab'ys*, 2011 WL 13392313, at *2 (N.D. Cal. Aug. 11, 2011) (awarding 33⅓% of $52,000,000 settlement amount); *In re Galena Biopharma, Inc. Sec. Litig.*, 2016 WL 3457165, at *11 (D. Or. June 14, 2016) (awarding roughly 32.27% attorney fee for a settlement with a total estimated monetized benefit of $27,888,667); *Landmen Partners Inc. v. Blackstone Grp., L.P.*, No. 1:08-cv-03601, ECF No. 171 ¶ 1.20, ECF

No. 191 ¶ 14 (S.D.N.Y. 2013) (33.33% of $85 million); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515–16 & n.354 (S.D.N.Y. 2009) (one-third of $510 million); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-35 (E.D. Pa. 2001) (approving attorneys' fee of one-third of $48 million settlement of securities class action); *See also* MSW Decl. Ex. 5 (collecting Ninth Circuit cases with 33% or higher fee awards in complex, contingent litigation). Nevertheless, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶¶ 18-19.

### 5.    The Only Supplemental Agreement Has Not Been Triggered

Plaintiffs have identified all agreements they have entered into with Defendants in connection with the Settlement. Specifically, in addition to the Stipulation, the Parties entered into a confidential Supplemental Agreement, which provides Defendants with the option to terminate the Stipulation if the requests for exclusion from the Class exceed certain agreed-upon criteria. *See* Stipulation ¶ 40. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Stable Road*, 2024 WL 3643393, at *7.[7]

In connection with the Class Notice, which was disseminated after the class was certified, JND had previously received fifteen (15) requests for exclusion from the Class, some of which appeared to be invalid because the individuals represent they did not purchase, acquire, or sell Company stock. ECF No. 364 ¶ 5; ECF No. 364-1. The remaining requests for exclusion involve individuals who, based on their representations (some of which do not include back-up records), collectively held less than 4,000 shares of common stock in the Company, which is insufficient to trigger the Supplemental Agreement. ECF No. 364-1. In addition, because the Court did not

---

[7] As is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact an individual settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.").

require a second opportunity for Class members to opt out of the Class, no additional opt outs are forthcoming. Thus, the Supplemental Agreement is of no effect.

### D.    The Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) requires the Court to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive their *pro rata* share of the Net Settlement Fund, and Plaintiffs and the other Class Members will all receive their payments pursuant to the same formula. MSW Decl. ¶ 6. Accordingly, this factor weighs in favor of final approval. *See In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *7–8 (S.D. Cal. Oct. 14, 2022) (finding *pro rata* distribution of settlement constituted equitable treatment of class members); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019) (*pro rata* distribution method of distributing relief "is standard in securities and other class actions and is effective").

### E.    The Reaction of Class Members to the Proposed Settlement

The eighth *Hanlon* factor requires the Court to consider the reaction of class members to the proposed settlement. While the deadline for filing objections to the Settlement or Plan of Allocation is not until January 6, 2024, no objections to the Settlement or Plan of Allocation have been received to date. MSW Decl. ¶ 67; MSW Decl. Ex. 4 ¶ 14. Such a favorable reaction to the Settlement supports approval. *See Tabak v. Apple, Inc.*, 2024 WL 4642877, at *6 (N.D. Cal. Oct. 30, 2024) ("The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement . . . are favorable to the class members."); *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *9 (N.D. Cal. Nov. 6, 2023) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.").[8]

---

[8] If Plaintiffs receive any objections, Plaintiffs will address them in their reply papers in further support of final approval.

1

**III.    THE PLAN OF ALLOCATION SHOULD BE APPROVED**

2        Plaintiffs' proposed Plan of Allocation should be approved as fair, reasonable, and

3   adequate. "Approval of a plan of allocation of settlement proceeds in a class action under Rule 23

4   is governed by the same standards of review applicable to approval of settlement as a whole: the

5   plan must be fair, reasonable, and adequate." *Khoja v. Oxigen Therapeutics, Inc.*, 2021 WL

6   5632673, at *7 (S.D. Cal. Nov. 30, 2021). To meet this standard, "[t]he allocation formula used in

7   a plan of allocation need only have a reasonable, rational basis, particularly if recommended by

8   experienced and competent counsel." *Andrade-Heymsfield v. NextFoods, Inc.*, 2024 WL 3871634,

9   at *4 (S.D. Cal. Apr. 8, 2024). "[A] plan of allocation fairly treats class members by awarding a

10  pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based

11  upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the

12  timing of purchases of the securities at issue." *Redwen*, 2013 WL 12303367, at *8; *see also Stable

13  Road*, 2024 WL 3643393, at *10 (approving a plan of allocation that calculated a "Recognized

14  Loss Amount" based on when the securities were sold, the type of securities purchased or sold, the

15  purchase and sale price, and the estimated artificial inflation in the price of the securities at the

16  time of the purchase or sale).

17        Here, Lead Counsel prepared the Plan of Allocation with the assistance of a consulting

18  damages expert. MSW Decl. ¶ 56. The Plan of Allocation was disclosed in the Notice of (I)

19  Proposed Settlement and Plan of Allocation; (II) Settlement Hearing; and (III) Motion for

20  Attorneys' Fees and Litigation Expenses. MSW Decl. Ex. 4, ¶ 3 & Ex. A. Under the Plan of

21  Allocation, the Net Settlement Fund will be distributed among Authorized Claimants on a *pro rata*

22  basis based on "Recognized Loss" formulas tied to liability and damages. MSW Decl. ¶ 57. These

23  formulas consider the amount of alleged artificial inflation in the prices of Wynn Resorts common

24  stock as quantified by Plaintiffs' consulting damages expert. *Id.* Authorized Claimants will be

25  eligible for a payment based on when they purchased, held, or sold their shares of Wynn Resorts

26  common stock. *Id.* Accordingly, the Plan of Allocation is fair, reasonable, and adequate.

27

28  {00637014;13 }

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    THE NOTICE PROGRAM SATISFIED DUE PROCESS AND RULE 23(e)

For any proposed settlement of a class action, "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). In addition, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Rule 23's notice requirement is designed to ensure that class notice procedures comply with the demands of due process." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019). To satisfy due process "notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*

For the reasons discussed below, both the Notice procedure and the contents of the Notice, which the Court approved in its Preliminary Approval Order, satisfied due process and Rule 23.

### A.    The Dissemination of the Notice Satisfied Due Process and Rule 23

"[N]either due process nor Rule 23's standard necessarily require actual notice . . . ." *Roes, 1-2*, 944 F.3d 1035 at 1046 n.7; *see also Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (Rule 23 and the demands of due process do "not necessarily require that every . . . class member actually receive notice"). Instead, Rule 23(c)(2)(B) merely requires that "individual notice" be provided to "all members who can be identified through reasonable effort."

Here, Plaintiffs, through the Claims Administrator, executed the notice program as specified in the Preliminary Approval Order. MSW Decl. ¶ 51 & Ex. 4. On October 31, 2024, JND mailed a copy of the Settlement Notice and Claim Form to all persons and entities identified as potential Class Members in connection with the mailing of the Notice of Pendency of Class Action (the "Class Notice") in November 2023, as well as to all nominees included in JND's database of banks, brokers, and other nominees. MSW Decl. Ex. 4 ¶ 4. JND also posted the Settlement Notice for nominees on the Depository Trust Company Legal Notice System. MSW Decl. Ex. 4 ¶ 6. Finally, JND called top brokers and nominees from the JND broker database and mailed reminder postcards to all the entities in the JND broker database who had not responded to the mailing.

15

MOTION FOR FINAL APPROVAL

MSW Decl. Ex. 4 ¶ 7. On November 6, 2024, the Summary Notice was also published on *PR Newswire*. MSW Decl. Ex. 4, ¶ 11 & Ex. B. On October 30, 2024, the Settlement Notice and the Claim Form, as well as copies of the Stipulation, Order, and other relevant documents, were posted to the Settlement Website, which was previously created for this Action in connection with the Class Notice Mailing. MSW Decl. Ex. 4 ¶ 13.

Courts routinely find these methods for disseminating notice sufficient to satisfy due process concerns. *See Luzerne Cnty. Ret. Sys. v. Kacprowski (In re MGM Mirage Sec. Litig.)*, 708 F. App'x 894, 896 (9th Cir. 2017) (affirming approval of a similar notice program, which involved, *inter alia*, mailing the settlement notice, posting it over a national newswire service, and establishing and maintaining a settlement-specific website); *Joh v. Am. Income Life Ins. Co.*, 2020 WL 109067, at *5 (N.D. Cal. Jan. 9, 2020) (finding notice was adequate where plaintiffs provided notice via mail and email and posted the notice and other case-related documents to a website devoted to the settlement); *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *4-5 (N.D. Cal. Nov. 20, 2015) (finding "notice plan and class notices [were] consistent with Rule 23" where the notice and claim form were "mailed to potential class members and brokers who may be nominee holders, emailed to . . . institutions that monitor securities class actions for their investor clients, and published by the Depository Trust Corporation" and the summary notice was published in a national newswire and on a settlement-specific website); *Lundell v. Dell, Inc.*, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (disseminating the notice "via electronic messaging and first class mail" and posting it on the settlement website "provided the best practicable notice to the members of the class and satisfied the requirements of due process"). Accordingly, Plaintiffs provided the best notice practicable to Class members.

## B.    The Contents of the Notice Satisfied Due Process and Rule 23

Rule 23 requires a notice to provide, in plain language, the following information:

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for

requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The notice must also include: (i) the settlement amount "in the aggregate and on an average per share basis;" (ii) where, like here, the parties disagree about the average amount of damages recoverable if Plaintiffs prevailed on each claim, "the issue or issues on which the parties disagree;" (iii) attorneys' fees or costs sought; (iv) contact information for counsel for the Class; (v) the reasons for the settlement; and (vi) any other information required by the Court. 15 U.S.C. § 78u-4(a)(7)(A)-(F)

Here, the Notice provided all of the information required by Rule 23 and the PSLRA, 15 U.S.C. § 78u-4(a)(7)(A)-(F). *See* MSW Decl. Ex. 4 at Ex. A. Accordingly, Plaintiffs adequately notified Class members about the Settlement and afforded them an opportunity to object.

## V.    CONCLUSION

For the foregoing reasons, and the reasons set forth in the MSW Decl., Plaintiffs respectfully request that the Court grant final approval of the Settlement and approve the Plan of Allocation.

Dated: December 23, 2024

**POMERANTZ LLP**

By */s/ Murielle J. Steven Walsh*
Jeremy A. Lieberman (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Emily C. Finestone (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 212-661-8665
Email: jalieberman@pomlaw.com
mjsteven@pomlaw.com
efinestone@pomlaw.com

*Lead Counsel for Plaintiffs*

**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer (Nevada Bar #10161)
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
Email: andrew@mlolegal.com

*Liaison Counsel for Plaintiffs*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (*pro hac vice*)
Daniel Tyre-Karp (*pro hac vice*)
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
dtyrekarp@rosenlegal.com

*Additional Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Murielle J. Steven Walsh*
Murielle J. Steven Walsh